# EXHIBIT A



**MILLER & CHEVALIER** CHARTERED

655 FIFTEENTH STREET, N.W., SUITE 900
WASHINGTON, D.C. 20005-5701
202.626.5800  FAX: 202.628.0858
WWW.MILLERCHEVALIER.COM

December 19, 2006

**VIA FACSIMILE AND U.S. MAIL**

Thomas M. Hogan, Esq.
Hogan & Heald
11130 Main Street
Suite 310
Fairfax, VA 22030
Fax.  (703) 591-4114

  *Re:  ULLICO Inc. v. Casstevens*

Dear Thomas:

  Enclosed herewith please find ULLICO Inc.'s First Request for the Production of Documents and Things and ULLICO Inc.'s First Interrogatories to Mr. Casstevens.

  In monitoring the docket in this case, we noticed that you have yet to file the initial disclosures for Mr. Casstevens, which were due on December 12, 2006.  Please let us know when we can expect to receive these initial disclosures from Mr. Casstevens.

  Finally, please let us know what dates your client is available for deposition after the holiday period.  ULLICO would like to notice Mr. Casstevens' deposition and proceed with advancing discovery in the above-referenced matter.  Additionally, if you could let us know whether Mr. Casstevens is willing to travel to Washington, D.C. for his deposition, we would appreciate it.

  Thank you for your continuing cooperation.

     Sincerely,

     Victor Tabak

Enclosures

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Civil Division

| | | |
|---|---|---|
| ULLICO INC., | ) | |
| Plaintiff, | ) | CASE NUMBER:  1:06CV01388 (RJL) |
| v. | ) | DECK TYPE:  General Civil |
| | ) | |
| WILLIAM CASSTEVENS, | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF ULLICO INC.'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT BILLY CASSTEVENS

Plaintiff ULLICO Inc. by counsel, and pursuant to Federal Rule of Civil Procedure 34, requests that Defendant Billy Casstevens, within 30 days of service hereof, (a) serve a response to each request below, and (b) produce copies of the requested documents and things (or, in the alternative, produce the requested documents and things for inspection and photocopying) to the offices of Miller and Chevalier, Chartered, 655 15th St., N.W., Suite 900, Washington, D.C. 20005-5701.

## INSTRUCTIONS AND DEFINITIONS

### Instructions

1.      If you object to any of these document requests, then you shall state the reasons for your objections.  If you object to any part of a document request, then you shall further specify the part.  Similarly, if you do not object to a particular document request, but are unable to respond fully to that document request, then you shall respond to the fullest extent possible and provide an explanation for your lack of a full response.

660420.2

2.     When information is withheld from discovery on a claim that the information requested is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the information, document, communication or thing not disclosed or produced that is sufficient to enable the discovering party to contest the claim of privilege.

3.     Where originals of documents are not available, authentic copies of such documents may be produced; but, if a document has been prepared in separate copies, or additional copies have been made and the copies are not identical (whether by reason of subsequent modification, addition of notations or otherwise), each non-identical copy is a separate document and should be identified or produced.

4.     The phrasing of these document requests shall be construed so as to make your responses inclusive rather than exclusive.  For example: (a) the word "including" is intended to be comprehensive and means "including but not limited to"; (b) the singular form of all words includes the plural form and the plural form of all words includes the singular form; (c) the words "and" and "or" shall be interpreted as both conjunctive and disjunctive; (d) the word "any" shall mean "any and all"; and (e) the word "each" shall mean "each and every."

5.     Unless otherwise indicated, these document requests refer and relate to the time period from January 1, 1997 until the date when these document requests are answered or required to be supplemented, whichever is later.

6.     Your answers to these document requests should be amended or supplemented in accordance with Fed. R. Civ. P. 26(e).

2

660420.2

## General Definitions

1.      "Document" and "documents" shall have the same meaning as used in Fed. R. Civ. P. 34(a). "Documents" shall also mean all data compilations which can be recorded by any sound, visual or electronic means and from which information can be obtained or translated through detection devices into reasonably usable form.  For example, and without limiting the definition of the terms in any way, "document" and "documents" shall include the following: electronic mail ("e-mail") (in both electronic and printed form), facsimiles (in both electronic and printed form), letters, correspondence, notes, handwritten notes, telegrams, lists, memoranda, diaries, journals, records, contracts, agreements, records, notations of communications, communications, desk pads, desk calendars, note pads, scratch pads, telephone call slips, telephone memos, telephone bills, microfilm, articles, pamphlets, brochures, studies, notices, summaries, reports, books, teletype messages, accounting entries, accounting records, financial statements, purchasing orders, invoices, tapes, worksheets, video tapes, computer diskettes, digitized material, computer data, computer-generated compilations and computerized data printouts.

2.      "All documents" shall mean and include each and every document that refers, reflects or relates, directly or indirectly, in whole or in part, to the subject matters described in a discovery request.

3.      "Things" shall mean and include "tangible things" as that term is used in Fed. R. Civ. P. 34.

4.      "Person" shall mean and include any natural person, corporation, limited liability company, partnership, firm, association, joint venture, sole proprietorship, trust, department, division, agency and any other legal, business, or governmental entity.  Unless otherwise stated,

3

660420.2

all references to corporations or other legal entities (including, without limitation, any parties to this action) shall encompass (a) all predecessors or successors of such corporations or legal entities, (b) all past or present parents, subsidiaries or affiliates of such corporations or legal entities and (c) all past or present shareholders, directors, officers, employees, trustees, partners, agents, accountants, attorneys and representatives of such corporations or legal entities.

5    "You" or "your" shall mean Billy Casstevens, as well as any employees, trustees, agents, attorneys, accountants, heirs, predecessors in interest, successors in interest, assigns and any other person acting (or purporting to act) on behalf of Billy Casstevens.

6.    "Communication" means any meeting, statement, document, conversation, transmittal of information or request for information, whether by written, oral, electronic or other means. "Communication" shall include, but is not limited to, electronic mail or "e-mail."

7.    "Relate to" or "relating to" shall mean and include constituting, discussing, mentioning, containing, embodying, reflecting, identifying, incorporating, referring to, dealing with, or pertaining to in any way.

### Specific Definitions

1.    "1998 Stock Offer Program" shall mean two offers of up to a total of 4,000 shares of ULLICO stock to each director and officer of ULLICO, sold in two offerings of up to 2000-shares as referenced in the Complaint.

2.    "1999 Stock Offer Program" shall mean the offer up to 4,000 shares of ULLICO stock to senior officers and directors as referenced in the Complaint.

3.    "Actual 2000 Repurchase Program" shall mean the offer by ULLICO to repurchase $30 million of Class A and Class B Stock at $146.04 a share which commenced on December 14, 2000, as referenced in the Complaint.

4

660420.2

4.     "Extraordinary 2000 Repurchase Program" shall mean the $240 million offer approved on May 11, 2000 and abandoned on November 3, 2000 to repurchase up to 20% of ULLICO's outstanding stock, including Capital Stock, from all shareholders as referenced in the Complaint.

5.     "Discretionary Repurchase Program" shall mean any repurchase of ULLICO stock at $146.04 a share completed outside of any of the repurchase plans occurring between May 2000 and May 2003, as referenced in the Complaint as well as any request for repurchase made between May 2000 and May 2003.

6.     "Compensation Committee" shall mean the Compensation Committee of the Board of Directors of ULLICO Inc., as constituted from January 1, 1997 to the present.

7.     "Executive Committee" shall mean the Executive Committee of the Board of Directors of ULLICO Inc., as constituted from January 1, 1997 to the present.

8.     "Board of Directors" shall mean the Board of Directors of ULLICO Inc., as constituted from January 1, 1997 to the present.

9.     "PwC" shall refer to PricewaterhouseCoopers LLP, a limited liability partnership which provided auditing and other services to ULLICO and its subsidiaries during the period 1997 to 2004.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**    All documents that relate in any way to the 1998 and 1999 Stock Offer Programs.

**REQUEST NO. 2:**    All documents that relate in any way to the Actual 2000 Repurchase Program.

5

**REQUEST NO. 3:**     All documents that relate in any way to the Extraordinary 2000 Repurchase Program.

**REQUEST NO. 4:**     All documents that relate in any way to the Discretionary Repurchase Program.

**REQUEST NO. 6**:     All documents that relate to the Compensation Committee, including, without limitation, all notes of meetings, minutes, drafts of minutes, agendas and documents pertaining to agenda items.

**REQUEST NO. 7**:     All documents that relate to the Executive Committee, including, without limitation, all notes of meetings, minutes, drafts of minutes, agendas and documents pertaining to agenda items.

**REQUEST NO. 8:**     All documents that relate in any way to ULLICO's retention of or representation by the law firm of Arnold & Porter L.L.P.

**REQUEST NO. 9:**     All documents that relate in any way to ULLICO's retention of or representation by the law firm of LeBoeuf, Lamb, Greene and MacRae L.L.P.

**REQUEST NO. 10:**     All documents that relate in any way to ULLICO's retention of or representation by PwC.

**REQUEST NO. 11:**     All documents not otherwise requested that directly refer to your fiduciary duties to ULLICO Inc. under the common or codified laws of the State of Maryland.

**REQUEST NO. 12:**     All documents from any banks or other financial institutions, including, without limitation, brokerage or investment companies, reflecting assets or funds held in your name solely or jointly with any other person during the period beginning January 1, 1997 to the present.

6

**REQUEST NO. 13:**  All documents, including statements, check registers, check books, and canceled checks, concerning any account at any bank, brokerage, trust, or partnership in which you or your spouse has or have held a beneficial interest during the period beginning January 1, 1997 to the present.

**REQUEST NO. 14:**  All federal and state tax returns, including those filed individually and those filed jointly with others, for the tax years 1997 through 2004.

**REQUEST NO. 15:**  Any notes, diaries, calendars, or any other writings or documents that relate in any way to the claims or contentions made in this case.

**REQUEST NO. 16:**  All documents you copied at, or removed from the premises of ULLICO or any of its affiliated entities during the period January 1, 1997 to the present, including copies of documents that otherwise remained in ULLICO's files.

**REQUEST NO. 17:**  All documents that relate in any way to Counts I, II, III, and/or IV of the Complaint.

**REQUEST NO. 18:**  All documents that have passed between you and any person who may be used at trial as a testimonial expert.

**REQUEST NO. 19:**  Any and all computers or other electronic devices within your control that you used in the performance of your duties at ULLICO from January 1, 1997 to the present.  This request requires the physical production of the actual computer and all related internal or external hard drives.

**REQUEST NO. 20:**  All documents that relate in any way to ULLICO's Preferred Certificate Program.

660420.2

Dated: December 19, 2006

MILLER & CHEVALIER CHARTERED

By      _____

Anthony J. Trenga (DC Bar #218255)
Brian A. Hill (DC Bar # 456086)
Victor Tabak (DC Bar # 480333)
Matthew T. Reinhard (DC Bar # 474941)
655 Fifteenth Street, N.W., Suite 900
Washington, DC  20005-5701
Tel. (202) 626-5800
Fax. (202) 628-0858
atrenga@milchev.com
Attorneys for Plaintiff

8

660420.2

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 19th day of December, 2006, a true and accurate copy of the foregoing document was faxed and mailed first-class, postage prepaid, to the following:

Thomas M. Hogan, Esq.
Hogan & Heald
11130 Main Street
Suite 310
Fairfax, VA 22030
Tel.  (703) 591-0003
Fax.  (703) 591-4114

Victor Tabak

9

660420.2

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Civil Division

| | |
|---|---|
| ULLICO INC.,           ) | |
|        Plaintiff,     ) | CASE NUMBER:  1:06CV01388 (RJL) |
|    v.           ) | DECK TYPE:  General Civil |
|                ) | |
| WILLIAM CASSTEVENS, ) | |
|        Defendant.   ) | |

**PLAINTIFF ULLICO INC.'S FIRST INTERROGATORIES
TO DEFENDANT BILLY CASSTEVENS**

Plaintiff ULLICO Inc. ("ULLICO") propounds the following interrogatories to

Defendant Billy Casstevens, to be answered in writing and under oath within thirty (30) days of

service hereof.

**Instructions**

1.      All interrogatory answers should be given in narrative form, rather than by

production of business records, unless the responding party can show: (a) that a narrative

response is unduly burdensome; (b) that the burden of deriving or ascertaining the answer from

such business records is substantially the same for both parties; and (c) that all references to

business records are identified with sufficient detail to permit the discovering party to locate and

to identify, as readily as the responding and producing party, the records from which the answer

can be ascertained.

2.      If you object to any of these interrogatories, then you shall state the reasons for

your objections.  If you object to any part of an interrogatory, then you shall further specify the

part.  Similarly, if you do not object to a particular interrogatory, but are unable to respond fully

to that interrogatory, then you shall respond to the fullest extent possible and provide an explanation for your lack of a full response.

3.    When information is withheld from discovery on a claim that the information requested is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the information, document, communication or thing not disclosed or produced that is sufficient to enable the discovering party to contest the claim of privilege.

4.    Where originals of documents are not available, authentic copies of such documents may be produced; but, if a document has been prepared in separate copies, or additional copies have been made and the copies are not identical (whether by reason of subsequent modification, addition of notations or otherwise), each non-identical copy is a separate document and should be identified or produced.

5.    The phrasing of these interrogatories shall be construed so as to make your responses inclusive rather than exclusive.  For example: (a) the word "including" is intended to be comprehensive and means "including but not limited to"; (b) the singular form of all words includes the plural form and the plural form of all words includes the singular form; (c) the words "and" and "or" shall be interpreted as both conjunctive and disjunctive; (d) the word "any" shall mean "any and all"; and (e) the word "each" shall mean "each and every."

6.    Unless otherwise indicated, these interrogatories refer and relate to the time period from the beginning of the circumstances and events alleged in ULLICO's Complaint.

7.    Your answers to these interrogatories should be amended or supplemented in accordance with Fed. R. Civ. P. 26(e).

2

661268.2

**General Definitions**

1.      "Document" and "documents" shall have the same meaning as used in Fed. R. Civ. P. 34.  For example, and without limiting the definition of the terms in any way, "document" and "documents" shall include the following: electronic mail ("e-mail") (in both electronic and printed form), facsimiles (in both electronic and printed form), letters, correspondence, notes, handwritten notes, telegrams, lists, memoranda, diaries, journals, records, contracts, agreements, records, notations of communications, communications, desk pads, desk calendars, note pads, scratch pads, telephone call slips, telephone memos, telephone bills, microfilm, articles, pamphlets, brochures, studies, notices, summaries, reports, books, teletype messages, accounting entries, accounting records, financial statements, purchasing orders, invoices, tapes, worksheets, video tapes, computer diskettes, digitized material, computer data, computer-generated compilations and computerized data printouts.

2.      "All documents" shall mean and include each and every document that refers, reflects or relates, directly or indirectly, in whole or in part, to the subject matters described in a discovery request.

3.      "Things" shall mean and include "tangible things" as that term is used in Fed. R. Civ. P. 34.

4.      "Person" shall mean and include any natural person, corporation, limited liability company, partnership, firm, association, joint venture, sole proprietorship, trust, department, division, agency and any other legal, business, or governmental entity.  Unless otherwise stated, all references to corporations or other legal entities (including, without limitation, any parties to this action) shall encompass (a) all predecessors or successors of such corporations or legal entities, (b) all past or present parents, subsidiaries or affiliates of such corporations or legal

3

661268.2

entities and (c) all past or present shareholders, directors, officers, employees, trustees, partners, agents, accountants, attorneys and representatives of such corporations or legal entities.

5     "You" or "your" shall mean Defendant Billy Casstevens, including employees, agents, attorneys, accountants, heirs, predecessors in interest, successors in interest, assigns and any other person acting (or purporting to act) on behalf of Billy Casstevens.

6.     "Communication" means any meeting, statement, document, conversation, transmittal of information or request for information, whether by written, oral, electronic or other means.  "Communication" shall include, but is not limited to, electronic mail or "e-mail."

7.     "Relate to" or "relating to" shall mean and include constituting, discussing, mentioning, containing, embodying, reflecting, identifying, incorporating, referring to, dealing with, or pertaining to in any way.

8.     "Identify" or "identity" with respect to natural or non-natural persons shall mean and require you to state the person's full name (including any aliases, trade names or fictitious names), the person's current (or last known) business affiliation, the person's current (or last known) business address and telephone number and the person's current (or last known) residential address and telephone number.

9.     "Identify" or "identity" with respect to documents shall mean and require you to state the following:

     (a)    the date of the document;

     (b)    a description of the document sufficient to cause it to be adequately identified;

     (c)    the identity of each person who prepared the document;

     (d)    the identity of the custodian of the document;

     (e)    a general summary of the contents of the document;

4

(f)     the identity of each person to whom such document was addressed, to
whom such document (or copy thereof) was sent and/or who at any time
had possession of such document (or copy thereof); and

(g)     if there were drafts of the document prior to the final document, the
identity of the custodian of those drafts and the date(s) of those drafts.

In lieu of such description, you may attach appropriately identified copies of such

documents to your answers to these Interrogatories.

10.     "Identify" or "identity" with respect to communications (including oral, written,

telephonic or electronic communications) shall mean:

(a)     the communications medium, e.g., written, oral, telephonic or electronic;

(b)     the date of each such communication;

(c)     the identity of all persons who were present at or participated in each such
communication;

(d)     the substance and nature of each such communication; and

(e)     the identity of all documents which relate to and reflect each such
communication.

11.     With respect to any topic, contention, allegation, subject, event or issue

referenced or listed in a discovery request, "state the factual basis" shall mean, and require you to

state all facts relating to the topic, contention, allegation, subject, event or issue; identify all

persons who you know or believe have knowledge or information relating to the topic,

contention, allegation, subject, event or issue; identify all communications relating to the topic,

contention, allegation, subject, event or issue; and identify all documents relating to the topic,

contention, allegation, subject, event or issue.

12.     With respect to any topic, contention, allegation, subject, event or issue

referenced or listed in a discovery request, "describe" or "describe in detail" shall mean, and

require you to: (a) provide detailed information such as the date, time, place and circumstances

relating to the topic, contention, allegation, subject, event or issue; (b) state all facts relating to

5

the topic, contention, allegation, subject, event or issue; (c) identify all persons who you know or believe have knowledge or information relating to the topic, contention, allegation, subject, event or issue; (d) identify all communications relating to the topic, contention, allegation, subject, event or issue; and (e) identify all documents relating to the topic, contention, allegation, subject, event or issue.

**Specific Definitions**

1.      "Compensation Committee" shall mean the Compensation Committee of the Board of Directors of ULLICO Inc., as constituted from January 1, 1997 to the present.

2.      "Executive Committee" shall mean the Executive Committee of the Board of Directors of ULLICO Inc., as constituted from January 1, 1997 to the present.

3.      "Board of Directors" shall mean the Board of Directors of ULLICO Inc., as constituted from January 1, 1997 to the present.

4.      "The Thompson Report" shall refer to the Report of the Special Counsel ULLICO Stock Purchase Offer and Repurchase Programs and Global Crossing Investment prepared by Governor James R. Thompson of the law firm of Winston & Strawn.

5.      The "1998 Stock Offer Program" shall refer to the offer of 2,000 shares of ULLICO stock to ULLICO officers and directors at $28.70 per share in July 1998 and the offer of an additional 2,000 shares in October 1998.

6.      The "1999 Stock Offer Program" shall refer to the offer of 4,000 shares of ULLICO stock to ULLICO officers and directors at $53.94 per share in December 1999.

7.      The "2000 Extraordinary Repurchase Program" shall refer to ULLICO Inc.'s proposed repurchase, in 2000, of $240 million of ULLICO Class A, B, and Capital stock, at $146.04 per share.

6

8.      The "2000 Actual Repurchase Program" shall refer to ULLICO's 2000 offer to repurchase $30 million of ULLICO Class A and B stock.

9.      The "book value method" shall refer to the method of valuing ULLICO stock annually by dividing the Total Shareholder Equity as reflected in ULLICO's audited December 31 balance sheet by the total number of outstanding shares of Capital, Class A and B stock.

10.     "Professional Services Provider" shall refer to any attorney or counselor at law, accountant, tax or financial advisor, business consultant, or any other provider of professional business or legal services.

## INTERROGATORIES TO WILLIAM BERNARD

### INTERROGATORY NO. 1

Identify any documents in your possession, including all files, notes, correspondence or other media, that you removed from ULLICO.

**ANSWER:**

### INTERROGATORY NO. 2

Identify any documents relating to ULLICO that you caused to be destroyed outside the company's normal document retention policy between 1997 and the date of your response to this interrogatory.

**ANSWER:**

### INTERROGATORY NO. 3

If you contend that your participation in the Discretionary Repurchase Program regarding ULLICO stock was in good faith state the factual basis for that contention.

**ANSWER:**

7

**INTERROGATORY NO. 4**

If you contend, with respect to the claims ULLICO makes in the Complaint, that you fulfilled your fiduciary duties "with the care that an ordinarily prudent person in a like position would use under similar circumstances," within the meaning of Md. Code Ann. Corps. & Ass'ns § 2-405.1(a)(3), state the factual basis for that contention.

**ANSWER:**

**INTERROGATORY NO. 5**

If you contend that your participation in the Discretionary Repurchase Program was not an interested transaction within the meaning of Md. Code Ann. Corps. & Ass'ns § 2-419, state the factual basis for that contention.

**ANSWER:**

**INTERROGATORY NO. 6**

If you contend that your redemption of stock in the Discretionary Repurchase Programs satisfied the requirements of Md. Code Ann. Corps. & Ass'ns § 2-419, state the factual basis for that contention.

**ANSWER:**

**INTERROGATORY NO. 7**

State the factual basis for your Fifth Defense that "[a]ll actions by Defendant for ULLICO were performed in good faith pursuant to advice of legal counsel and professional accounting and financial advisors retained by or on behalf of plaintiff and therefore were reasonably believed to be in the best interest of the company and were performed with the care an ordinary prudent person in a like position would use in similar circumstances."

**ANSWER:**

8

**INTERROGATORY NO. 8**

State the factual basis for your Second Defense that "Plaintiff's claims are barred by estoppel, by the Statute of Limitations and/or by laches."

**ANSWER:**

**INTERROGATORY NO. 9**

Identify any communications between January 1, 1997 and May 30, 2003 from any person that you intend to rely on in support of any of your affirmative claims or defenses in this action.

**ANSWER:**

**INTERROGATORY NO. 10**

If you contend that Robert Georgine was authorized to cause the repurchase of ULLICO stock from individual stockholders, during the period May 10, 2000 through April 30, 2001, at the price of $146.04 per share, state the factual basis for that contention.

**ANSWER:**

**INTERROGATORY NO. 11**

If you contend that the Board of Directors validly adopted the Actual 2000 Repurchase Program, state the factual basis for that contention.

**ANSWER:**

**INTERROGATORY NO. 12**

If you contend that the following statements in the tender offer documents associated with the Actual 2000 Repurchase Program were accurate, state the factual basis for that contention: "[t]he Company has not been advised that any of its directors and officers presently

9

661268.2

intend to tender any Shares personally owned by them pursuant to the Offer" and that the shares of ULLICO "represent[ed] an excellent long-term investment".

**ANSWER:**

**INTERROGATORY NO. 13**

     If you contend that any ULLICO employee, officer, or director, interfered with your ability to execute your fiduciary duties during your employment by ULLICO, state the factual basis for that contention.

**ANSWER:**

**INTERROGATORY NO. 14**

     If you contend that you disclosed to any member of the Board that you redeemed your stock through the Discretionary Repurchase Program, state the factual basis for that contention.

**ANSWER:**

**INTERROGATORY NO. 15**

     If you contend that anyone other than yourself disclosed to the Board that you redeemed your stock through the Discretionary Repurchase Program, state the factual basis for that contention.

**ANSWER:**

**INTERROGATORY NO. 16**

     State the factual basis for your denial with respect to ¶ 14 of the Complaint that "[t]hese programs were either to the exclusion of ULLICO's other shareholders or structured in a manner that allowed defendant and other insiders to disproportionately benefit himself in relationship to other larger shareholders."

**ANSWER:**

661268.2

**INTERROGATORY NO. 17**

State the factual basis for your denial with respect to ¶ 19 of the Complaint that

"[b]ecause members of the Compensation Committee were eligible to participate in the 1998 and

1999 Stock Offer Programs, the actions of the Compensation Committee violated the February

11, 1998 and February 13, 1999 Executive Committee resolutions that expressly prohibited the

Compensation Committee from participating in matters directly affecting their own

compensation.  In addition, the Compensation Committee exceeded the delegation of authority

pursuant to the February 13, 1999, Executive Committee resolution when it included directors as

eligible participants under the 1999 Stock Offer Program."

**ANSWER:**

**INTERROGATORY NO. 18**

State the factual basis for your denial with respect to ¶ 26 of the Complaint that "[t]he

Compensation Committee lacked authority to cause ULLICO to issue stock to Casstevens in

1998 and 1999 and, therefore, the sale of stock to Casstevens is invalid."

**ANSWER:**

**INTERROGATORY NO. 19**

State the factual basis for your denial with respect to ¶ 38 of the Complaint that

"Casstevens, who was a shareholder and member of the Board of Directors, never took any steps

to correct these misleading and incorrect statements in the November 21, 2000 letter."

**ANSWER:**

661268.2

Dated: December 19, 2006

MILLER & CHEVALIER CHARTERED

By _____
Anthony J. Trenga (DC Bar #218255)
Brian A. Hill (DC Bar # 456086)
Victor Tabak (DC Bar # 480333)
Matthew T. Reinhard (DC Bar # 474941)
655 Fifteenth Street, N.W., Suite 900
Washington, DC  20005-5701
Tel. (202) 626-5800
Fax. (202) 628-0858
atrenga@milchev.com
Attorneys for Plaintiff

12

661268.2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of December, 2006, a true and accurate copy of the foregoing document was faxed and mailed first-class, postage prepaid, to the following:

Thomas M. Hogan, Esq.
Hogan & Heald
11130 Main Street
Suite 310
Fairfax, VA 22030
Tel. (703) 591-0003
Fax. (703) 591-4114

Victor Tabak

13

661268.2

# EXHIBIT D



**MILLER & CHEVALIER** CHARTERED

655 FIFTEENTH STREET, N.W., SUITE 900
WASHINGTON, D.C. 20005-5701
202.626.5800  FAX: 202.628.0858
WWW.MILLERCHEVALIER.COM

January 26, 2007

**VIA FACSIMILE AND U.S. MAIL**

Thomas M. Hogan, Esq.
Hogan & Heald
11130 Main Street
Suite 310
Fairfax, VA 22030
Fax.  (703) 591-4114

Re:  *ULLICO Inc. v. Casstevens*

Dear Thomas:

I am writing to follow up with you on several matters.  First, as I have now informed you several times by both telephone and by letter, we would like to schedule the deposition of Mr. Casstevens.  Please provide us with the dates he is available and in providing this information, please let us know whether he will be willing to travel to Washington, D.C. for the deposition.

Second, I am writing to determine the status of your responses to our extant discovery requests.  On December 19, 2006, ULLICO served its First Request for the Production of Documents and Things and ULLICO's First Interrogatories to Mr. Casstevens.  Mr. Casstevens was obligated to respond to these requests by January 22, 2007.  To date, we have received no response.

I attempted to call you last week regarding the status of these discovery requests and left a message for you, but have not heard back.  Please advise me of when we can expect to receive these discovery responses.  Alternatively, if ULLICO will have to move to compel in order to obtain the requested discovery, please let me know when you are available to meet and confer regarding this issue.

Thomas M. Hogan, Esq.
January 26, 2007
Page 2

Thank you for your continuing cooperation.

Sincerely,

Victor Tabak