IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

| | | |
|---|---|---|
| ULLICO INC., | ) | |
| Plaintiff, | ) | CASE NUMBER:  1:06CV01388 (RJL) |
| v. | ) | DECK TYPE:  General Civil |
| | ) | |
| WILLIAM CASSTEVENS, | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF ULLICO INC.'S STATEMENT OF MATERIAL FACTS AS TO WHICH IT CONTENDS THERE IS NO GENUINE ISSUE

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rules 7(h) and 56.1, Plaintiff ULLICO Inc. ("ULLICO"), respectfully submits in support of its Motion for Partial Summary Judgment the following Statement of Material Facts as to which ULLICO contends there is no Genuine Dispute.

1.    At all material times Defendant Billy Casstevens ("Casstevens") was a member of the Board of Directors of ULLICO and a member of the Executive Committee of ULLICO. Answer of Defendant, Billy Casstevens (Erroneously Sued as William Casstevens), to Complaint ("Answer") ¶ 4 (Jul. 26, 2006); Deposition of Billy Casstevens (Apr. 3, 2007) (the "Casstevens Depo.") at 17:14-18, 18:7-13, 20:10-17 (true and correct copies of the relevant pages of the Casstevens Depo. are attached hereto as Exhibit 1).

2.    ULLICO Inc. is incorporated under the laws of the State of Maryland.  Answer ¶ 3.

### A.    The Stock Transactions at Issue

3.    The ULLICO Bylaws require that ULLICO be given a right of first refusal to repurchase the company's stock for $25, prior to the transfer of any ULLICO stock by a

ULLICO stockholder to any third party. ULLICO Bylaws Article II(A) § 6, Article II(B) § 5, Article II(C) § 6 at USDC 0008086-89 (Exhibit 2).

4.     Casstevens at various times between February 6, 1995 and June 1, 1995 was issued Capital Stock by ULLICO, or purchased Capital Stock from ULLICO, and ultimately held 330 shares of ULLICO Capital Stock as of June 1, 1995. Ledger of Stockholder Certificates (Capital Stock) held by Billy J. Casstevens (Mar. 2, 2001) at UL 6012 (the "Casstevens Capital Ledger") (Exhibit 3).

5.     Casstevens received 1,312 shares of ULLICO Class A stock on February 6, 1998 through the conversion of ULLICO Preferred Certificates that he held prior to that date, and he purchased 2,000 Class A shares on September 15, 1998 for $28.70 per share, 2,000 Class A shares on November 2, 1998 for $28.70 per share, and 4,000 Class A shares on December 29, 1999 for $53.94 per share.   Ledger of Stockholder Certificates (Class A Stock) held by Billy J. Casstevens (Feb. 6, 2001) at U-MIA 016189 (the "Casstevens Class A Ledger") (Exhibit 4); Defendant's Responses to Plaintiff's First Request for Admissions ("RFA Resp.") (Mar. 19, 2007) Nos. 1-2 (true and correct copies of Plaintiff ULLICO Inc.'s First Requests for Admission to Defendant Billy Casstevens (Feb. 16, 2007), and Casstevens' responses thereto are attached hereto as Exhibit 5).

6.     On March 1, 2001, Casstevens sold back to ULLICO 1,312 shares of ULLICO Class A stock converted from preferred certificates on February 6, 1998 for $146.04 per share. On March 1, 2001 Casstevens sold back to ULLICO the 2,000 shares of ULLICO Class A stock he purchased on November 2, 1998 for $28.70 per share for $146.04 per share. On March 1, 2001 Casstevens sold back to ULLICO the 4,000 shares of ULLICO Class A stock he purchased on December 29, 1999 for $53.94 per share for $146.04 per share. *See* Casstevens Class A

Ledger (Exhibit 4); Casstevens Depo. at 128:18-134:16, 185:4-20 (Exhibit 1); RFA Resp. Nos.

5-6 (Exhibit 5); Letter to J. Carabillo from B. Casstevens at USDC 0048079 (Jan. 11, 2000)

(Exhibit 6); Letter to B. Casstevens & L. Casstevens from R. Georgine at USDC 0048076 (Mar.

1, 2001) (Exhibit 7).

      7.     On March 2, 2001 Casstevens sold back to ULLICO 330 shares of ULLICO

Capital Stock for $146.04 per share. *See* Casstevens Capital Ledger (Exhibit 3); Casstevens

Depo. at 138:9-139:5 (Exhibit 1).

      8.     As a result of the transactions referenced in paragraphs 6 and 7, Casstevens

realized a pre-tax profit of $1,116,037.68. *See* Schedule D to Form 1040 for Billy J. Casstevens

& Lou Ellen Casstevens for 2001 (filed under seal as Exhibit 8). The following chart, with the

amounts drawn from Casstevens' Schedule D, summarizes the after-tax stock profits he garnered

from his stock transactions with ULLICO:

| Stock Sold | Stock Profits | |
|---|---|---|
| 1,312 Class A Shares | $166,604.00 | |
| 2,000 Class A Shares | $234,680.00 | |
| 4,000 Class A Shares | $368,400.00 | |
| 100 Capital Shares | $12,104.00 | |
| 200 Capital Shares | $24,206.00 | |
| 30 Capital Shares | $4,381.20 | |
| TOTAL: 7,312 Class A and 330 Capital Shares | Total: | $810,375.20 |

*See id. See also supra* ¶¶ 6-7.

      9.     The stock purchased by Casstevens in 1998 and 1999 was issued in violation of

ULLICO's Bylaws. *See* ¶¶ 10 - 27, *infra*.

## The 1998 Stock Purchases

10.    ULLICO's Bylaws, Article VI § 2, expressly state that "the Executive Committee

... shall not have authority ... to issue Stock." Article IV § 2 at USDC 0008093 (Exhibit 2).

11.    On February 11, 1998, the Executive Committee of ULLICO Inc., pursuant to

Article VI, § 1 of the Bylaws, appointed a Compensation Committee, which consisted of

Directors Barry, West and Wynn. Minutes, Meeting of the Executive Committee of ULLICO

Inc., Feb. 11, 1998 at U 17329 (Exhibit 9). A Compensation Committee is not among the

permanent committees established in the Bylaws. Article IV § 1 at USDC 0008093 (Exhibit 2).

12.    According to the resolution authorizing its creation, the Compensation Committee

was "authorized to act on all matters concerning compensation and the establishment and

administration of all programs and agreements relating to compensation, whether current or

deferred" but provided that "[n]o member of the Committee shall participate in the determination

of any matter affecting his own Compensation." Exhibit 9 at U 17329.

13.    The Compensation Committee was not authorized to issue stock, the fact of which

Casstevens has acknowledged. Casstevens Depo. at 56:21-58-17 (Exhibit 1).

14.    On July 27, 1998, at a meeting of the Compensation Committee, ULLICO's

Chairman and CEO Robert Georgine recommended that the Compensation Committee adopt a

stock purchase program for officers and directors, under which "each Director and Officer will

have the opportunity to buy ULLICO stock, up to 2000 shares (can go up to 4000) at the current

$28.70 book value." Robert A. Georgine, Remarks at the ULLICO Inc. Compensation

Committee Meeting, July 27, 1998 at U 000929 (Exhibit 10).

15.    On July 27, 1998, the Compensation Committee authorized the offer of up to two

thousand shares of Class A stock to each director and officer of ULLICO. Minutes of the

764162 6

Compensation Committee of ULLICO Inc., July 27, 1998 at U 000325 (Exhibit 11) (The

Compensation Committee "...decide[d] to authorize the offer of 2,000 shares of Class A stock of

ULLICO Inc. to each Director and Officer of that company and instructed the Chairman to make

that available at the earliest opportunity").

16.    Under the terms of the stock purchase offer authorized by the Compensation

Committee, all ULLICO directors, including those on the Compensation Committee, would be

eligible to purchase the offered Class A stock. *Id.*

17.    In adopting a stock purchase program in which they were able to participate, the

Compensation Committee members acted contrary to the February 11, 1998 Executive

Committee resolution discussed above, which expressly prohibited members of the

Compensation Committee from participating in matters directly affecting their own

compensation. Exhibit 9 at U 17329.

18.    By letter dated July 29, 1998, Chairman Georgine announced that "[t]he

Compensation Committee has authorized us to make available 2,000 shares of stock to each

member of the Board of Directors of ULLICO Inc. and each of the officers of ULLICO Inc.

This is a very small group and intentionally so because we are a closely held company." The

purchase price was $28.70 per share. Letter to B. Casstevens from R. Georgine dated July 29,

1998 at U-MIA 016215 (Exhibit 12); Casstevens Depo. at 53:14-58:17 (Exhibit 1).

19.    In response to this offer Casstevens purchased 2000 shares of Class A Stock at the

$28.70 stock price. Casstevens Depo. at 59:20-60:14 (Exhibit 1); RFA Resp. No. 1 (Exhibit 5).

20.    By letter dated October 13, 1998, Chairman Georgine announced that "[w]e have

been very pleased by the positive response to our recent correspondence concerning ULLICO

Inc. stock.... [t]herefore, we have decided to make available up to an additional 2000 shares to

each Director and Officer of ULLICO Inc." Letter to B. Casstevens from R. Georgine dated Oct.

13, 1998 at UL 19353 (Exhibit 13) (UL 19353); Casstevens Depo. at 61:15-62:8 (Exhibit 1).

21. In response to this offer Casstevens purchased an additional 2000 shares of Class A

Stock at the $28.70 stock price. Casstevens Depo. at 65:1-2 (Exhibit 1); RFA Resp. No. 1

(Exhibit 5).

## The 1999 Stock Purchases

22.     On February 13, 1999, the Executive Committee, pursuant to Article VI, § 1 of

the Bylaws, again appointed a Compensation Committee consisting of Directors Barry,

Cullerton, West and Wynn. Minutes, Meeting of the Executive Committee of ULLICO Inc.,

Feb. 13, 1999 at USDC 0105337 (Exhibit 14). The Executive Committee resolution again stated

that: "No member of the Committee shall participate in the determination of any matter

affecting his own compensation." *Id.*

23.     On May 13, 1999, the Compensation Committee (Director Cullerton not

attending) authorized the issuance of up to 4,000 shares of ULLICO stock to senior officers and

directors "at book value [i.e., $53.94 per share] and will be made some time during the course of

year 1999 at the Chairman's discretion." Minutes, Meeting of the Compensation Committee of

ULLICO Inc., May 13, 1999 at U 000328 (Exhibit 15).

24.     By letter dated December 17, 1999, Chairman Georgine offered each senior

officer and director the right to purchase up to 4,000 shares of Class A Stock at a price of $53.94

per share, the book value per share based on ULLICO's December 31, 1998 audited balance

sheet. Letter to B. Casstevens from R. Georgine dated Dec. 17, 1999 at UL 16438 (Exhibit 16);

Casstevens Depo. at 81:16-82:10 (Exhibit 1).

764162.6

25.    In response to this offer, Casstevens purchased 4,000 shares of Class A Stock at the $53.94 stock price. Casstevens Depo. at 81:16-82:10 (Exhibit 1); RFA Resp. No. 2 (Exhibit 5).

26.    Casstevens never raised with the Board any issues regarding the Compensation Committee's *ultra vires* offer of stock. Casstevens Depo. at 58:11-17 (Exhibit 1).

27.    As of December 31, 1999, the book value of ULLICO stock, which had just been purchased by Casstevens for $53.94 per share, was calculated to be $146.04 per share. Casstevens Depo. at 103:7-17 (Exhibit 1); Minutes, Meeting of the Executive Committee of ULLICO Inc., May 10, 2000 at U 17285-86 (Exhibit 17).

### The Sales of Stock

28.    In 2001, Casstevens sold his 330 shares of Capital Stock and 7,312 of the 9,312 total shares of Class A stock he held for $146.04 per share in violation of his fiduciary duties. *See* ¶¶ 29-56, *infra*. Additionally, Casstevens, despite representing in the letter of transmittal tendering his shares for repurchase by ULLICO that he was tendering all of his shares and was, therefore, not subject to proration, retained 2,000 shares of Class A stock yet avoided proration in contravention of the terms of ULLICO's Offer to Purchase. ULLICO Inc. Offer to Purchase dated December 14, 2000 at USDC 0026435-0026477 (Exhibit 18); Casstevens Letter of Transmittal to Tender Shares of Class A and Class B Common Stock of ULLICO Inc. Pursuant to the Offer to Purchase Dated December 14, 2000 at U-MIA 016187 (Exhibit 19); Letter to J. Carabillo from B. Casstevens dated Jan. 11, 2000 at USDC 0048079 (Exhibit 20) .[1]

---

[1] This letter was mistakenly dated January 11, 2000 when written. The actual date of the letter was January 11, 2001. *See* Casstevens Dep. at 128:6-129:9 (Exhibit 1).

764162 6

A.     **The Conditional Approval of Stock Redemptions at $146.04**

29.     On May 10, 2000, the Executive Committee conditionally approved an "extraordinary" stock repurchase program (the "Extraordinary Stock Redemption"). Under this program, the Executive Committee would repurchase up to 20% of ULLICO's outstanding stock (having an aggregate value of approximately $250 million) from all shareholders, consisting of holders of Capital Stock, Class A and Class B, at $146.04 per share. Exhibit 17 at U 17284-87.

30.     The proposed redemption price of $146.04 per share was based on the Company's "book value" calculated as of December 31, 1999; but because of the decline in value of ULLICO's Global Crossing stock holdings, the price of $146.04 represented, as of May, 2000, a premium over the actual book value of ULLICO's stock at that time. *Id.* at U 17285 ("Management recognizes that the Global share price is down and that we may repurchase at a premium.").

31.     To pay for the Extraordinary Stock Redemption and obtain additional cash, the Company planned to sell $360 million of its Global Crossing shares by the end of 2000. *Id.* at U 17284-85. For this reason, the Executive Committee imposed as a condition of this program that the market price of Global Crossing stock had to be not less than $43 per share at the closing of the offer in order to give the Company "a reasonable opportunity to realize its gain on the stock in order to fund this offer." *Id.*

32.     As Casstevens had been informed, Global Crossing traded at $50 per share by the end of 1999 (the stock price used to calculate "book value" as of December 31, 1999 of $146.04); but in May, 2000, Global Crossing stock was trading at only about $33 per share, and in November 2000 Global Crossing stock was trading only at about $23 5/8 per share. As Casstevens was aware, the decrease in the value of Global Crossing stock directly affected the

764162.6

value of ULLICO stock such that when the value of Global Crossing stock dropped, the value of ULLICO stock also dropped. *Id. See also* Minutes, Meeting of the Board of Directors of ULLICO Inc., Nov. 3, 2000 at USDC 0003168 (Exhibit 21); Casstevens Depo. at 102:4-103:6, 114:5-115:7 (Exhibit 1).

33.    The Executive Committee imposed conditions on its approval of the Extraordinary Stock Redemption in order to "protect the Company." Exhibit 17 at U 17284-85.

34.    In addition, the Extraordinary Stock Redemption was conditioned upon either 93% of all shares outstanding being tendered, or all shareholders holding 1% or more of the Company's outstanding stock participating in the tender offer. *Id.* at U 17285.

35.    Under the terms of the conditionally approved Extraordinary Stock Redemption, shareholders holding 100 shares or less and who tendered all their shares would receive a redemption of all of their shares. *Id.* at U 17287.

36.    The Executive Committee directed all employees and officers of the company to "...effectuate the foregoing resolutions..." pertaining to the conditionally approved Extraordinary Stock Redemption. *Id.* at U 17286.

37.    On May 11, 2000, the ULLICO Board of Directors reviewed the Executive Committee's approval of the Extraordinary Stock Redemption and itself approved the program on the same terms and conditions as the Executive Committee. Minutes, Meeting of the Board of Directors of ULLICO Inc., May 11, 2000 at USDC 0169134-0169136 (Exhibit 22).

38.    By letters dated July 12, 2000 to all of ULLICO's shareholders, including Casstevens, ULLICO, through Georgine, described the Extraordinary Stock Redemption that had been approved including that:

764162.6

(1)     "Prior to year-end 2000, ULLICO will make an offer to repurchase up to 20% of the total issued and outstanding shares of all classes of stock -- Capital, Class A, and Class B -- at the 1999 year-end book value of $146.04."

(2)     "…in order to accomplish this extraordinary distribution and ultimately protect the company and its stockholders from any adverse impact, it was necessary to establish certain criteria which must be met before the repurchase can take place."

(3)     "This letter is not intended as an offer to purchase stock--that can only be done through an official Offering Memorandum, which you will receive at the appropriate time."

(4)     "If you have any questions, please feel free to contact me or our Chief Legal Officer, Joseph Carabillo…."  Letter to B. Casstevens from R. Georgine dated July 12, 2000 at U-MIA 016232-016233 (Exhibit 23).

**C.     The November 3, 2000 Board Meeting and the "Actual" 2000 Repurchase Program**

39.     Casstevens sold all but 2,000 of his shares of ULLICO Class A Stock through a $30 million redemption program (the "Actual 2000 Repurchase Program") that the Board adopted at a November 3, 2000 Board meeting in place of the Extraordinary Stock Redemption, which was abandoned after the price of Global Crossing failed to reach its "trigger price" of $43. Mr. Casstevens attended this meeting and he voted to approve the resolution authorizing the $30 million redemption program.  Exhibit 21 at USDC 0003168-70.

40.     Through the Actual 2000 Repurchase Program, Casstevens received $1,067,844.48 on or about March 1, 2001 for 7,312 shares of Class A Stock tendered through the program for $146.04 per share. *See* Letter to B. Casstevens and L. Casstevens from R. Georgine dated Mar. 1, 2001 at USDC 0048076-0048077 (Exhibit 24); RFA Resp. No.8 (Exhibit 5). Casstevens accepted these funds despite knowing that he was subject to proration under the

761162.6

express terms of the ULLICO Inc. Offer to Purchase (Exhibit 18) because he tendered less than all of his shares of Class A stock. *See supra* ¶ 28. *See also* Casstevens Depo. at 124:10-126:18, 128:6-137:3 (Exhibit 1). Casstevens never disclosed to any member of the Board or Executive Committee that he had improperly avoided proration under the terms of the Offer to Purchase by failing to tender all of his shares of Class A stock. Casstevens Depo. at 128:6-137:3 (Exhibit 1).

41.    Under the Actual 2000 Repurchase Program, and unlike the Extraordinary Stock Redemption, only Class A and Class B shares were eligible for redemption, and, in the event of an oversubscription, all shareholders would be pro-rated, except that shareholders holding 10,000 or less shares (rather than those holding 100 shares or less under the Extraordinary Stock Redemption) *who tendered all their shares* would be exempt from pro-ration. Exhibit 21 at USDC 0003172-73; ULLICO Inc. Offer to Purchase dated December 14, 2000 at USDC 0026442-0026443 (Exhibit 18).

42.    As of November 3, 2000, Casstevens held less than 10,000 shares of Class A stock eligible for redemption and tendered 7,312 of the 9,312 shares of Class A stock he held, without proration despite tendering less than all of his Class A shares, at $146.04 through the 2000 Actual Repurchase Program. Casstevens Depo. at 108:5-12; 128:18-131:15 (Exhibit 1).

43.    ULLICO shareholders holding over 10,000 shares of ULLICO stock who participated in the Actual 2000 Repurchase Program were prorated and were permitted to redeem only 2.2% of their stock. Affidavit of Marcelle Bejamin at ¶ 14(i) (Exhibit 25).

44.    The resolution passed by the Board of Directors at its November 3, 2000 meeting with respect to Georgine's "discretionary" authority to repurchase stock stated:

> That the Chairman of ULLICO Inc. (the "Corporation") is hereby authorized and empowered, in his discretion, whenever he deems it consistent with sound financial practice and the best interests of the Corporation, to repurchase shares of Class A Stock or Class B Stock . . . or Capital Stock . . . at such price per share as

764162.6

> he shall deem appropriate; provided, however, that such price shall not be greater
> than that most recently specified by the Board of Directors.

Exhibit 21 at USDC 0003171.

45.    As of November 3, 2000, Casstevens held 9,312 shares of ULLICO Class A stock and 330 shares of ULLICO Capital Stock.  Casstevens Depo. at 108:5-14 (Exhibit 1).

46.    Casstevens had a financial interest in the resolution adopted at the November 3, 2000 Board Meeting.  Casstevens Depo. at 111:11-19 (Exhibit 1).

47.    The only ULLICO director present at the November 3, 2000 Board Meeting who did not own ULLICO stock at the time was Terence O'Sullivan.  *Compare* 2000 Proxy Statement at JK 003276-78 (Exhibit 26) *with* Exhibit 21 at USDC 0003167; Affidavit of Terence M. O'Sullivan ¶¶ 7-8 (Exhibit 27).

48.    Other than Mr. O'Sullivan, all of the directors that attended and voted at the November 3, 2000 Board meeting, including Casstevens, held ULLICO stock and were therefore interested in the resolution that approved the Actual 2000 Repurchase Program.  *See* 2000 Proxy Statement at JK 003276-78 (Exhibit 26); Exhibit 21 at USDC 0003167.

49.    On November 3, 2000 Casstevens did not disclose to the Board prior to its approval of the resolution adopted that day that he held stock of ULLICO, that he stood to benefit from the 10,000 share exemption from pro-ration that was a feature of that resolution, and that he had a financial interest in the resolution voted on at the November 3, 2000 meeting of the Board.  Neither did Casstevens ever raise with the Board at the November 3, 2000 meeting, or at any other time, any issues regarding the Compensation Committee's *ultra vires* offer of Class A stock through which he acquired stock eligible to be redeemed in the $30 million offer approved by the resolution.  Casstevens Depo. at 58:11-17, 108:5-14, 112:7-10, 126:16-18, 127:8-17 (Exhibit 1).  The 2000 Proxy Statement that Casstevens identifies as the only disclosure

764162.6

required of him is clearly insufficient and lacks the information required in an appropriate

disclosure. *See* 2000 Proxy Statement at JK 003275-78 (Exhibit 26).

      50.     At the time of the November 3, 2000 meeting, Terence O' Sullivan was not aware

that Casstevens owned Capital stock, owned less than 10,000 shares of Class A stock, or had a

financial interest in the resolution. O'Sullivan Affidavit ¶¶ 9-11 (Exhibit 27).

      51.     In a letter dated November 21, 2000 from Georgine to all shareholders, including

Casstevens, concerning the $30 million redemption program that the Board had authorized on

November 3, 2000, Georgine stated that "[t]he Company anticipates receiving shares in excess of

the $30 million it is offering to repurchase," but, rather than disclosing the disproportionate

benefit Casstevens and others would receive through the 10,000 share exemption from pro-

ration, Georgine represented without qualification that the Company would "pro-rate each

submission so all participating Stockholders share equitably in the offering." Letter to B.

Casstevens and L. Casstevens from R. Georgine dated Nov. 21, 2000 at USDC 0048087 (Exhibit

28); Casstevens Depo. at 144:5-149:12 (Exhibit 1).

      52.     Casstevens never disclosed his personal financial interest in the resolution passed

at the November 3, 2000 meeting to either the full board, or to Terence O'Sullivan. Casstevens

Depo. at 108:5-109:19, 111:11-112:15, 127:8-17 (Exhibit 1).

      53.     Neither the Board, the Executive Committee, or any other committee of the

Board, approved the redemption of Casstevens' stock, as set forth in paragraphs 6 and 7, at the

time of that redemption. Casstevens Depo. at 136:4-137:3, 138:9-139:1, 140:2-12 (Exhibit 1).

      54.     If Casstevens had disclosed his self-interest in the resolution presented at the

November 3, 2000 Board Meeting, Terence O'Sullivan would not have acted as he did in voting

for the resolution. Testimony of Terence M. O'Sullivan before the Senate Governmental Affairs

Committee June 19, 2003 at USDC 0003455 (Exhibit 29); Deposition of Terence O'Sullivan at 174-75 (Exhibit 30).

**B.    Casstevens' Stock Sales at $146.04 Through "Discretionary Repurchases"**

55.    On March 2, 2001, pursuant to a request from Casstevens, ULLICO repurchased 330 shares of Casstevens' Capital Stock outside the $30 million program at $146.04 per share, even though, as Casstevens was aware, ULLICO "reserve[d] its right, pursuant to its By-laws, to repurchase shares outside the Repurchase Program at $25 per share." Exhibit 28 at USDC 0048087. On or about March 9, 2001, Casstevens received a check from ULLICO in the amount of $48,193.20. Casstevens Capital Ledger (Exhibit 3); Letter to B. Casstevens from R. Georgine dated Mar. 9, 2001 at UL 6006 (Exhibit 31); Casstevens Depo. at 144:5-148:4 (Exhibit 1); RFA Resp. No. 9 (Exhibit 5).

56.    Neither the Board, the Executive Committee, or any other committee of the Board, approved the redemption of Casstevens' stock, as set forth in paragraphs 6 and 7, at the time of that redemption. Casstevens Depo. at 136:4-137:3, 138:9-139:1, 140:2-12 (Exhibit 1).

57.    In 2000 and 2001, through the $30 million program and the repurchases of stock by ULLICO pursuant to Mr. Georgine's discretion, 20 ULLICO officers and directors, that is ULLICO insiders, including Casstevens received a total of 31% of the total funds paid by the company to redeem ULLICO Class A and Capital stock at $146.04 per share. Casstevens Depo. at 142:2-144:3 (Exhibit 1); Benjamin Affidavit at ¶ 14(ii) (Exhibit 25).

## CONCLUSION

For the foregoing reasons and the reasons stated in ULLICO's Memorandum of Points and Authorities, ULLICO's Motion for Summary Judgment should be granted. A proposed order is submitted herewith.

764162.6

May 29, 2007                                    Respectfully Submitted,


By:  ___/s/ Victor Tabak_____
James A. Bensfield (DC Bar #189084)
Anthony J. Trenga (DC Bar #218255)
Mark J. Rochon (DC Bar #376042)
Brian A. Hill (DC Bar #456086)
Matthew T. Reinhard (DC Bar #474941)
Victor Tabak (DC Bar #480333)
Kevin G. Mosley (DC Bar #488495)
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, DC  20005-5701
Tel. (202) 626-5800
Fax. (202) 628-0858
atrenga@milchev.com

764162.6

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of May, 2007, a true and accurate copy of Exhibit 8 to the foregoing, which was filed under seal, was served by hand-delivery on:

> Thomas M. Hogan, Esq.
> The Law Offices of Hogan & Heald
> 11130 Main Street
> Suite 310
> Alexandria, VA 22030
> Tel: (703) 591-0003
> Fax: (703) 591-4114
> Attorney for Defendant Billy Casstevens

  /s/ Victor Tabak
Victor Tabak

764162 6