Exhibit 3

## STOCKHOLDER CERTIFICATES

March 2, 2001

**Billy J. Casstevens**

| Stock | Source | Issued | Cert # | Current Shares | Disposition | Date |
|-------|--------|--------|--------|---------|-------------|------|
| Capital | Original | 2/6/1995 | 1838 | 100.0 | | |
| Capital | Original | 4/21/1995 | 1839 | 200.0 | | |
| Capital | Dividend | 8/1/1995 | 1896 | 30.0 | | |

Capital Shares ___330.0___   A Shares ___0.0___   B Shares ___0.0___

Total Certificates __3__   Current Certificates __3__

Voting Shares ___330.0___   Votes ___330.0___

UL 6012

Exhibit 4

## LETTER OF TRANSMITTAL

To Tender Shares of Class A and Class B Common Stock
of
ULLICO Inc.
Pursuant to the Offer to Purchase
Dated December 14, 2000



LEGAL DEPARTMENT
RECEIVED BY:
JAN 1 8 2001

---

**THE OFFER, PRORATION PERIOD AND WITHDRAWAL RIGHTS WILL EXPIRE AT 5:00 P.M.,
ON TUESDAY, JANUARY 16, 2001 UNLESS THE OFFER IS EXTENDED.**

---

To:    ULLICO Inc.
       Joseph A. Carabillo
       Vice President and Assistant Secretary
       111 Massachusetts Avenue, N.W.
       Washington, D.C. 20001

Delivery of this instrument to an address other than shown above does not constitute a valid delivery.

This Letter of Transmittal is to be used only if certificates for Shares are to be delivered with the Letter of Transmittal.

A shareholder owning beneficially as of the close of business on September 30, 2000 and who continues to own beneficially until the Expiration Date fewer than 10,000 Shares may have all such Shares purchased without proration, regardless of the purchase of other Shares pursuant to the Offer.

**FOR USE BY HOLDERS OF CLASS A AND/OR CLASS B STOCK AS OF SEPTEMBER 30, 2000**

---

### DESCRIPTION OF SHARES TENDERED

| Name(s) and Address(es) of Registered Holder(s)<br>(Please fill in exactly as names(s) appear(s) on certificate(s)) | Stock Certificate Number(s) | Number of Shares Represented by Certificate(s) | Number of Shares Tendered* |
|---|---|---|---|
| BILLY J. CASSTEVENS<br>AND<br>LOU ELLEN CASSTEVENS<br>11244 GREENBRIAR CHASE<br>OKLAHOMA CITY,<br>OKLAHOMA 73170 | 95<br>134<br>143 | 1,312<br>2,000<br>4,000 | 1,312<br>2,000<br>4,000 |
| | **Total Shares** | 7,312 | 7,312 |

Shares Tendered
(Attach additional list if necessary)

*Unless otherwise indicated, it will be assumed that all Shares represented by any certificates delivered to the Company are being tendered

U-MIA 016187

**SIGN HERE**

Name  _BILLY J. CASSTEVENS AND LOU ELLEN CASSTEVENS_
(Please Print)

_Billy J. Casstevens        Lou Ellen Casstevens_
Signature(s) of Owner(s) or Representative

Capacity (full title) _____ _OWNERS_

Address _____ _11244 GREENBRIAR CHASE_

_____ _OKLAHOMA CITY, OK  73170_

Area Code and Telephone Number _____ _405 - 692 - 0996_

Tax Payer Identification Number _____ _246 - 26 - 9558_

Dated _____ _1 - 11 - 01_

Must be signed by registered holder(s) exactly as name(s) appear(s) on stock certificate(s) or on a
security position listing or by person(s) authorized to become registered holder(s) by certificates and
documents transmitted herewith.  If signature is by a trustee, executor, administrator, guardian,
attorney-in-fact, agent, officer of corporation, or other person acting in a fiduciary or representative
capacity, please set forth full title.

**GUARANTEE OF SIGNATURE(S)**
(See page 4 of the Offer of Purchase to determine whether Guarantee is required.)

Authorized Signature_____

Name_____
(Please Print)

Title_____

Name of Firm_____

Address_____

_____

Area code and Telephone Number_____

Dated_____

U-MIA 016188

## STOCKHOLDER CERTIFICATES

February 6, 2001

**Billy J. Casstevens and Lou Ellen Casstevens,**
**As Joint Tenants**

| Stock | Source | Issued | Cert # | Current Shares | Disposition | Date |
|-------|--------|--------|--------|----------------|-------------|------|
| Class A | Conversion | 2/6/1998 | A0095 | 1,312.0 ✓ | | |
| Class A | Purchase | 9/15/1998 | A0119 | 2,000.0 — hi kept | | |
| Class A | Purchase | 11/2/1998 | A0134 | 2,000.0 ✓ | | |
| Class A | Purchase | 12/29/1999 | A0163 | 4,000.0 ✓ | | |

Capital Shares _____0.0    A Shares ___9,312.0    B Shares _____0.0

Total Certificates ___4    Current Certificates ___4

Voting Shares ___9,312.0    Votes ___9,312.0

U-MIA 016189

**PLEASE READ THE ACCOMPANYING INSTRUCTIONS CAREFULLY**

HOLDERS OF FEWER THAN 10,000 SHARES

To be completed ONLY if Shares are being tendered by or on behalf of a person who beneficially owned as of the close of business on September 30, 2000 and who will continue to own beneficially until the Expiration Date an aggregate of fewer than 10,000 Shares.

The undersigned either (check one box):



[✓]   was the beneficial owner as of the close of business on September 30, 2000 and will continue to be the beneficial owner until the Expiration Date of an aggregate of fewer than 10,000 Shares, and is tendering all such Shares, or



[ ]   is an "Eligible Institution" that (i) is tendering, for the beneficial owners thereof, Shares with respect to which it is the record owner and (ii) believes, based upon representations made to it by each such beneficial owner, that each such beneficial owner beneficially owned as of the close of business on September 30, 2000 and will continue to own beneficially until the Expiration Date an aggregate of fewer than 10,000 Shares, and is tendering all such Shares.

U-MIA 016190

Exhibit 5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Civil Division

| | |
|---|---|
| ULLICO INC.,              ) | CASE NUMBER: 1;06CV01388 (RJL) |
|        Plaintiff,        ) | DECK TYPE: General Civil |
| v.                ) | |
|               ) | |
| WILLIAM CASSTEVENS,   ) | |
|        Defendant.       ) | |

## PLAINTIFF ULLICO INC.'S FIRST REQUESTS FOR
## ADMISSION TO DEFENDANT BILLY CASSTEVENS

Pursuant to Federal Rule of Civil Procedure 36, Plaintiff ULLICO Inc. ("ULLICO")

requests that Defendant Billy Casstevens answer the following Requests for Admission in

writing within thirty (30) days of service hereof.

### Instructions

1.     You should respond to these Requests in accordance with Fed. R. Civ. P. 36.

2.     If you object to a particular request for admission, you must state your reasons. If

you do not admit a request, you must specifically deny the matter or set forth in detail the

reasons why you cannot truthfully admit or deny the matter. If you admit only certain portions

of a request and deny other portions, your response shall identify which portions are admitted

and which portions are denied.

3.     A denial shall fairly meet the substance of the requested admission, and when

good faith requires that you qualify your answer or deny only a part of the matter of which an

admission is requested, you must specify so much of the matter as is true and qualify or deny the

remainder.

4.     You may not give lack of information or knowledge as a reason for failure to

admit or deny any request unless you state that you have made reasonable inquiry and that the information known or readily obtainable by you is insufficient to enable you to admit or deny the request.

5.      If you consider that a matter of which an admission is requested presents a genuine issue for trial, you may not, on that ground alone, object to the request. Subject to the provisions of Fed. R. Civ. P. 37(c), you may deny the matter or set forth reasons why you cannot admit or deny it.

### General Definitions

1.      "Document" and "documents" shall have the same meaning as used in Fed. R. Civ. P. 34 and shall include "writings" and "recordings" as those terms are defined in Fed. R. Evid. 1001. "Documents" shall also mean all data compilations which can be recorded by any sound, visual, or electronic means and from which information can be obtained or translated through detection devices into reasonably usable form. For example, and without limiting the definition of the terms in any way, "document" and "documents" shall include the following: electronic mail ("e-mail") (in both electronic and printed form), facsimiles (in both electronic and printed form), letters, correspondence, notes, handwritten notes, telegrams, lists, memoranda, diaries, journals, records, contracts, agreements, records, notations of communications, communications, desk pads, desk calendars, note pads, scratch pads, telephone call slips, telephone memos, telephone bills, microfilm, articles, pamphlets, brochures, studies, notices, summaries, reports, books, teletype messages, accounting entries, accounting records, financial statements, purchasing orders, invoices, tapes, worksheets, video tapes, computer diskettes, digitized material, computer data, computer-generated compilations, and computerized data printouts.

2

690116.2

2.    "All documents" shall mean and include each and every document that refers, reflects, or relates, directly or indirectly, in whole or in part, to the subject matters described in a discovery request.

3.    "Things" shall mean and include "tangible things" as that term is used in Fed. R. Civ. P. 34.

4.    "Person" shall mean and include any natural person, corporation, limited liability company, partnership, firm, association, joint venture, sole proprietorship, trust, department, division, agency and any other legal, business, or governmental entity. Unless otherwise stated, all references to corporations or other legal entities (including, without limitation, any parties to this action) shall encompass (1) all predecessors or successors of such corporations or legal entities, (2) all past or present parents, subsidiaries, or affiliates of such corporations or legal entities and (3) all past or present shareholders, directors, officers, employees, trustees, partners, agents, accountants, attorneys, and representatives of such corporations or legal entities.

5.    "Communication" means any meeting, statement, document, conversation, transmittal of information, or request for information, whether by written, oral, electronic or other means. "Communication" shall include, but is not limited to, correspondence, telegrams, telexes, memoranda, notes, telephone conversations (including messages left on answering machines or with answering services), electronic mail ("e-mail"), and direct personal statements.

6.    "Relate to" or "relating to" include, but are not limited to, the following meanings: constituting, supporting, discussing, mentioning, describing, containing, embodying, reflecting, identifying, concerning, explaining, proposing, suggesting, accompanying, incorporating, referring to, dealing with, or pertaining to in any way.

690116.2

## Specific Definitions

1.    The "1997 Repurchase Program" means the program adopted by the ULLICO Board of Directors in May 1997 to repurchase $30 million of ULLICO Class A and B stock.

2.    The "1998 Repurchase Program" means the program adopted by the ULLICO Executive Committee on May 4, 1998 to repurchase $15 million of ULLICO Class A and B stock.

3.    The "1999 Repurchase Program" means the program adopted by the ULLICO Executive Committee on May 17, 1999 to repurchase $15 million of ULLICO Class A and B stock.

4.    The "Actual 2000 Repurchase Program" means the program adopted by the ULLICO Board of Directors on November 3, 2000 to repurchase $30 million of ULLICO Class A and B stock.

5.    The "2001 Repurchase Program" means program adopted by the ULLICO Board of Directors on May 18, 2001 to repurchase $15 million of ULLICO Class A stock.

6.    The "1998 Stock Offer" refers to the Compensation Committee's July 27, 1998 authorization of the sale of ULLICO Class A stock to ULLICO directors and officers.

7.    The "1999 Stock Offer" refers to the Compensation Committee's May 13, 1999 authorization of the sale of ULLICO Class A stock to ULLICO directors and officers.

8.    "Compensation Committee" means the ULLICO Compensation Committee as formed by the ULLICO Executive Committee on February 11, 1998 and February 13, 1999.

9.    The "Extraordinary Repurchase Program" means the program adopted by the ULLICO Executive Committee on May 10, 2000 and approved by the ULLICO Board of Directors on May 11, 2000 to repurchase $240 million of ULLICO Capital and Class A and B

4                                                            690116.2

stock.

10.     The "Thompson Report" means the Report of the Special Counsel ULLICO Stock

Repurchase Offer and Repurchase Programs and Global Crossing Investment, issued by

Governor James Thompson and the law firm of Winston & Strawn on November 26, 2002.

11.     "You" or "your" shall mean Defendant Billy Casstevens, including employees,

agents, attorneys, accountants, heirs, predecessors in interest, successors in interest, assigns and

any other person acting (or purporting to act) on behalf of Billy Casstevens.


### Requests for Admission

## PLEASE ADMIT THE FOLLOWING STATEMENTS ARE TRUE:

1.     That you purchased 4,000 shares of ULLICO Class A stock pursuant to the 1998 Stock Offer.

2.     That you purchased 4,000 shares of ULLICO Class A stock pursuant to the 1999 Stock Offer.

3.     That at the time you purchased 4,000 shares of ULLICO Class A stock pursuant to the 1998 Stock Offer you knew that the purchase price for those shares was substantially below the book value that would likely be determined as of December 31, 1998 and adopted by the ULLICO Board of Directors the following May as the price for ULLICO stock.

4.     That at the time you purchased 4,000 shares of ULLICO Class A stock pursuant to the 1999 Stock Offer you knew that the purchase price for those shares was substantially below the book value that would likely be determined as of December 31, 1999 and adopted by the ULLICO Board of Directors the following May as the price for ULLICO stock.

5.     That on or about January 16, 2001 you sold 7,312 shares of ULLICO Class A stock for $146.04 per share.

6.     That on or about January 16, 2001 you sold 330 shares of ULLICO Capital Stock for $146.04 per share.

7.     That your sale of stock on or about January 16, 2001 was not, at the time of the sale, authorized by any valid resolution of the Board of Directors.

690116.2

8.     That on or about March 1, 2001 you received a check in the amount of $1,067,844.48 drawn on the funds of ULLICO Inc. in exchange for 7,312 shares of ULLICO Class A stock.

9.     That on or about March 1, 2001 you received a check in the amount of $48,193.20 drawn on the funds of ULLICO Inc. in exchange for 330 shares of ULLICO Capital stock.

10.     That you realized at least $809,628 in pre-tax profits through your sale of ULLICO Class A and ULLICO Capital stock on January 16, 2001.

11.     That your sale of ULLICO stock to ULLICO on January 16, 2001 was outside any formal tender offer.

12.     That for the period beginning after November 1, 2000, you held less than 10,000 shares of ULLICO Class A Stock.

13.     That as of January 16, 2001, the sales price of $146.04 per share of ULLICO Class A stock contained a premium over the actual value of ULLICO Class A stock.

14.     That as of November 3, 2000, the sales price of $146.04 per share of ULLICO Class A stock contained a premium over the actual value of ULLICO Class A stock.

15.     That at the November 3, 2000 Board of Directors meeting, neither Joseph Carabillo nor anyone else disclosed to the Board that, prior to November 3, 2000, Joseph Carabillo sold shares of ULLICO Class A stock to ULLICO for $146.04 per share.

16.     That at the November 3, 2000 Board of Directors meeting, neither Robert Georgine nor anyone else disclosed to the Board that, prior to November 3, 2000, Robert Georgine sold shares of ULLICO Class A stock to ULLICO for $146.04 per share.

17.     That at the November 3, 2000 Board of Directors meeting, neither James Luce nor anyone else disclosed to the Board that, prior to November 3, 2000, James Luce sold shares of ULLICO Class A stock to ULLICO for $146.04 per share.

18.     That at the November 3, 2000 Board of Directors meeting, neither Jacob West nor anyone else disclosed to the Board that, prior to November 3, 2000, Jacob West sold shares of ULLICO Class A and Capital stock to ULLICO for $146.04 per share.

19.     That at the November 3, 2000 Board of Directors meeting neither Martin Maddaloni nor anyone else disclosed to the Board that, prior to November 3, 2000, Martin Maddaloni sold shares of ULLICO Class A stock to ULLICO for $146.04 per share.

20.     That at the November 3, 2000 Board of Directors meeting, neither William Bernard nor anyone else disclosed to the Board that, prior to November 3, 2000, William Bernard sold shares of ULLICO Class A stock to ULLICO for $146.04 per share.

6

690116.2

21.    That at the November 3, 2000 Board of Directors meeting, you did not disclose to the Board that you owned ULLICO Class A and Capital stock.

22.    That at the November 3, 2000 Board of Directors meeting, you did not disclose to the Board that you owned less than 10,000 shares of ULLICO Class A stock.

23.    That at the November 3, 2000 Board of Directors meeting, no Person disclosed to the Board that you owned ULLICO Class A and Capital stock.

24.    That at the November 3, 2000 Board of Directors meeting, no Person disclosed to the Board that you owned less than 10,000 shares of ULLICO Class A stock.

25.    That at the November 3, 2000, Board of Director meeting you voted in favor of the resolution put before the Board of Directors.

26.    That you had a material financial interest, as that term is used in Md. Corporations and Associations Code § 2-419, in the resolution passed at the November 3, 2000 Board of Directors Meeting.

27.    That you did not disclose to the Board of Directors at or before the November 3, 2000 Board of Directors meeting that you had a material financial interest, as that term is used in Md. Corporations and Associations Code § 2-419, in the resolution before the Board on November 3, 2000.

28.    That prior to November 3, 2000, the Board of Directors never authorized Robert Georgine to repurchase ULLICO stock at his "discretion."

29.    That the resolution passed at the November 3, 2000 Board of Directors meeting was not approved by a majority of disinterested directors.

30.    That during 2001 you never disclosed to a majority of disinterested directors of ULLICO Inc. the amount of shares of ULLICO Class A and ULLICO Capital stock you sold on January 16, 2001.

31.    That during 2001 you never disclosed to a majority of disinterested directors of ULLICO Inc. the price of the shares of ULLICO Class A and ULLICO Capital stock you sold on January 16, 2001.

32.    That during 2001 you never disclosed to a majority of disinterested directors of ULLICO Inc. the total profit you realized through your sale of ULLICO Class A and ULLICO Capital stock on January 16, 2001.

33.    That the ULLICO by-laws prescribe who is eligible to hold ULLICO stock.

690116.2

34.     That in May 1997 the Board approved a stock repurchase program whereby beginning in 1997 and continuing until 2008, ULLICO would repurchase a total of approximately $180 million of Class A and B ULLICO stock.

35.     That as presented to the Board, the 1997 Repurchase Program provided that shareholders holding less than 10 shares of ULLICO stock who tendered all their shares pursuant to the 1997 Repurchase Program would have all their shares redeemed, whereas repurchases from shareholders holding more than 10 shares of stock would be prorated if the program was oversubscribed.

36.     That after the Board approved the 1997 Repurchase Program, the terms of the program were changed to exempt from proration shareholders holding fewer than 10,000 shares of ULLICO stock.

37.     That the Board never approved the changes to the 1997 Repurchase Program whereby the terms of the program were changed to exempt from proration shareholders holding fewer than 10,000 shares of ULLICO stock.

38.     That in May 1997 the Board decided to value ULLICO stock under a "book value" method where the annual value of ULLICO stock would be determined by taking the "Total Shareholder Equity" as reflected in the Company's December 31 audited balance sheet, and dividing that amount by the total number of shares outstanding.

39.     That in accordance with the ULLICO stock valuation method adopted by the Board in May 1997, ULLICO's historical share price was:

> a. $27.06 per share from May, 1997 – May, 1998;
>
> b. $28.70 per share from May, 1998 – May, 1999;
>
> c. $53.94 per share from May, 1999 – May, 2000;
>
> d. $146.04 per share from May, 2000 – May, 2001;
>
> e. $74.87 per share from May, 2001 – May, 2002;
>
> f. $46.58 per share from May 2002 – May 2003.

40.     That the ULLICO Executive Committee did not have authority under the ULLICO By-laws or any Board Resolution to cause the Company to issue stock.

41.     That the ULLICO Compensation Committee did not have authority under the ULLICO By-laws or any Board Resolution to cause the Company to issue stock.

42.     That on June 27, 1998, the Compensation Committee purportedly authorized the offer of up to 2,000 shares of ULLICO Class A stock to each director and senior officer of ULLICO.

43.     That the Compensation Committee's decision to offer ULLICO stock to directors and senior officers in 1998 was not formally reported to the Board of Directors or Executive Committee.

44.     That the Compensation Committee's decision to offer ULLICO stock to directors and senior officers in 1998 was not approved by the Board of Directors or the Executive Committee.

45.     That because the members of the Compensation Committee were eligible to participate in the 1998 and 1999 Stock Offer programs, the actions of the Compensation Committee violated the February 11, 1998 and February 13, 1999 Executive Committee resolutions that expressly prohibited the Compensation Committee from participating in matters directly affecting their own compensation.

46.     That in July 1998, ULLICO directors and senior officers were offered the opportunity to purchase 2,000 shares of Class A ULLICO stock at $28.70 per share.

47.     That in October 1998, ULLICO directors and senior officers were offered the opportunity to purchase an additional 2,000 shares of Class A ULLICO stock at $28.70 per share.

48.     That on May 13, 1999, the Compensation Committee authorized the offer of ULLICO stock to directors and senior officers of ULLICO.

49.     That on or about December 17, 1999, ULLICO directors and senior officers were offered the opportunity to purchase 4,000 shares of Class A ULLICO stock at $53.94 per share.

50.     That the Compensation Committee's decision to offer ULLICO stock to directors and senior officers in 1999 was not formally reported to the Board of Directors or Executive Committee.

51.     That the Compensation Committee's decision to offer ULLICO stock to directors and senior officers in 1999 was not approved by the Board of Directors or the Executive Committee.

52.     That the directors and senior officers who purchased stock in 1998 and 1999 were not authorized by the Board of Directors or ULLICO by-laws to purchase ULLICO stock.

53.     That on May 10, 2000, the Executive Committee adopted a resolution recommending that the Board set the price of ULLICO stock at $146.04, based on the 1999 year-end book value of the company.

690116.2

54.     That on May 10, 2000 the Executive Committee adopted a resolution recommending to the Board the approval of a repurchase of ULLICO stock at $146.04 per share, but that such a repurchase was contingent on Global Crossing stock reaching certain price triggers.

55.     That on May 11, 2000, the Board adopted a resolution that set the price of ULLICO stock at $146.04, based on the 1999 year-end book value of the company.

56.     That on May 11, 2000 the Board adopted a resolution approving a repurchase of ULLICO stock at $146.04 per share, but that such a repurchase was contingent on Global Crossing stock reaching certain price triggers.

57.     That under the Extraordinary Repurchase Program all classes of ULLICO stock – including Capital Stock – were eligible for repurchase.

58.     That under the Extraordinary Repurchase Program, in the event the program was oversubscribed, only shareholders holding fewer than 100 shares of ULLICO stock would avoid proration.

59.     That Credit Suisse First Boston issued an opinion that, as structured, the Extraordinary Repurchase Program was favorable to ULLICO stock-holders and would not jeopardize the company's well being.

60.     That Global Crossing stock never reached the necessary trigger price set by the Extraordinary Repurchase Program.

61.     That on November 3, 2000, the Board approved the Actual 2000 Repurchase Program, whereby ULLICO would repurchase $30 million of stock at $146.04.

62.     That at the November 3, 2000 Board of Directors meeting, you failed to disclose to the Board of Directors that you owned less than 10,000 shares of ULLICO Class A stock and therefore personally stood to benefit from the resolution then under consideration which purported to authorize shareholders of Class A stock who held less than 10,000 shares and tendered all their shares to have 100% of their Class A stock repurchased by ULLICO without proration while shareholders with more than 10,000 shares would be severely prorated, and, as a result of such proration, you would receive a disproportionate share of the proceeds from the stock repurchase program vis-à-vis shareholders holding more than 10,000 shares.

63.     That as of November 3, 2000, ULLICO director Terrence O' Sullivan had no knowledge that you owned 9,312 shares of ULLICO Class A stock

64.     That as of November 3, 2000, ULLICO director Terrence O'Sullivan had no knowledge that you owned 330 shares of ULLICO Capital Stock.

690116.2

65.    That under the Actual 2000 Repurchase Program, all shareholders holding more than 2% of all outstanding Class A and Class B stock had to tender 100% of their holdings to participate in the repurchase program.

66.    That if the Actual 2000 Repurchase Program was oversubscribed, ULLICO would repurchase stock on a pro rata basis from shareholders holding 10,000 or more shares of ULLICO Class A stock.

67.    That under the Actual 2000 Repurchase Program, shareholders holding less than 10,000 shares were not subject to proration.

68.    That on December 14, 2000, ULLICO formally offered to repurchase Class A and B ULLICO stock at $146.04 per share, pursuant to the Actual 2000 Repurchase Program.

69.    That the statement in the tender offer documents for the Actual 2000 Repurchase Program that "[t]he Company has not been advised that any of its directors and executive officers presently intend to tender any Shares personally owned by them pursuant to the Offer" was misleading.

70.    That the statement in the tender offer documents for the Actual 2000 Repurchase Program that shares of the company "represent[ed] an excellent long-term investment opportunity" was misleading.

71.    That you took no steps to correct any statements in the tender offer documents for the Actual 2000 Repurchase Program.

72.    That the statement in the November 21, 2000 letter sent to ULLICO shareholders announcing the Actual 2000 Repurchase program that all shareholders would "share equitably in the offering" was misleading.

73.    That the statement in the November 21, 2000 letter sent to ULLICO shareholders announcing the Actual 2000 Repurchase program that the company "continues to reserve its right, pursuant to the bylaws, to repurchase shares outside the Repurchase Program at $25 per share" was misleading.

74.    That in the November 21, 2000 letter sent to ULLICO shareholders announcing the Actual 2000 Repurchase program, the failure to disclose that shareholders holding fewer than 10,000 shares could avoid proration or that such shareholders could sell their shares outside the program at Georgine's "discretion" at the price of $146.04 per share made the letter misleading.

75.    That you never took any steps to correct any statements or omissions in the November 21, 2000 letter sent to ULLICO shareholders announcing the Actual 2000 Repurchase program.

11

690116.2

76.    That between May 2000 and May 2001, Georgine exercised his "discretion" to cause ULLICO to repurchase stock at $146.04 per share outside of the 2000 Actual Repurchase Program.

77.    That the identity of those individuals tendering stock to be repurchased at Georgine's discretion and the amount of stock repurchased from those individuals was never formally disclosed to the Board of Directors.

78.    That between 2000-2001, ULLICO repurchased 305,636 shares of Class A and Capital stock at $146.04 per share.

79.    That between 2000-2001, ULLICO officers and directors received approximately 31% of all funds distributed by the company for stock repurchases.

Dated: February 16, 2007

MILLER & CHEVALIER CHARTERED

By    _____

Anthony J. Trenga (DC Bar #218255)
Brian A. Hill (DC Bar # 456086)
Victor Tabak (DC Bar # 480333)
Matthew T. Reinhard (DC Bar # 474941)
655 Fifteenth Street, N.W., Suite 900
Washington, DC  20005-5701
Tel. (202) 626-5800
Fax. (202) 628-0858
atrenga@milchev.com
Attorneys for Plaintiff

12

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of February, 2007, a true and accurate copy of the foregoing document was faxed and mailed first-class, postage prepaid, to the following:

Thomas M. Hogan, Esq.
Hogan & Heald
11130 Main Street
Suite 310
Fairfax, VA 22030
Tel. (703) 591-0003
Fax. (703) 591-4114

_____
Victor Tabak

690116.2

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Civil Division

| | | |
|---|---|---|
| ULLICO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:06CV01388 (RJL) |
| | ) | |
| BILLY CASSTEVENS, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUESTS FOR ADMISSIONS

#### GENERAL OBJECTIONS:

Defendant objects to all Requests that are premised upon the contents of documents that are not in the possession of Defendant and have not been provided to Defendant by the Plaintiff along with Plaintiff's Requests For Admissions. Therefore, all of the below Responses by Defendant that state that he lacks knowledge or information sufficient to permit him to either admit or deny the Request are specifically made on the basis that he has reviewed all documents that are available to him at this time but that he has not completed discovery and therefore has not completed his reasonable inquiries that would permit him to either admit or deny the Requests, but that discovery is continuing and these Responses will be amended at a reasonable time after the completion of discovery.

#### RESPONSES:

1. Denied as phrased. My wife and I purchased 4,000 shares of ULLICO Class A stock in 1998 with our own after-tax dollars.

2. Denied as phrased. My wife and I purchased 4,000 shares of ULLICO Class A stock in

LAW OFFICES
HOGAN & HEALD
1130 FAIRFAX BOULEVARD
SUITE 310
AIRFAX, VIRGINIA 22030
(703) 591-0003

- 1 -

1999 with our own after-tax dollars.

3. Denied.

4. Denied.

5. Denied as phrased.  My wife and I tendered for repurchase 7,312 shares of our ULLICO Class A stock on January 11, 2001.

6. Denied as phrased.  My wife and I tendered for repurchase 330 shares of our ULLICO Capital stock on January 11, 2001.

7. Denied.

8. Denied as phrased.  My wife and I received a check from ULLICO, Inc. dated March 1, 2001, in the amount of $1,067,844.48, for our 7,312 shares of ULLICO Class A stock.

9. Denied as phrased.  We received a check from ULLICO, Inc. dated March 1, 2001, in the amount of $48,193.20 for our 330 shares of ULLICO Capital stock.

10. Denied.

11. To the best of my knowledge, information and belief, this Request is admitted.

12. Admit that my wife and I jointly owned less than 10,000 shares of ULLICO Class A stock as of November 1, 2000, and thereafter.

13. Defendant can neither admit nor deny this Request.  As of January 16, 2001, the actual value of ULLICO Class A stock had not yet been determined in accordance with the ULLICO stock valuation method that had been established in 1997.

14. Denied.

15. Defendant does not have a copy of the minutes of the November 3, 2000 Board of Directors meeting, and therefore can neither admit nor deny this Request at this time.

16. Defendant does not have a copy of the minutes of the November 3, 2000 Board of Directors

LAW OFFICES
HOGAN & HEALD
110 TYSONS BOULEVARD
SUITE 310
AIRFAX, VIRGINIA 22030
(703) 961-0002

- 2 -

meeting, and therefore can neither admit nor deny this Request at this time.

17. Defendant does not have a copy of the minutes of the November 3, 2000 Board of Directors meeting, and therefore can neither admit nor deny this Request at this time.

18. Defendant does not have a copy of the minutes of the November 3, 2000 Board of Directors meeting, and therefore can neither admit nor deny this Request at this time.

19. Defendant does not have a copy of the minutes of the November 3, 2000 Board of Directors meeting, and therefore can neither admit nor deny this Request at this time.

20. Defendant does not have a copy of the minutes of the November 3, 2000 Board of Directors meeting, and therefore can neither admit nor deny this Request at this time.

21. Defendant admits that he did not make any statement at the November 3, 2000 Board of Directors meeting as to whether he owned ULLICO Class A and Capital stock, but the amount of stock owned by each Director was printed in the Notice of the annual meeting of Shareholders and was presumably known by ULLICO's legal advisers who prepared the "Actual 2000 Repurchase Program."

22. Defendant admits that he did not make any statement at the November 3, 2000 Board of Directors meeting as to whether he owned ULLICO Class A and Capital stock, but the amount of stock owned by each Director was printed in the annual meeting of Shareholders and was presumably known by ULLICO's legal advisers who prepared the "Actual 2000 Repurchase Program."

23. Defendant does not have a copy of the minutes of the November 3, 2000 Board of Directors meeting, and therefore can neither admit nor deny this Request at this time.

24. Defendant does not have a copy of the minutes of the November 3, 2000 Board of Directors meeting, and therefore can neither admit nor deny this Request at this time.

Law Offices
HOGAN & HEALD
ILIO FAIRFAX BOULEVARD
SUITE 310
AIRFAX, VIRGINIA 22030
(703) 591-0414

25. Objection to the form of this Request, which is too vague to be answered.

26. Objection to this Request on the grounds that it is too vague to be answered and that it calls for an expert legal opinion from this Defendant, a lay person, as to the interpretation of a Maryland statute.

27. Objection to this Request insofar as it calls for an expert legal opinion from this Defendant, a lay person, as to the interpretation of a Maryland statute. See also the above Response to Request No. 21.

28. Based upon this Defendant's knowledge, information and belief, this Request is denied.

29. Objection to the form of this Request, which is too vague to be answered.

30. Defendant admits that he did not notify any other Directors of ULLICO, Inc. that he and his wife had sold shares of ULLICO during 2001, but the amount of stock owned by each Director was printed in the annual meeting of Shareholders.

31. See above Response to Request No. 30. In addition, the price of any shares to be purchased by ULLICO was previously disclosed to all Directors.

32. See above Responses to Requests No. 30 and 31. Although not notified by me, all Directors knew the number of shares owned by this Defendant and the price of shares sold back to ULLICO.

33. Admit.

34. Defendant does not have a copy of the minutes of the May 1997 Board of Directors meeting, and therefore can neither admit nor deny this Request at this time.

35. Defendant does not have a copy of the minutes of the May 1997 Board of Directors meeting, but to the best of his knowledge, information and belief there never was any such 10 share provision discussed with the Board, and he therefore denies this Request.

LAW OFFICES
HOGAN & HEALD
1130 FAIRFAX ROAD #
SUITE 310
FAIRFAX, VIRGINIA 22030
(703) 591-0003

- 4 -

36. Denied.

37. Denied.  Defendant denies that the pro-ration was ever set at 10 shares, and therefore denies that the 1997 Repurchase Program was changed as asserted by this Request.

38. Admitted.

39. Admitted.

40. Defendant does not have copies of the minutes of Board of Directors' meetings, but based upon his knowledge, information and belief, this Request is denied.

41. Defendant does not have copies of the minutes of Board of Directors' meetings, but based upon his knowledge, information and belief, this Request is denied.

42. Defendant can neither admit nor deny this Request as phrased, which is objectionable as argumentative.  Defendant's knowledge, information and belief is that the Chairman of ULLICO, Inc. made the offer to each director and senior officer.

43. Objection to the form of this Request, which is denied as phrased.  Defendant does not have copies of the minutes of the Board of Directors or Executive Committee meetings, but to his knowledge, information and belief, the Chairman made the offers to the Board.

44. Objection to the form of this Request, which is denied as phrased.  Defendant does not have copies of the minutes of the Board of Directors or Executive Committee meetings, but to his knowledge, information and belief, the Chairman made the offers to the Board.

45. Objection to the form of the Request which is argumentative, and objection also to the extent that this Request seeks a legal opinion from Defendant.  Also, Defendant does not have copies of those Executive committee resolutions.

46. Admitted.

47. Admitted.

- 5 -

48. Defendant can neither admit nor deny this Request as phrased, which is objectionable as argumentative. Defendant's knowledge, information and belief is that the Chairman of ULLICO, Inc. made the offer to each director and senior officer.

49. Admitted.

50. Objection to the form of this Request, which is denied as phrased. Defendant does not have copies of the minutes of the Board of Directors or Executive Committee meetings, but to his knowledge, information and belief, the Chairman made the offers to the Board.

51. Objection to the form of this Request, which is denied as phrased. Defendant does not have copies of the minutes of the Board of Directors or Executive Committee meetings, but to his knowledge, information and belief, the Chairman made the offers to the Board.

52. Denied.

53. Defendant does not have copies of the minutes of any Executive Committee resolution of May 10, 2000 or of the Board's meeting that month, but admits that the price of ULLICO stock was set at $146.04 in accordance with the stock valuation method adopted in May 1997.

54. Denied as phrased. Defendant does not have copies of any Executive Committee resolution of May 10, 2000 or of the minutes of the Board's meeting that month, but upon information and belief admits that the Board approved the repurchase of ULLICO stock at $146.04 per share, contingent on Global Crossing stock reaching certain price triggers.

55. Defendant does not have a copy of the minutes of the Board's meeting of May 11, 2000, but admits that the price of ULLICO stock was set at $146.04 in accordance with the stock valuation method adopted in May 1997.

56. Defendant does not have a copy of the minutes of the Board's meeting of May 11, 2000, but

LAW OFFICES
HOGAN & HEALD
11141 FAIRFAX BOULEVARD
SUITE 101
FAIRFAX, VIRGINIA 22030
(703) 591-0003

- 6 -

upon information and belief admits that the Board approved the repurchase of ULLICO stock at $146.04 per share, contingent on Global Crossing stock reaching certain price triggers.

57. Defendant admits this Request based upon his knowledge, information and belief.

58. Defendant does not have a copy of the Credit Suisse First Boston opinion, but admits this Request based upon his knowledge, information and belief.

59. Admitted.

60. Admitted.

61. Defendant does not have a copy of the minutes of the board's meeting of November 3, 2000, but admits this Request based upon his knowledge, information and belief.

62. Objection to the form of this Request, which is argumentative. Defendant denies that he had any intent to tender any shares as of November 3, 2000, and therefore denies that he "would receive a disproportionate share" of the proceeds from the stock repurchase program, and also denies that he knew how many shares would be tendered by any shareholder or if any pro-ration would occur.

63. Denied.  The amount of stock owned by each director was printed in the Notice of the annual meeting of Shareholders.

64. Denied.  The amount of stock owned by each director was printed in the Notice of the annual meeting of Shareholders.

65. Defendant is without knowledge or information sufficient to form a belief at this time as to the truth of this Request and therefore can neither admit nor deny this Request at this time .

66. Defendant is without knowledge or information sufficient to form a belief at this time as to the truth of this Request and therefore can neither admit nor deny this Request at this time.

LAW OFFICES
HOGAN & HEALD
1100 RAMSAY ROAD WARD
SUITE 310
ALEXAS, VIRGINIA 22030
(703) 691-9911

- 7 -

67. Defendant is without knowledge or information sufficient to form a belief at this time as to the truth of this Request and therefore can neither admit nor deny this Request at this time.

68. Defendant is without knowledge or information sufficient to form a belief at this time as to the truth of this Request and therefore can neither admit nor deny this Request at this time.

69. Denied.

70. Denied.

71. Objection to the form of this Request in that it is based upon the argumentative premise that there were statements in the tender offer documents which needed to be corrected and that this Defendant was required to take "steps to correct," both of which are denied.

72. Denied.

73. Denied.

74. Denied.

75. Objection to the form of this Request in that it is based upon the argumentative premise that there were statements in the tender offer documents which needed to be corrected and that this Defendant was required to take "steps to correct," both of which are denied.

76. Defendant is without knowledge or information sufficient to form a belief at this time as to the truth of this Request and therefore can neither admit nor deny this Request at this time.

77. Defendant is without knowledge or information sufficient to form a belief at this time as to the truth of this Request and therefore can neither admit nor deny this Request at this time. However, the amount of stock owned by each director was printed in the Notice of the annual meeting of Shareholders.

78. Defendant is without knowledge or information sufficient to form a belief at this time as to the truth of this Request and therefore can neither admit nor deny this Request at this time.

LAW OFFICE
HOGAN & HEALD
11141 FAIRFAX BOULEVARD
SUITE 301
FAIRFAX, VIRGINIA 22030
(703) 591-0003

- 8 -

79. Defendant is without knowledge or information sufficient to form a belief at this time as to

the truth of this Request and therefore can neither admit nor deny this Request at this time.

Respectfully submitted,

HOGAN & HEALD

By: _____

Thomas M. Hogan, Esquire
DC Bar No. 104950
HOGAN & HEALD
11130 Fairfax Blvd., Suite 310
Fairfax, VA 22030
(703) 591-0003
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the a copy of the foregoing Defendant's Responses to Plaintiff's First Request For Admissions was faxed and mailed by first-class, pre-paid postage mail on this 19th day of March 2007 to:

Victor Tabak (DC Bar # 480333)
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, NW, Suite 900
Washington, DC 20005-5701
Tel. (202) 626-5800
Fax. (202) 628-0858
*Attorneys for Plaintiff*

_____

Thomas M. Hogan, Esquire

LAW OFFICES
HOGAN & HEALD
11130 FAIRFAX BOULEVARD
SUITE 310
FAIRFAX, VIRGINIA 22030
(703) 591-0003