Exhibit 19

**LETTER OF TRANSMITTAL**

To Tender Shares of Class A and Class B Common Stock
of
ULLICO Inc.
Pursuant to the Offer to Purchase
Dated December 14, 2000



---

**THE OFFER, PRORATION PERIOD AND WITHDRAWAL RIGHTS WILL EXPIRE AT 5:00 P.M.,
ON TUESDAY, JANUARY 16, 2001 UNLESS THE OFFER IS EXTENDED.**

---

To:    ULLICO Inc.
Joseph A. Carabillo
Vice President and Assistant Secretary
111 Massachusetts Avenue, N.W.
Washington, D.C. 20001

Delivery of this instrument to an address other than shown above does not constitute a valid delivery.

This Letter of Transmittal is to be used only if certificates for Shares are to be delivered with the Letter of Transmittal.

A shareholder owning beneficially as of the close of business on September 30, 2000 and who continues to own beneficially until the Expiration Date fewer than 10,000 Shares may have all such Shares purchased without proration, regardless of the purchase of other Shares pursuant to the Offer

**FOR USE BY HOLDERS OF CLASS A AND/OR CLASS B STOCK AS OF SEPTEMBER 30, 2000**

---

### DESCRIPTION OF SHARES TENDERED

---

| Name(s) and Address(es) of Registered Holder(s) (Please fill in exactly as names(s) appear(s) on certificate(s)) | Stock Certificate Number(s) | Shares Tendered (Attach additional list of necessary) Number of Shares Represented by Certificate(s) | Number of Shares Tendered* |
|---|---|---|---|
| BILLY J. CASSTEVENS AND LOU ELLEN CASSTEVENS 11244 GREENBRIAR CHASE OKLAHOMA CITY, OKLAHOMA 73170 | 95 134 163 | 1,312 2,000 4,000 | 1,312 2,000 4,000 |
| | Total Shares | 7,312 | 7,312 |

*Unless otherwise indicated, it will be assumed that all Shares represented by any certificates delivered to the Company are being tendered.

Exhibit
#25

U-MIA 016187

**SIGN HERE**

Name _BILLY J. CASSTEVENS AND LOU ELLEN CASSTEVENS_
(Please Print)

_Billy J. Casstevens_        _Lou Ellen Casstevens_
Signature(s) of Owner(s) or Representative

Capacity (full title) _OWNERS_

Address _11244 GREENBRIAR CHASE_

_OKLAHOMA CITY, OK 73170_

Area Code and Telephone Number _405 - 692 - 0996_

Tax Payer Identification Number _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_

Dated _1-11-01_

Must be signed by registered holder(s) exactly as name(s) appear(s) on stock certificate(s) or on a
security position listing or by person(s) authorized to become registered holder(s) by certificates and
documents transmitted herewith   If signature is by a trustee, executor, administrator, guardian,
attorney-in-fact, agent, officer of corporation, or other person acting in a fiduciary or representative
capacity, please set forth full title.

**GUARANTEE OF SIGNATURE(S)**
(See page 4 of the Offer of Purchase to determine whether Guarantee is required.)

Authorized Signature _____

Name _____
(Please Print)

Title _____

Name of Firm _____

Address _____

_____

Area code and Telephone Number _____

Dated _____

U-MIA 016188

## STOCKHOLDER CERTIFICATES

February 6, 2001

Billy J. Casstevens and Lou Ellen Casstevens,
As Joint Tenants

| Stock | Source | Issued | Cert # | Current Shares | Disposition | Date |
|-------|--------|--------|--------|----------------|-------------|------|
| Class A | Conversion | 2/6/1998 | A0095 | 1,312.0 ✓ | | |
| Class A | Purchase | 9/15/1998 | A0119 | 2,000.0 — he kept | | |
| Class A | Purchase | 11/2/1998 | A0134 | 2,000.0 ✓ | | |
| Class A | Purchase | 12/29/1999 | A0163 | 4,000.0 ✓ | | |

Capital Shares ____0.0    A Shares __9,312.0    B Shares ____0.0

Total Certificates __4    Current Certificates __4

Voting Shares __9,312.0    Votes __9,312.0

U-MIA 016189

**PLEASE READ THE ACCOMPANYING INSTRUCTIONS CAREFULLY**

HOLDERS OF FEWER THAN 10,000 SHARES

To be completed ONLY if Shares are being tendered by or on behalf of a person who beneficially owned as of the close of business on September 30, 2000 and who will continue to own beneficially until the Expiration Date an aggregate of fewer than 10,000 Shares.

The undersigned either (check one box):

[✓] was the beneficial owner as of the close of business on September 30, 2000 and will continue to be the beneficial owner until the Expiration Date of an aggregate of fewer than 10,000 Shares, and is tendering all such Shares, or

[ ] is an "Eligible Institution" that (i) is tendering, for the beneficial owners thereof, Shares with respect to which it is the record owner and (ii) believes, based upon representations made to it by each such beneficial owner, that each such beneficial owner beneficially owned as of the close of business on September 30, 2000 and will continue to own beneficially until the Expiration Date an aggregate of fewer than 10,000 Shares, and is tendering all such Shares.

U-MIA 016190

Exhibit 20

*faxed: 1/11/01*

Billy J. Casstevens
11244 Greenbriar Chase
Oklahoma City, Oklahoma 73170
Phone: 405-692-0996
Fax:    405-703-0996

JAN 16

January 11, 2000

ULLICO Inc
Joseph A. Carabillo
Vice President and Assistant Secretary
111 Massachusetts Avenue N. W
Washington, D C 2001

Dear Mr. Carabillo,

On the page titled "HOLDERS OF FEWER THAN 10,000 SHARES" I checked the first box indicating that I was tendering all such Shares, however, I would like to retain Class A Stock Certificate Number 119 (2,000 Shares) I feel strongly that as a Member of The Board of Directors of ULLICO Inc, I should invest in ULLICO Inc. to show my confidence in the Company and it's Leadership

I will be submitting for repurchase the following

Class A Stock Certificate # 95 (1,312 Shares), Certificate # 134 (2,000 Shares) and Certificate # 163 (4,000 Shares).

In addition to the above submission, I will be submitting the Capital Stock in hopes that it can be repurchased at the same price paid to repurchase Class A and B Stock.

Capital Stock Certificate # 1838 (100 Shares), Certificate # 1839 (200 Shares) And Certificate # 1896 (30 Shares).

Thank you for any consideration you can give to the above request

Sincerely

Billy J. Casstevens

USDC 0048079

*Exhibit # 22*

Exhibit 21

MEETING OF THE BOARD OF DIRECTORS
OF
ULLICO Inc.

November 3, 2000
111 Massachusetts Avenue, N.W.
Washington, D.C.

ATTENDEES:

DIRECTORS:

| | |
|---|---|
| Morton Bahr | James La Sala |
| John J. Barry | Joseph F. Maloney |
| William G. Bernard | Douglas J. McCarron |
| Marvin Boede | James F. M. McNulty |
| Bill Casstevens | Lenore Miller |
| John E. Cutlerton | Terence O'Sullivan |
| Robert A. Georgine | Jacob F. West |
| Frank Hurt | William H. Wynn |
| John Joyce | Roy Wyse |

OFFICERS:

| | |
|---|---|
| Joseph A. Carabillo | James W. Luce |
| John K. Grelle | Grover L. McKean |

Chairman Georgine called the meeting to order and advised the Directors that Messrs. Biller, Brown, Coia, Gentleman, Hanley, Kruse, Maddaloni, Sombrotto, Sweeney, and Upshaw were unable to attend the Meeting.

The first item on the agenda was the report on corporate stock transactions. As of October 31, 2000, ULLICO Inc. ("ULLICO") had Three Hundred Eleven Thousand Three Hundred Six and two-thirds shares of Capital Stock and Seven Million Eight Hundred Eighty-Four Thousand Three Hundred Thirty-Three shares of Class A and Class B Stock, in total Eight Million One Hundred Ninety-Five Thousand Six Hundred Thirty-Nine shares outstanding. This reflected repurchases of Two Thousand One Hundred Ninety and one-third shares of Capital Stock and Twenty Two Thousand Fifty shares of Class A Stock since our August 30th meeting.

The next order of business was adoption of the Minutes of the August 30, 2000 Meeting of the Board of Directors of ULLICO Inc. as included with the Agenda for this meeting. Chairman Georgine asked if there were any amendments or changes to the Minutes? Hearing none, a motion to adopt the following resolution was made, seconded, and approved:

RESOLVED: "That the Minutes of the Board of Directors Meeting of August 30, 2000, as distributed with the Agenda for this meeting, be and hereby is approved."

Exhibit
#21

USDC 0003167

Chairman Georgine then delivered the following statement to the Board members:

"It is unusual for us to have a Board Meeting at this time of year, but circumstances required a meeting on our Repurchase Program. We are now in the fourth year of our Repurchase Program—a Program designed to both create liquidity for Stockholders and an opportunity to share in the gains or losses of the Company. Since our founding in 1925 and until 1997, our stock was sold for $25.00 per share and was redeemed with a $25.00 repurchase price. People received gains through cash dividends and stock dividends.

With our expanded capitalization in the 90's -- our old program was no longer viable -- so we developed a new program, one you all participated in crafting. Since instituting the program in 1997, we have repurchased over 52 million dollars worth of Company stock. That is 52 million dollars that was shared with Stockholders in that three year period and at per share prices above $25, in fact, in the last three years shares were repurchased at $27.06, $28.70 and $53.94. This year we continue the concept of the Repurchase Program with a repurchase price set by the Board of $146.04. The concept is an important one because we believe it provides continuity and engenders trust. And, while we have had the formal Repurchase Program since 1997, we have also been able to accommodate certain funds, unions, and individuals have needed liquidity. This was done on the basis of sound financial practices.

The next order of business today is before you in the form of a Resolution restating our Repurchase Program. As you will recall, at the Annual Meeting we discussed an extraordinary Repurchase Program. Management then proposed, and you approved, the repurchase of 240 million dollars of Company stock, which would have returned, in one event, more money per share to our Stockholders than was originally invested in the Company -- while ultimately maintaining the relative equity percentages in the Company. It was the best of all worlds. But for sound planning reasons we put in a "trigger" because our fortune is currently so closely tied to the markets right now and to Global Crossings in particular.

The Resolution stated that Global Crossings had to be trading at a target price of $43 and the Company had to have the ability to realize that price in order to fund the Repurchase. This was obviously to ensure that the Company would be adequately protected -- and be able to continue to grow its operations and create additional value for Stockholders. Everyone in the room knows what has happened to the markets in the last six months. If we focus on Global -- at close of business yesterday, Global traded at $23 5/8. It has not reached the $43 trigger.

USDC 0003168

We have not been idle. We have taken some opportunities along the way to realize gains from our position. Let me share the history—in 1998, you will recall that Global Crossings was bidding for US West and as part of that transaction US West made a tender offer for Global Crossings shares at a price of $62.75. At that time we tendered the maximum allowed. Nine percent of our position was purchased by US West at a price of $62.75. We realized a net after-tax gain on that transaction of 108.4 million dollars. More recently we have participated in a secondary offering that involved 2,568,160 shares of Global and realized, after tax, 53 million dollars at a net price of $32 per share. We have also sold two blocks of shares in September and October. 960,000 shares were sold for a net price of $35.34 per share realizing 21.9 million dollars. And we sold an additional 3,000,000 shares at a net price of $26.91 which yielded 52.4 million dollars of realized gains. A total over two years of 235.7 million dollars after tax.

Most recently we entered into a hedge transaction with Bear Stearns -- which gave us the most competitive pricing. We transferred 5 million shares in what is known as a "forward sale." This forward sale is not completed for two years. The amount of the proceeds based on current market price is discounted by the person taking the forward sale. Bear Stearns delivered 95 million dollars in cash and while we do have to set a tax reserve for future taxes of 33 million dollars, we are able to invest the entire cash amount for our 5 million share position. Taxes are not paid on these proceeds until the forward sale is completed in two years and we will earn on the reserve established for taxes. We also have the option to extend that time period depending on the position of Global Crossings and our own position at that time.

In addition, we do participate in any upside or increase in Global's value, up to 50 percent of the share price on the date of the final transaction. On the date of the hedge transaction the price was $23.49 per share and we have the opportunity to participate in roughly $11.75 of any upside gain. That means if in two years Global is trading at $35.25 we will realize approximately another 55 million dollars before taxes. What a hedge does is protect the downside. So we basically have protected our position. Like every other investor in this market it was time to take some of our gains off the table and reduce our market risk. Our average cost of a Global share is 45 cents so there were profits to be taken and there are significant taxes to be paid in the future. We still hold approximately 19 million shares and warrants in Global Crossings. For now I have decided that we will hold that position.

But obviously this is not the kind of realized value we thought key to funding an extraordinary repurchase of 240 million dollars. At the same time we still want to expand on our earlier commitment. You will remember that the original Repurchase Program was targeted to be 30 million dollars in 1997 and over the following 10 years the goal was 15

-3-

USDC 0003169

million dollars each year, conditions permitting. We have offered to buy back 30 million dollars in 1997 -- 15 million dollars both in 1998 and 1999 and we have repurchased in excess of 52 million dollars of our stock in that three year period.

Before you today is a Resolution that would offer a 30 million dollar repurchase to all Stockholders. We have done a number of things. First, we have designated an amount we believe we can do reasonably and maintain our cash needs. This includes the purchase of Amalgamated Bank. It also leaves the Company in a better position for offerings in the future while also allowing the businesses and the services we provide to the labor movement to grow. And, we have extended the date past year end. Because of the timing of this meeting and the upcoming holidays, this seems most equitable. The Executive Committee and this Board sets the value of the stock for purposes of repurchases each year. It is set at the Annual Meeting and it remains until the next Annual Meeting.

In addition, this Resolution also sets some standards. To participate in the Repurchase, a Stockholder must be currently eligible to purchase stock. This does not affect any of the trust funds or health and welfare funds, or the unions, but we do have individuals who were eligible at one time to purchase stock and are no longer eligible. It is not appropriate for them to participate in the offering process.

The Resolution also sets reasonable standards confirming the Chairman's discretion. Since the founding of this Corporation we have repurchased stock, from individuals, from unions and from estates. It is part of the essence of being a closely held corporation. We do not advertise this and we do not encourage it. As we have said from the very beginning, ULLICO Inc. is a long-term investment and has been a long-term investment since 1925.

I have decided that it would be good to have the Board's confirmation of my authority and it is limited in a number of ways. Repurchases cannot be at a price greater than that set by the Executive Committee or the Board and it cannot be from any single stockholder for more than 1 percent of the aggregate total of shares outstanding. Those are simple safeguards so that the Board has not granted unlimited authority to an individual but a reasonable exercise of authority to keep the business of the Corporation functioning. It is important that we move forward.

Lets put this all in perspective. To some extent this may be a comparison of apples to oranges. We began the process of raising capital in 1992 and over a period of three years we raised approximately 232 million dollars in new capital. But while we were raising the capital we were also declaring stock dividends to Shareholders and cash dividends in some instances and if we look at the period from 1992 to date we have declared stock and cash dividends to Stockholders valued at 21.2 million

-4-

USDC 0003170

dollars. And from 1992 to the end of the process of converting Preferred Certificates to stock, we have delivered interest and conversion fee payments totalling roughly 62.3 million dollars to Certificate holders. Since 1997 we have repurchased over 52 million dollars of stock from Shareholders. In total, transactions with the Company have distributed over 134 million dollars of value to Stockholders in eight years. Today by asking you to approve a repurchase of 30 million dollars we would bring the total to 164 million dollars of value distributed to Shareholders in eight years. A significant achievement.

Much as I would have liked to have seen us go forward with the extraordinary repurchase discussed at our last meeting, I think our Shareholders or, perhaps, it is my hope -- that our Shareholders will understand -- the Corporation has acted responsibly and has returned real value to the people who have trusted us while we are growing the Corporation. And Stockholders still own a Company that is more active than ever in supporting the organized labor market and the Company is valued at close to four times what has been invested.

Many of you are Stockholders, in some cases the unions you represent are Stockholders, and several of the pension funds you participate in are Stockholders. They need to know the Company is reliable and that this program will continue. May I have a motion?"

A motion to adopt the following resolution was made, seconded and approved. Therefore, it was:

RESOLVED: "That the Chairman of ULLICO Inc. (the "Corporation") is hereby authorized and empowered, in his discretion, whenever he deems it consistent with sound financial practice and the best interests of the Corporation, to repurchase shares of Class A Stock or Class B Stock ("Class A Stock," "Class B Stock" referred to collectively herein as "Stock") or Capital Stock from those shareholders offering the same to the Corporation; provided that the authorization granted under this resolution shall not be exercised during any period commencing on the date of an annual meeting and ending on the day next preceding the following annual meeting of shareholders in a total amount with respect to any particular stockholder in excess of 1% of the total outstanding Stock and Capital Stock, taken in the aggregate, of the Corporation computed immediately preceding the repurchase in question." And, it was

FURTHER
RESOLVED: "That the Chairman, in exercising the powers set forth in the preceding resolution, is hereby authorized and empowered to effect such purchases of Stock and Capital Stock offered to the Corporation at such price per share as he shall deem appropriate; provided, however, that such price shall not be greater than that most recently specified by the Board of Directors. The authority granted by this resolution and the preceding resolution is in addition to the authority granted by the following resolutions." And, it was

-5-

FURTHER
RESOLVED:     "That the powers of the Chairman under the preceding resolutions, the following resolutions, and any future resolutions adopted with respect to the repurchase of Stock or Capital Stock of the Corporation, may be exercised with respect to Stock or Capital Stock held by any Director or Officer whatsoever of the Corporation as fully as if such Directors or Officers were persons eligible to purchase Stock or Capital Stock of the Corporation, but were not Directors or Officers; a report of such purchases from Directors and Officers shall be made from time to time to the Compensation Committee." And, it was

FURTHER
RESOLVED:     "That for repurchases of Stock and Capital Stock occurring after the date of the Corporation's most recent Annual Meeting, that is to say, May 11, 2000, the maximum repurchase price per share shall be $146.04, being the repurchase price selected by the Board of Directors on such date and representing the book value per share as of December 31, 1999, calculated by taking the total shares of Stock and Capital Stock outstanding at year end and dividing that number into "Total Stockholders Equity" as reported on the Corporation's Audited Financial Statements." And, it was

FURTHER
RESOLVED:     "That the following guidelines are established for the annual repurchase program in respect of the year 2000:

I.     Purchases of Stock under the repurchase program shall be limited in overall amount to $30 million.

II.     The purchase price shall be the maximum price which was ratified and confirmed in the foregoing resolutions.

III.     Prorationing as to shares tendered shall be applicable with respect to tenders if the maximum purchase amount aforesaid would otherwise be exceeded. The Chairman or other appropriate officers designated by him may provide for appropriate rounding in such proration.

IV.     A period of at least 30 days shall be provided for the making of tenders and any prorationing, with such period to terminate on a specified date which shall not be later than January 16, 2001.

V.     A tender of shares of Stock by a stockholder who holds 10,000 shares or fewer of Stock and who properly tenders all shares of Stock that such stockholder beneficially owns will not be subject to the prorationing provisions nor in the aggregate to the overall limit on purchases set forth above. A tender of shares of Stock by a stockholder who holds 10,000 shares or fewer of Stock and who properly tenders less than all shares of Stock that such stockholder beneficially owns will be subject to the prorationing provisions and in the aggregate to the overall limit on purchases set forth above. Purchases from such stockholders otherwise may be made by the Chairman at or below the price from time to time last established by the Board of Directors, whether or

USDC 0003172

not during the pendency of the tender offer provided for by this resolution, at any time from the date of the annual meeting in the year 2000 to the date next preceding of the annual meeting in the year 2001. Such purchases shall be of the entirety of the Stock held by the stockholder offering the same or, at the discretion of the Chairman, of a portion thereof.

VI. The implementation of the repurchase program will be subject to the Corporation's receiving tenders of 100% of the shares beneficially owned by each and every stockholder which holds in excess of 2% of the shares of Stock; provided that management may modify or waive such condition at the discretion of the Chairman so long as the repurchase will not cause a significant redistribution of equity. Management may impose such other terms and conditions on tenders as it deems necessary or appropriate and not inconsistent with these resolutions.

VII. The foregoing guidelines supersede those established by the Board at its meeting on May 11, 2000, with respect to a year 2000 repurchase program." And, it was

FURTHER
RESOLVED:     "That notwithstanding any of the preceding resolutions this day adopted, no holder of Capital Stock and no stockholder who is not at the time in question eligible to purchase Stock of the Corporation shall be permitted to participate in the tender procedure provided by the preceding resolution, and no Capital Stock or Stock shall be otherwise purchased from a stockholder at a time, when such stockholder is not eligible to acquire Capital Stock or Stock in the Corporation, except that the Chairman may exercise his discretion to purchase such Capital Stock or Stock on behalf of the Corporation provided for by the first of the resolutions above, but not at a price higher than the price last fixed by the Board of Directors preceding the last day on which such stockholder was eligible to purchase Capital Stock or Stock in the Corporation. Notwithstanding the foregoing sentence, the foregoing sentence of this resolution shall not be applicable to:

(i)     A stockholder who was an officer or employee of the Corporation who has accepted early or normal retirement or becomes disabled, in each case as defined by an employee benefit plan maintained by the Corporation; or

(ii)     A stockholder who has served for a period of 3 years or more as a Director of the Corporation; or

(iii)     The fiduciary of the estate of any natural person which estate has acquired Capital Stock or Stock of the Corporation upon the death or adjudicated incompetency of any person in either of categories (i) and (ii) just set forth; or any other person succeeding by operation of law or by joint tenancy upon the death of any such person; or

(iv)     The fiduciary of the estate of any stockholder who, at the time of his or her death or adjudicated incompetency, was eligible to purchase Capital Stock or Stock of

-7-

USDC 0003173

the Corporation; or any other person succeeding by operation of law or by joint tenancy upon the death of any such person." And, it was

FURTHER
RESOLVED:    "That nothing in the foregoing resolutions shall be deemed to alter or modify any vested contractual right of a shareholder set forth in a written agreement with the Corporation, to sell Capital Stock or Stock to the Corporation." And, it was

FURTHER
RESOLVED:    "That any and all actions taken by the Chairman or other appropriate officers of the Corporation falling within the scope of any of the preceding resolutions and consistent therewith taken at any time, whether prior or subsequent hereto, are hereby confirmed, ratified, and approved."

The Chairman then noted the conclusion of the official business. A motion was called for to adjourn the Meeting of the Board of Directors of ULLICO Inc. Motion was made, seconded, and approved.

Joseph A. Carabillo
Vice President and
Assistant Secretary

J:\CORPORATE\SECRETARY\MEETINGS\MINUTES\MINUTES 11-00
November 3, 2000-ULCO Board Minutes

-8-

USDC 0003174

Exhibit 22

MEETING OF THE BOARD OF DIRECTORS
OF
ULLICO Inc.

May 11, 2000
The Washington Court Hotel
Washington, D.C.

**ATTENDEES:**

**DIRECTORS:**

Morton Bahr
John J. Barry
William G. Bernard
Marvin Boede
Kenneth J. Brown
Bill Casstevens
John E. Cullerton
Robert A. Georgine
Frank Hanley
James La Sala
Martin J. Maddaloni

Joseph F. Maloney
Douglas J. McCarron
James F. M. McNulty
Lenore Miller
James J. Norton
John J. Sweeney
Eugene Upshaw
Jacob F. West
William H. Wynn
Roy Wyse

**OFFICERS:**

Joseph A. Carabillo
John K. Grelle

James W. Luce
Grover L. McKean

Chairman Georgine called the meeting to order and advised the Directors that Messrs. Biller, Coia, Gentleman, Hurt, Joyce, Kruse, and Sombrotto were unable to attend the Meeting.

The Chairman asked Mr. Barry to introduce the first agenda item. Mr. Barry told the Board that three years had passed and it was time to ask for a motion re-electing Mr. Georgine to his office for a period of three years. It was

RESOLVED:    "That Robert A. Georgine is hereby reelected to the position of Chairman, President and Chief Executive Officer for a period of three years, effective May 11, 2000."

Motion was made, seconded, and approved.

The Chairman thanked Mr. Barry and then stated that starting a new term, he wanted to appoint a committee on Corporate Governance. It is time to examine our practices and procedures as we begin the Year 2000 and a new millennium of service. The Chairman is authorized to appoint the members of this new Committee. Motion was made, seconded, and approved.

Next, the Chairman offered the Financial Report. The Consolidated Statement of Operations showed income from insurance, investments, and all other sources amounted to $758,367,000. Total benefits paid to policyholders and their beneficiaries and other expenses, amounting to $654,089,000. Eleven million, nine hundred, eighty-one thousand dollars ($11,981,000) was paid in dividends by the company to policyholders.



USDC 0169132

Total Assets were $5,025,475,000 an increase of $1,348,509,000, and total stockholders' equity increased during 1999 by $746,669,000 to $1,201,750,000.

The total of the Company's invested assets including bonds, stocks and mortgages at the close of 1999 was $2,376,568,000, of which $125,362,000 were mortgages, $315,776,000 were long-term bonds, $208,241,000 were short-term investments and $1,698,310,000 were other investments including equity securities, investment in Global Crossings, and limited partnership investments. Also included was the Company owned real estate, which, net of mortgages, amounted to $8,824,000. Net investment income from the foregoing, and all other investments, amounted to a net of $48,201,000.

The charts, statistics, and financial results presented represented in summary form the Company record for 1999.

The next order of business was adoption of the Minutes of the September 22, 1999 Meeting of the Board of Directors of ULLICO Inc as included with the Agenda for this meeting. Chairman Georgine asked if there were any amendments or changes to the Minutes? Hearing none, said Minutes were adopted.

The Chairman then asked for a motion on the resolution authorizing the Chairman to vote the shares of ULLICO Inc.'s subsidiaries. Since ULLICO Inc. is the sole Stockholder of the issued and outstanding shares of The Union Labor Life Insurance Company, Ulico Casualty Company, Ulico Insurance Group, Inc., Zenith Administrators, Inc., Trust Fund Advisors, Inc., UNIONCARE Inc., ULLICO Management Company, MRCo, Inc., and ULLICO Transport Company, its vote is necessary for the transaction of business at the Annual Stockholders meeting for these companies and any other subsidiary the Corporation may purchase or create.

It was recommended that the Board of Directors adopt the following resolution authorizing the Chairman, President, and Chief Executive Officer to vote ULLICO Inc.'s shares of The Union Labor Life Insurance Company, Ulico Casualty Company, Ulico Insurance Group, Inc., Zenith Administrators, Inc., Trust Fund Advisors, Inc., UNIONCARE Inc., ULLICO Management Company, MRCo, Inc., and ULLICO Transport Company, and any other subsidiary:

RESOLVED: "That the Board of Directors hereby empowers and authorizes the Chairman, President, and Chief Executive Officer to vote the shares of stock in The Union Labor Life Insurance Company, Ulico Casualty Company, Ulico Insurance Group, Inc., Zenith Administrators, Inc., Trust Fund Advisors, Inc., UNIONCARE Inc., ULLICO Management Company, MRCo, Inc., and ULLICO Transport Company, and any other subsidiary owned by ULLICO Inc., or one of its subsidiaries, at the Annual Stockholders Meeting of each subsidiary, as, in his discretion, he may deem appropriate and proper on any and all matters or transactions which may require a vote of Stockholders."

Motion was made, seconded, and approved.

Chairman Georgine noted that the Executive Committee was elected annually. Article VI, Section 2 of the By-Laws, as amended by the Executive Committee, provides for the election of the membership of the Executive Committee by the Board of Directors for a term of one year, such Committee to consist of not more than sixteen Directors and in addition thereto the Chairman and Chief Executive Officer, the President, and the Secretary-Treasurer.

-2-

USDC 0169133

It was recommended that the Executive Committee consist of the Directors named below, whose term of office expired that day and were to be re-elected as Directors at the Stockholders' Meeting to follow.

The Executive Committee now consists of the following 15 Directors and 1 Officer/Director:

| | |
|---|---|
| John J. Barry | Frank Hanley |
| Marvin J. Boede | John T. Joyce |
| Kenneth J. Brown | Joseph F. Maloney |
| Bill J. Cassievens | Douglas J. McCarron |
| Arthur A. Coia | James F. M. McNulty |
| John E. Cullerton | James J. Norton |
| John F. Gentleman | Jacob F. West |
| Robert A. Georgine | William H. Wynn |

It was further recommended that the Executive Committee be authorized to fill existing vacancies and any other vacancies which may occur for any reason whatsoever if and when the Executive Committee deems it advisable to do so.

Motion was made, seconded and approved.

Next, the Chairman introduced the Executive Committee's approval the day before of a truly extraordinary repurchase program. As there has been a significant increase in ULLICO's value, Management evaluated ULLICO's financial needs and circumstances and recommended an offer to repurchase 20% of the outstanding shares of the Corporation from all stockholders: Capital, Class A, and Class B. The amount of shares to be repurchased, assuming all shareholders submit to the tender, is 1,645,623 shares. Which would be an approximate cost of $250 million to the Corporation. In order to meet this obligation, the Corporation would actually liquidate approximately $360 million of its holding in Global Crossings. As the resolution provides, all of this has until year-end to occur.

The resolution also provides for certain triggers to protect the interest of the Corporation and ultimately the interest of the stockholders. First, the recent volatility of the market has caused a precipitous drop in the value of Global Crossings' stock. As recently as April 24th, Global Crossings traded at a low of $26.25 and it closed at just under $33 on May 9th. To protect the Corporation, the tender offer will be based on three criteria. First, Global Crossings must be trading at a minimum of $43 per share in order to trigger the actual repurchase. And, the Corporation must have a reasonable opportunity to realize its gains. Second, a minimum of 93% of all shares outstanding must be submitted for repurchase or at the Company's discretion, or if all shareholders with greater than one percent have submitted their stock, the Corporation will be free to implement the repurchase offer providing the financial conditions are met. The combination of a minimum trading price and the requirement of a minimum submission protect the Corporation, both from financial harm and from a significant reapportionment of the ownership of the Corporation through a repurchase of this magnitude. ULLICO Inc.'s by-laws clearly specify the intent to keep the Company as widely held as possible. There is no intent in this repurchase to cause significant change in that overall goal. The third provision is shareholders with 100 shares or fewer, who submit to the tender, will have all of their shares repurchased. The reason for this is merely an attempt to eliminate unnecessary bookkeeping — we have many shareholders with less than 100 shares of Capital Stock, our older form of stock, that have been on the books for many years.

-3-

USDC 0169134

As stated in the resolution, management evaluated the Corporation's financial needs and does not believe ULLICO needs the current level of stockholder equity to continue operations. But ULLICO does need a reasonable level of stockholders equity; therefore, the need for at least a minimum price on Global Crossings and an opportunity to realize gain.

The Chairman further pointed out that for all of those stockholders that have bought their shares at $25 per share — and who have retained their shares — this repurchase will generate a full repayment of the original $25 investment per share and an additional $4.20 per share. An additional 16.8% on top of prior returns and the return of the original purchase price. And our Capital Stock shareholders and the people who bought Preferred Certificates have all done well.

Credit Suisse First Boston evaluated the repurchase program and they have issued an opinion, which was included with the agenda item. They concluded that the offer is favorable to our stockholders and has been balanced in a manner so it will not jeopardize the Corporation's well being. It was

RESOLVED:     "That in 2000, the Corporation on October 1st, or as soon thereafter as is practical and in conformance with law and regulation, will offer in an appropriate form of transaction to repurchase approximately 20% of the outstanding shares of ULLICO Inc. stock at an approximate cost of $250,000,000 from all holders of Capital Stock, Class A, and Class B Stocks with the repurchase to be effective on November 1st, or as soon thereafter as is practical, economically sound, and in conformity with law and regulation." And, it was

FURTHER
RESOLVED:     "That said repurchase program will be in substantial conformity with the Term Sheet which is attached (See Tab D) and made part of this resolution and which will be included in its entirety with the minutes of this meeting, and will be subject to the Corporation receiving i) tenders from each and every stockholder which holds in excess of 1% of company stock; or ii) at minimum receiving tenders representing 93% of all classes of stock issued and outstanding; and iii) Global Crossings, Ltd. must be trading at no less than $43 per share and management is able to realize the gains." And, it was

FURTHER
RESOLVED:     "That the repurchase program will be based on "Book Value". The Book Value will be determined at the repurchase date based on the year-end audited financials of ULLICO Inc. The calculation shall be accomplished by taking the "Total of Stockholders Equity" as shown on the financial statement and dividing it by the total number of shares outstanding of Class A, Class B, and Capital Stock." And, it was

FURTHER
RESOLVED:     "That for year-end 1999, said calculation establishes a per share value of $146.04 to be used in calendar year 2000 for repurchases." And, it was

-4-

USDC 0169135

FURTHER
RESOLVED: "That the Corporation recognizes that the form of this repurchase may cause individuals subject to taxation to be subject to ordinary income tax on the gain. The Corporation will either offer to increase the repurchase from these taxable individuals to 40%, or such amount as is necessary to secure United States capital gains treatment, or if permitted by law, will provide an additional payment for the 20% of shares repurchased equal to the difference between the usual rate of United States capital gains treatment and the maximum rate for ordinary income tax." And, it was

FURTHER
RESOLVED: "That the appropriate officers and employees of the Corporation shall be, and each of them hereby is authorized, directed and empowered to, on behalf of the Corporation, acknowledge, execute and deliver any and all such actions or documents, which may be necessary or desirable to effectuate the foregoing resolutions, and their acts and deeds in so doing shall be conclusively presumed to be the acts and deeds of the Corporation."

The Chairman asked for a Motion approving the repurchase program. Motion was made, seconded and approved.

Next, Mr. Georgine offered the Report of the Nominating Committee of ULLICO Inc. The Nominating Committee, appointed by Chairman Georgine with the approval of the Executive Committee, held its meeting on February 11, 2000. The Nominating Committee submitted the following as its nominations and recommendations for the election of Directors at the Annual Meeting of Stockholders to be held in Washington, D.C., on May 11, 2000.

The terms of eight Directors will expire at the Meeting of Stockholders to be held in Washington, D.C., on May 11, 2000.

The Nominating Committee has unanimously nominated the following for election for a term of three years, expiring in 2003:

| | |
|---|---|
| John J. Barry | Terence M. O'Sullivan |
| Morris Biller | Martin J. Maddaloni |
| John F. Gentleman | James J. Norton |
| Robert A. Georgine | John W. Wilhelm |
| John T. Joyce | Roy Wyse |

The Nominating Committee recommended that the Board of Directors and/or the Executive Committee be authorized to fill these vacancies and/or any other vacancies which may occur on the Board of Directors if, and when, the Board of Directors and/or the Executive Committee deemed it advisable to do so.

Election of all of the foregoing will bring to 30 members the number serving on the Board of Directors.

-5-

USDC 0169136

The Chairman asked for a Motion accepting the Report. Motion was made, seconded, and approved.

The Chairman then noted the conclusion of the official business. A motion was called for to adjourn the Meeting of the Board of Directors of ULLICO Inc. Motion was made, seconded, and approved.

Joseph A. Carabillo
Vice President and
Assistant Secretary

Z:\CORPORATE\SECRETARY\INCORPORATED MINUTES.jmp
May 15, 2003-1400 Board Minutes

-6-

USDC 0169137

Exhibit 23



**Robert A. Georgine**
Chairman, President and CEO

ULLICO Inc.
111 Massachusetts Ave., N.W.
Washington, DC 20001
202/682-0900

July 12, 2000

Billy J. Casstevens
11244 Greenbriar Chase
Oklahoma City, OK 73170

RE:    **ULLICO Inc. 2000 Extraordinary Stock Repurchase Program**

Dear Stockholder:

As of year-end 1999, ULLICO Inc. ("ULLICO") has experienced an extraordinary unrealized gain from a single investment. This investment was part of a private placement program involving $179 million invested in a total of 82 investments, including the Global Crossings, Ltd. investment. On an after tax basis, our internal rate-of-return on the 82 investments has been in excess of 40% including the unrealized gain in Global Crossings, Ltd. At year end 1999, based on significant part of the unrealized gain, ULLICO had total stockholders equity of $1.2 billion and corporate operations and infrastructure are not designed to support or generate an adequate return on equity for that $1.2 billion of stockholders equity.

Therefore, at its Annual Meeting held on May 11, 2000, ULLICO announced the approval of an Extraordinary Stock Repurchase Program (the "Repurchase Program") for 2000. The form of the distribution will be similar to the repurchase offers of recent years. However, there will be different elements.

Prior to year-end 2000, ULLICO will make an offer to repurchase up to 20% of the total issued and outstanding shares of all classes of stock -- Capital, Class A, and Class B -- at the 1999 year-end book value of $146.04. This is a 171% increase over the value of $53.94, which was used for last year's - 1999 Repurchase Program. The transaction will be structured to provide the most beneficial tax treatment to all shareholders, but in order to accomplish this extraordinary distribution and ultimately protect the company and its stockholders from any adverse impact, it was necessary to establish certain criteria which must be met before the repurchase can take place.

The 2000 Repurchase Program will be subject to the following conditions i) Global Crossings, Ltd. must be trading at no less than $43 per share and management has a practical opportunity to realize the gains in order to fund the Repurchase Program; 2) further, the company must receive tenders from each and every stockholder which holds in excess of 1% of company stock; or 3) at minimum it must receive tenders representing 93% of all classes of stock issued and outstanding. Restrictions as required by law and regulation may be added to the structure.

**U-MIA 016232**

Obviously, we are pleased with our year-end result for stockholders and we hope to be able to deliver this value to our Stockholders through this year's Repurchase Program. If you have any questions, please feel free to contact me or our Chief Legal Officer, Joseph Carabillo, at (202) 682-4909.

This letter is not intended as an offer to purchase stock -- that can only be done through an official Offering Memorandum, which you will receive at the appropriate time.

Sincerely and fraternally yours,

Robert A. Georgine

Exhibit 24



Robert A. Georgine
Chairman, President and CEO

ULLICO Inc
111 Massachusetts Ave., N.W.
Washington, DC 20001
202/682-0900

March 1, 2001

<u>VIA OVERNIGHT MAIL</u>

Billy J. Casstevens and Lou Ellen Casstevens
11244 Greenbriar Chase
Oklahoma City, OK 73170

RE:    **Offering Memorandum Dated December 14, 2000**
       **ULLICO Inc. Stock Purchase Program 2000**
       **Offers of Holders with Fewer than 10,000 Shares**

Dear Bill:

In response to ULLICO Inc.'s Offering Memorandum, we received Certificate(s) No. 95, 134, and 163, representing a total of 7,312 shares of Class A Stock. All shares held were properly tendered in accordance with the terms of the Offering Memorandum. Therefore, ULLICO Inc., is issuing in payment, at the rate of $146.04 per share, the amount of $1,067,844.48. A check in that amount is enclosed made out to the holder of record, or as otherwise directed in the Letter of Transmittal.

If you have any questions, please feel free to contact me directly or our Vice President and Chief Legal Officer, Joseph A. Carabillo. His direct number is (202) 682-4909.

Sincerely and fraternally,

Bob Georgine

Enclosures

cc: J. A. Carabillo

**ULLICO Inc.**
1 Massachusetts Avenue, N.W.
Washington, D.C. 20001
(202) 682 - 0900

22000673

62-17
311

| DATE | PAY EXACTLY | | AMOUNT |
|------|-------------|--|--------|
| 03-01-01 | | ★1067844 DOLLARS 48 CENTS | $ ★1067844.48 |

VOID AFTER 100 DAYS

TO THE ORDER OF
BILL J. CASSTEVENS AND LOU ELLEN CASSTEV
11244 GREENBRIAR CHASE

OKLAHOMA CITY          OK 73170

ALLFIRST FINANCIAL CENTER, N.A. MILLSBORO, DE 19966

TWO SIGNATURES REQUIRED

⑈220006739⑈  ⑈031100173⑈     3533070

---

DETACH LOWER PORTION AT PERFORATION AND RETAIN FOR YOUR RECORDS

| REFERENCE NUMBER | DATE | CHECK NUMBER |
|------------------|------|--------------|
| KEB-093 | 03-01-01 | 22000673 |

REPURCHASE 7312 SHARES OF CLASS A STOCK @ $146.04 PER SHARE

100008

**ULLICO Inc.**
111 Massachusetts Avenue, N.W.
Washington, D.C. 20001
(202) 682 - 0900

002

| CHECK AMOUNT |
|--------------|
| $ ★1067844.48 |