Exhibit 25

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Civil Division

| | |
|---|---|
| ULLICO INC. | CIVIL ACTION NO: 2006 CA 004929 B |
| | CALENDAR NO: 2 |
| v. | JUDGE: Maurice A. Ross |
| JAMES MCNULTY | NEXT EVENT: Dispositive Motions Decided May 3, 2007 |

## AFFIDAVIT OF MARCELLE BENJAMIN

Marcelle Benjamin hereby declares under the penalty of perjury as follows:

1.    My name is Marcelle Benjamin.  I am providing this Affidavit in connection with ULLICO Inc.'s Motion for Partial Summary Judgment in the above-captioned action.  The information set forth in this Affidavit is, unless otherwise indicated, based on my personal knowledge and the books and records of ULLICO Inc.

2.    I am over 18 years old, and I am competent to testify to the facts and information contained herein.

3.    I currently serve as Assistant Corporate Secretary at ULLICO Inc.

4.    My job responsibilities currently include maintaining corporate records, including maintaining the ULLICO stock ledger for all classes of ULLICO stock.

5.    Attached hereto as Exhibit 7 of the Statement of Material Facts as to which ULLICO Contends there is no Genuine Dispute in the above-captioned action is a true and correct copy of the minutes of the Feb. 11, 1998 Meeting of the Executive Committee of ULLICO Inc.

6.    Attached hereto as Exhibit 8 of the Statement of Material Facts as to which ULLICO Contends there is no Genuine Dispute in the above-captioned action is a true and

correct copy of the remarks of Robert A. Georgine at the July 27, 1998 ULLICO Inc. Compensation Committee Meeting.

7.    Attached hereto as Exhibit 9 of the Statement of Material Facts as to which ULLICO Contends there is no Genuine Dispute in the above-captioned action is a true and correct copy of the minutes of the July 27, 1998 Meeting of the Compensation Committee of ULLICO Inc.

8.    Attached hereto as Exhibit 11 of the Statement of Material Facts as to which ULLICO Contends there is no Genuine Dispute in the above-captioned action is a true and correct copy of the minutes of the Feb. 13, 1999 Meeting of the Executive Committee of ULLICO Inc.

9.    Attached hereto as Exhibit 12 of the Statement of Material Facts as to which ULLICO Contends there is no Genuine Dispute in the above-captioned action is a true and correct copy of the minutes of the May 13, 1999 Meeting of the Compensation Committee of ULLICO Inc.

10.    Attached hereto as Exhibit 14 of the Statement of Material Facts as to which ULLICO Contends there is no Genuine Dispute in the above-captioned action is a true and correct copy of the minutes of the May 10, 2000 Meeting of the Executive Committee of ULLICO Inc.

11.    Attached hereto as Exhibit 17 of the Statement of Material Facts as to which ULLICO Contends there is no Genuine Dispute in the above-captioned action is a true and correct copy of a July 12, 2000 letter from Robert Georgine to ULLICO Inc. shareholders.

12.    Attached hereto as Exhibit 18 of the Statement of Material Facts as to which ULLICO Contends there is no Genuine Dispute in the above-captioned action is a true and

correct copy of the proxy statement prepared for ULLICO shareholders prior to the May 2000 meeting of the shareholders of ULLICO Inc.

13.    Based on my knowledge and review of the ULLICO stock ledgers and shareholder records, I confirm that James McNulty:

      i.    Purchased 615 shares of ULLICO Class A stock on November 2, 1998 for $28.70 per share;

      ii.    Purchased 250 shares of ULLICO Class A stock on December 29, 1999 for $53.94 per share;

      iii.    Since 1969, purchased for $25 per share, or was issued 1,685 shares of ULLICO Capital stock, which he held as of June 1, 1995;

      iv.    Sold to ULLICO 865 shares of ULLICO Class A stock on January 16, 2001 for $146.04 per share;

      v.    Sold to ULLICO 1535 shares of ULLICO Capital stock on March 2, 2001 for $146.04 per share;

      vi.    Realized a pre-tax profit of $280,986 through his purchase and sale of ULLICO stock between 1969 and 2001.

14.    Based on my knowledge and review of the ULLICO stock ledgers and shareholder records, I confirm that:

      i.    ULLICO shareholders holding over 10,000 shares of ULLICO stock who participated in the Actual 2000 Repurchase Program were prorated and were permitted to redeem only 2.2% of their stock.

      ii.    In 2000 and 2001, through the $30 million program and the repurchases of stock by ULLICO pursuant to Mr. Georgine's discretion, 20 ULLICO

746619 3

officers and directors, including Mr. McNulty received a total of 31% of

the total funds paid by the company to redeem ULLICO Class A and

Capital stock at $146.04 per share.

    I HEREBY DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE DISTRICT OF COLUMBIA THAT THE FOREGOING IS TRUE AND CORRECT.

Dated: April 3, 2007

_____
Marcelle Benjamin

State of Maryland )

County of Montgomery )

    Subscribed and sworn to (or affirmed) before me on this 3 day of April, 2007 by Marcelle Benjamin, personally known to me to be the person who appeared before me.

_____

CATHERINE M. O'BRIEN
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires January 21, 2008

4

746649.3

Exhibit 26

ULLICO Inc.
111 Massachusetts Avenue, N.W.
Washington, D.C. 20001

## Notice of Annual Meeting of Stockholders to be held May 11, 2000

As a Stockholder, you are cordially invited to attend the Annual Meeting of Stockholders of ULLICO Inc., on Thursday, May 11, 2000 at 3:00 p.m. at The Washington Court Hotel, 525 New Jersey Avenue, N.W., Washington, D.C.

This meeting will elect directors, select independent accountants for the calendar year 2000, and transact such other business as may properly come before the meeting. The record date for determination of Stockholders entitled to notice of and to vote at the meeting and at any adjournment or adjournments thereof is the close of business May 1, 2000. The stock transfer books will not be closed.

Each Stockholder is requested to sign the proxy on the accompanying form and promptly mail it to the Company in the enclosed envelope. Any Stockholder present at the meeting may vote personally on all matters brought before the meeting and in that event, this proxy will become void.

Prompt attention by Stockholders to this request will reduce the expense incident to the solicitation of proxies and greatly assist in the preparation for this meeting.

You are also cordially invited to attend a reception for Stockholders which will take place immediately following the Annual Meeting.

The favor of a reply, on the enclosed card, is requested so that the appropriate reservations may be made.

Robert A. Georgine
Chairman, President, and
Chief Executive Officer

Washington, D.C.
April 11, 2000

## PROXY STATEMENT

This proxy statement is sent to the Stockholders in connection with the Annual Meeting to be held on May 11, 2000, and any adjournment or adjournments thereof.

There are outstanding and entitled to be voted at the meeting, 314,732 shares of Capital Stock, and 7,780,103 shares of Class A Stock. Each share is entitled to one vote. Any Stockholder giving a proxy has the power to revoke it at any time prior to the effective exercise thereof.

Holders of Capital Stock and Class A Stock at the close of business May 1, 2000, will be entitled to vote at the meeting and at any adjournment or adjournments thereof, in accordance with Company by-laws. The Company may request verification of stock ownership or voting authority.

## ANNUAL REPORT TO STOCKHOLDERS

The financial statements of the Company for the fiscal year ended December 31, 1999 are enclosed herewith. The complete Annual Report with comparative financial statements and exhibits will be presented and distributed at the Annual Meeting of Stockholders on May 11, 2000. Copies of such Annual Report with comparative financial statements and exhibits will be subsequently mailed to all Stockholders.

## SELECTION OF INDEPENDENT ACCOUNTANTS

The Company recommends confirmation of PricewaterhouseCoopers, independent accountants, to audit the books and accounts of the Company for the current calendar year ending December 31, 2000.

## ELECTION OF DIRECTORS

The shares represented by the proxies will be voted for the election of the nominees listed below as directors to hold office for the indicated period of years and until their respective successors are elected and qualified. If any such nominees shall be unable to serve, which is not now contemplated, the holders of the proxies may vote for a substitute nominee. The matter of nominations and elections to fill any vacancies which may occur prior to or at the Stockholders Meeting May 11, 2000 will be decided at the Stockholders Meeting on that date.

## INFORMATION CONCERNING NOMINEES FOR ELECTION AS DIRECTORS FOR A TERM OF THREE YEARS TO EXPIRE IN 2003

| Name | Principal Occupation or Employment | Director of Company or Predecessor Since | Voting Stock of Company Owned on Dec. 31, 1999 |
|---|---|---|---|
| *John J. Barry | President, International Brotherhood of Electrical Workers | 1987 | 2,665 |
| *Morris Biller | President, American Postal Workers Union | 1987 | 5,337 |
| John F. Gentleman | Former President, ULLICO Inc. | 1992 | 1,347 |
| *Robert A. Georgine | Chairman, President & CEO, ULLICO Inc. President Emeritus, Building and Construction Trades Department, American Federation of Labor and Congress of Industrial Organizations | 1981** | 52,868 |
| *John T. Joyce | Former President, International Union of Bricklayers and Allied Craftworkers | 1981** | 281 |
| *Martin J. Maddaloni | General President, United Association of Journeymen and Apprentices of the Plumbers and Pipe Fitting Industry of the U.S. and Canada | 1998 | 3,000 |
| *James J. Norton | President, Graphic Communications International Union | 1987 | 220 |

JK 003276

## INFORMATION CONCERNING NOMINEES FOR ELECTION AS DIRECTORS FOR A TERM OF THREE YEARS TO EXPIRE IN 2003

| Name | Principal Occupation or Employment | Director of Company or Predecessor Since | Voting Stock of Company Owned on Dec. 31, 1999 |
|---|---|---|---|
| *Terence M. O'Sullivan | General President, Laborers' International Union of North America | | 0 |
| *John W. Wilhelm | General President, Hotel Employees and Restaurant Employees International Union | | 0 |
| *Roy Wyse | Former Secretary-Treasurer, United Automobile, Aerospace and Agricultural Implement Workers of America International Union | 1997 | 250 |

## INFORMATION CONCERNING DIRECTORS WHO WILL CONTINUE IN OFFICE AFTER THE MEETING

| Name | Term Expires | Principal Occupation or Employment | Director of Company or Predecessor Since | Voting Stock of Company Owned on Dec. 31, 1999 |
|---|---|---|---|---|
| *Morton Bahr | 2002 | President, Communications Workers of America | 1996 | 300 |
| *William G. Bernard | 2002 | President, International Association of Heat and Frost Insulators and Asbestos Workers | 1996 | 11,184 |
| *Marvin J. Boede | 2002 | Former President, United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada | 1983** | 2,292 |
| *Kenneth J. Brown | 2002 | Former President, Graphic Communications International Union | *1973** | 342 |
| *Bill J. Casstevens | 2002 | Former Secretary-Treasurer, United Automobile, Aerospace and Agricultural Implement Workers of America International Union | 1994 | 9,642 |
| *Arthur A. Coia | 2002 | President Emeritus, Laborers' International Union of North America | 1993 | 0 |
| John E. Cullerton | 2001 | Consultant | 1995 | 2,000 |
| *Frank Hanley | 2001 | President, International Union of Operating Engineers | 1990 | 104 |
| *Frank D. Hurt | 2001 | President, Bakery, Confectionery and Tobacco Workers International Union | 1995 | 110 |
| *Earl J. Kruse | 2002 | President, United Union of Roofers, Waterproofers and Allied Workers | 1999 | 100 |
| *James La Sala | 2002 | President, Amalgamated Transit Union | 1985* | 1,352 |
| *Joseph F. Maloney | 2001 | Former Secretary-Treasurer, Building and Construction Trades Department, American Federation of Labor and Congress of Industrial Organizations | 1996 | 4,212 |
| *Douglas J. McCarron | 2002 | General President, United Brotherhood of Carpenters and Joiners of America | 1996 | 4,000 |

JK 003277

## INFORMATION CONCERNING DIRECTORS WHO WILL CONTINUE IN OFFICE AFTER THE MEETING

| Name | Term Expires | Principal Occupation or Employment | Director of Company or Predecessor Since | Voting Stock of Company Owned on Dec. 31, 1999 |
|---|---|---|---|---|
| James F.M. McNulty | 2001 | General Counsel, The Union Labor Life Insurance Company | 1968 | 2,550 |
| *Lenore Miller | 2001 | Former President, Retail, Wholesale and Department Store Union | 1987 | 42 |
| *Vincent R. Sombrotto | 2001 | President, National Association of Letter Carriers | 1995 | 0 |
| *John J. Sweeney | 2001 | President, American Federation of Labor and Congress of Industrial Organizations | 1985 | 605 |
| *Eugene Upshaw | 2002 | President, Federation of Professional Athletes | 1987 | 1,000 |
| *Jacob F. West | 2002 | President, International Association of Bridge, Structural, Ornamental, and Reinforcing Iron Workers | 1990 | 9,250 |
| *William H. Wynn | 2001 | President Emeritus, United Food and Commercial Workers International Union | 1976** | 2,892 |

*Director-member of trade unions. All others are public directors, officers, or former officers of the Company.

## INFORMATION CONCERNING SOLICITATION

The solicitation of proxies is being made on behalf of the management. Proxies will be solicited by mail, telephone, and other means of communication. Solicitations will be made by directors, officers, and regular employees of the Company. The entire cost of the solicitation will be borne by the Company.

**By order of the Board of Directors**

*Robert A. Georgine*

ROBERT A. GEORGINE
Chairman, President, and
Chief Executive Officer

Washington, D.C.
April 11, 2000

Exhibit 27

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| ULLICO INC.,<br>　　　　　Plaintiff,<br>　　v.<br><br>WILLIAM CASSTEVENS,<br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) |

　　　　CASE NUMBER: 1:06CV01388 (RJL)
　　　　DECK TYPE: General Civil

### AFFIDAVIT OF TERENCE M. O'SULLIVAN

　　　　　Terence M. O'Sullivan hereby declares under the penalty of perjury as follows:

　　　　1.　　My name is Terence M. O'Sullivan and I am providing this Affidavit in connection with ULLICO Inc.'s Motion for Summary Judgment in the above-captioned action. The information set forth in this Affidavit is based on my personal knowledge.

　　　　2.　　I am over 18 years old, and I am competent to testify to the facts and information contained herein.

　　　　3.　　I am the General President of the Laborers International Union of North American and a member of the Board of Directors of ULLICO Inc.

　　　　4.　　I was appointed to the ULLICO Inc. Board of Directors in 2000, and continue to serve on the Board of Directors today.

　　　　5.　　I attended a meeting of the ULLICO Board of Directors on November 3, 2000.

　　　　6.　　At the November 3, 2000 meeting the Board considered a resolution concerning certain repurchases by the Company of ULLICO Inc. Capital Stock and ULLICO Inc. Class A and B Stock.

　　　　7.　　At the time of that meeting on November 3, 2000, I did not own, and had never owned, ULLICO Inc. stock of any class.

8. At the time of that meeting on November 3, 2000, I did not have a financial interest in the resolution considered that day by the Board of Directors.

9. At the time of that meeting on November 3, 2000, I was not aware that Billy Casstevens owned ULLICO Inc. Capital Stock.

10. At the time of that meeting on November 3, 2000, I was not aware that Billy Casstevens owned less than 10,000 shares of ULLICO Inc. Class A Stock.

11. At the time of that meeting on November 3, 2000, I was not aware that Billy Casstevens had a financial interest in the resolution considered that day by the Board of Directors.

I HEREBY DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE DISTRICT OF COLUMBIA THAT THE FOREGOING IS TRUE AND CORRECT BASED ON MY KNOWLEDGE, INFORMATION AND BELIEF.

Dated: May 25, 2007

Terence M. O'Sullivan

State of District of Columbia

County of _____ )

Subscribed and sworn to (or affirmed) before me on this 25th day of May, 2007 by Terence M. O'Sullivan, personally known to me to be the person who appeared before me.

Paola Eldridge Johnston
Notary Public, District of Columbia
My Commission Expires 03-14-2008

764882.1

Exhibit 28



Robert A. Georgine
Chairman, President and CEO

ULLICO Inc
111 Massachusetts Ave., N W
Washington, DC 20001
202/682 0900

November 21, 2000

Billy J. Casstevens and Lou Ellen Casstevens
11244 Greenbriar Chase
Oklahoma City, OK 73170

RE:    ULLICO Inc. Class A and Class B
       2000 Stock Repurchase Program

Dear Stockholder:

In my letter of July 12th we communicated the action taken by the Board of Directors at the May 11, 2000 Annual Meeting. That letter discussed our hope to complete what we described and intended as an Extraordinary Stock Repurchase Program. The amount of that repurchase totalled over $240 million. However, as was stated in that letter, the offering was contingent on certain conditions being met. Essentially that Global Crossings, Ltd. must be trading at no less than $43 per share and we had to have a practical opportunity to realize its gains in order to fund that offer.

Everyone is well aware of what has happened in the markets since May of this year. In fact, Global Crossings, Ltd. has not achieved the $43 per share contingency. Therefore, a key condition to the previously announced Repurchase Program has not been met.

On November 3rd the Board of Directors of ULLICO Inc. (the "Company") met to consider this issue. At that meeting the Board took action which supersedes and replaces the actions taken at the May 11, 2000 Meeting. The Company will proceed with a Repurchase Program and this Repurchase Program will be for $30 million worth of the Company's stock. While this is a reduction from the extraordinary event we had discussed earlier, it is an increase from the originally developed and intended Repurchase Program for this year.

When the Company began this program in 1997, there was a repurchase of $30 million of Class A and Class B Stock and the Company announced its intent based on business circumstances and conditions to repurchase an additional $15 million worth of stock in each of the next succeeding 10 years. At the November 3rd meeting the Board has approved an offer to repurchase $30 million of Class A and Class B Stock based on our current circumstances and the sound financial posture of our Companies. The repurchase value will be $146.04 per share. Management and the Board felt it important to continue the Repurchase Program based on audited financials; although, the repurchase value is established annually by the Board.



Exhibit
#26

USDC 0048086

November 21, 2000
Page 2

There are some conditions to the revised repurchase offer; however, they do not relate to the value of Global Crossings, Ltd. or any other financial considerations. In particular, we must receive tenders of 100% of the shares of all the Stockholders who hold in excess of 2% of the Company stock. This is intended to minimize any over concentration of the Company Stock with certain Stockholders. In addition, as many of you know, our By-laws restrict the relative percentage of shares that can be held by any entity or individual. Those By-law restrictions still continue and we want to make every effort to maintain the balance of ownership of the Company into the future. In addition, the Company continues to reserve its right, pursuant to its By-laws, to repurchase shares outside the Repurchase Program at $25 per share. You should carefully review the Offering Memorandum that you will receive in connection with the Repurchase Program.

It is the Company's and the Board's intent to honor the Repurchase Program for all of those who are eligible under the Company's By-Laws to purchase stock during the Repurchase Offer. The Board also extended the period into the new year, primarily to allow for the change in the nature of the Offer and the fact that we are approaching both the Thanksgiving and the year-end holiday season. We wanted to make sure that Stockholders would not be adversely impacted by personal schedules at year-end. Therefore, the actual Offering Memorandum, which will be sent by separate cover, will have a return date of January 16, 2001. As soon as all the tenders are received, and provided that the conditions are met, we will perform the necessary calculations and distribute the funds and replacement Stock Certificates as quickly as possible.

The Company anticipates receiving shares in excess of the $30 million it is offering to repurchase, so it will pro-rate each submission so all participating Stockholders share equitably in the offering. Other terms and conditions of the repurchase will be described in the Offering Memorandum.

This letter is not intended as an Offer to Purchase Stock — that can only be done through a special Offering Memorandum, which you will receive at the appropriate time and which will allow you a period of 30 days, prior to January 16th, to consider and tender your shares.

If you have any questions please feel free to contact either me or our Chief Legal Officer, Joseph A. Carabillo at (202) 682-4909.

Sincerely and fraternally,

*Robert A. Georgine*

USDC 0048087

Exhibit 29

# Testimony of Terence M. O'Sullivan, Chairman & CEO of ULLICO Inc.

## Senate Governmental Affairs Committee

## United States Senate

## June 19, 2003

USDC 0003452

Good morning Chairman Collins, Senator Levin, and members of the Committee. My name is Terry O'Sullivan, and since May 8th I have served as Chairman and CEO of ULLICO Inc. In fact, I would guess that few corporate chairmen and CEOs have had the honor of appearing before your committee after being on the job for only 45 days. I am also privileged to have served as the General President of the Laborers' International Union of North America since the beginning of 2000. I appear today on behalf of ULLICO. However, there are differences of opinion on the board on some of the matters under discussion here and my views are not necessarily those of all directors.

USDC 0003453

I will report to the committee on the scope and nature of my involvement with ULLICO over the past three years.

I was first elected to the board of ULLICO at the annual shareholders meeting in May 2000. The first board meeting I attended was in November 2000. As it happens, that was the meeting at which the board adopted the 2000 stock repurchase plan that served as the vehicle for many of the stock transactions Governor Thompson has described for the committee.

Directors had no prior notice of the modifications to the stock repurchase program that were going to be proposed at that meeting. There was no disclosure at that meeting of the 1998 and 1999 stock offerings to

-2-

directors and officers. There was no disclosure of the significant changes in the rules of the repurchase program from those approved in May 2000, including the increase from 100 shares to 10,000 shares of those stock tenders that would be excused from pro ration. There was no disclosure of the way the decline in the price of Global Crossing stock effected the price of the ULLICO stock that was being repurchased. Finally, there was no disclosure of the way the 10,000 share pro ration rule would benefit insiders.

I voted with the majority at that meeting, a decision I now regret. I can only say that because of the lack of disclosure of the salient facts, my vote was uninformed. My conduct after that meeting shows that I would have voted differently had I been fully advised.

-3-

For the next 15 months, I was unaware that anything was wrong at ULLICO other than a decline in business performance. When press reports of insider transactions first appeared in March 2002, I and many other labor leaders learned for the first time of the true nature of the stock repurchase program. In light of the serious nature of the matters being reported, there was broad support, including my own, for AFL-CIO President John Sweeney's call for an independent investigation. Jim Thompson, former governor of Illinois, was ultimately chosen by ULLICO's board and agreed to serve as independent counsel to the company to investigate these matters.

-4-

USDC 0003456

I received a copy of Governor Thompson's report in November 2002. It was only then that I understood that, when the company offered stock to directors and officers on December 17, 1999, it was offering them a sure thing that other stockholders were being denied. It was only then that I understood that the discretionary repurchase program had become a multi-million benefit limited to certain insiders. Further, it was only then that I understood the impact of excusing shareholders with less than 10,000 shares from pro ration, how it guaranteed that most of the money would go to a few officers and directors.

The Board met in December 2002 and decided to appoint the Special Committee to review the report and make recommendations to the board. Because I have

-5-

USDC 0003457

never owned or sold ULLICO stock, I was one of eight directors asked to serve on the Special Committee.

I am no lawyer and make no claim of legal expertise. I am a trade unionist. Everything I have I owe to the working men and women of the Laborers' International Union of North America. The conclusions to which I came with respect to Governor Thompson's report grew out of my duty to the union that I serve, to ULLICO so long as I serve on its board, and to the pension funds my members are counting on.

After I heard Governor Thompson and read his report, I became convinced that these stock repurchase deals were bad for my union, bad for my union's pension funds and bad for ULLICO and its shareholders.

-6-

The Special Committee considered Governor
Thompson's recommendations in two parts. We
unanimously adopted his governance recommendations
with minor modifications. Unfortunately, we were
divided on whether to accept his remedial
recommendations. Hotel Employees and Restaurant
Employees President John Wilhelm, Letter Carriers
President Vincent Sombrotto and I found ourselves in
the minority as those who felt that directors and officers
should be required to return profits from the stock
repurchase program.

President Wilhelm resigned after the Special Committee
rejected our position. At various points in time AFL-
CIO President Sweeney, Executive Vice President

-7-

Linda Chavez-Thompson, Operating Engineers
President Handley, Carpenters President McCarron
and NFL Players President Gene Upshaw also resigned.
However, I continue to work with all of them, and other
trade union leaders, to address the ULLICO crisis.

I feared for the company's survival after the board had
rejected Governor Thompson's remedial
recommendations. The labor community had lost
confidence in management. The company's financial
situation was, and remains, challenged. But, I believed
that ULLICO was too important to the labor movement
as a whole and to my union, the Laborers' International
Union, to be allowed to fail. I therefore chose to stay on
the board, but with a broad group of concerned union
leaders began to organize a reform slate of directors to

-8-

USDC 0003460

run for the board at the upcoming annual shareholders

meeting.

Our slate included former Federal Circuit Court Judge

Abner Mikva, former U.S. Secretary of Labor Alexis

Herman, and former Chairman of the New York State

Urban Development Corporation Richard Ravitch, as

well as eleven prominent elected union leaders drawn

from among the company's major shareholders.

With the assistance of our shareholders, the AFL-CIO,

the Building Trades Department, the United

Brotherhood of Carpenters, and numerous unions and

their pension funds and their QPAMS, we were able to

secure the backing of more than 70% of the

shareholders.  On May 8, a little more than a month

USDC 0003461

ago, our slate was accepted by the former management and unanimously elected at the annual shareholders meeting. Immediately prior to that meeting, Bob Georgine resigned from all of his ULLICO offices. In the board of directors meeting that followed on the same day, I was elected Chairman and CEO. I serve in those positions without compensation.

All members of former management who were deeply involved in the stock repurchase program have now been replaced. In addition to my election as chairman and CEO, ULLICO has now retained an acting President, Edward Grebow, a professional manager with extensive experience in fixing troubled businesses.

-10-

On May 9th the company asked the trustees of ULLICO management's rabbi trusts to make no payments to anyone pending a board investigation of those trusts. Since then we have also stopped payment on a series of executive compensation plans, including a deferred compensation plan and contributions on an executive split dollar life insurance policy.

The new board met again on May 13, less than a week after its first meeting. At that time we reconsidered and adopted all of the Governor Thompson's remedial recommendations. Those recommendations included a recommendation that we demand the return of $5.6 million in stock profits from directors and officers participating in the stock repurchase program. At the same time, the board also authorized an inquiry into the

-11-

role of outside service providers in the stock repurchase program.

On May 13th the board also approved the appointments of a number of committees. Among these was a subcommittee chaired by Judge Mikva, which is charged with the task of reviewing the remaining stock transactions, as well as past executive compensation and past attorney and other service provider conduct.

We have now sent demand letters to all those whom the board has asked to repay money. If arrangements for returning the profits are not made within 30 days, the board has voted to take whatever steps are necessary to effect their removal from any position within ULLICO. The board awaits the recommendation of Judge Mikva

-12-

USDC 0003464

and his committee on what further steps may be necessary to accomplish return of the money. All currently active union presidents have either returned or pledged the return of their stock repurchase profits.

All in all, we are pleased with our record over the last five weeks. We must do more in the weeks to come, but we think we have set a standard for how boards should deal with wrongdoing and its consequences. We are seeking to make our company whole.

The Committee may be aware that there are a number of U.S. Attorney and regulatory investigations of the matters at issue here. We have and will continue to cooperate fully with those investigators.

-13-

USDC 0003465

Let me conclude by saying this. The good news at ULLICO is that our directors and shareholders---and the labor movement as a whole---stood their ground, fought and won, and the company is now acting to obtain the return of unwarranted gains.

Our fight to do the right thing at ULLICO feels like it is making a difference. The company has not failed. No one has lost a pension or other benefit as a result of what has occurred. ULLICO employees have a defined benefit pension plan which is properly diversified and in no danger of defaulting on its obligations.

There will be sacrifices in the months ahead at ULLICO. The company faces a range of testing business issues that extend beyond the stock repurchase program. But what sacrifices there must be to put

-14-

USDC 0003466

ULLICO back on track will be shared, and shared fairly.

I and my colleagues on the board and in the management team are totally committed to carrying our efforts through to a successful conclusion. The working people who are both our ultimate owners and our customers, deserve no less.

I would be happy to answer any of your questions.

Thank you.

USDC 0003467