MEETING OF THE BOARD OF DIRECTORS
OF
ULLICO Inc.

May 6, 1997
The Washington Court Hotel
Washington, D.C.

ATTENDEES:

DIRECTORS:

Morton Bahr
John J. Barry
Morris Biller
Marvin Boede
Kenneth J. Brown
Frank W. Carter
Bill Casstevens
John E. Cullerton
John F. Gentleman
Robert A. Georgine
Frank Hanley

Frank Hurt
John T. Joyce
James La Sala
Joseph F. Maloney
James F. M. McNulty
James J. Norton
Lester H. Null, Sr.
Vincent R. Sombrotto
Jacob F. West
William H. Wynn

OFFICERS:

Joseph A. Carabillo
John K. Grelle
James W. Luce

Mark A. Maloney
Charles R. Sormani
Michael R. Steed

OTHERS:

George Holland

 Chairman Georgine called the meeting to order and advised the Directors that Ms. Miller and Messrs. Coia, McCarron, Roots, Sweeney, Upshaw and Wyse were unable to attend the Meeting.

 The first order of business was the adoption of the minutes of the June 18, 1996, Meeting of the Board. Copies of these minutes were circulated with the agenda for this Meeting, and no amendments or changes to the minutes had been received. A motion to adopt said minutes was made, seconded and approved.

 The Chairman told the Board that following the meeting, they would hear ULLICO's annual report to its stockholders and more information about the Company's year-end results. He pointed out that the Company was now reporting on a Generally Accepted Accounting Principles (GAAP) basis. The 1995 and 1996 financials had been converted and compared. Total assets were up to $2.8 billion, a gain of $165 million from 1995. Total revenues also increased to $426.6 million. Consolidated Operating gains were down from 1995. However, without three unique events resulting from pre-1996 business activities, operating gains would have been up 2%. The three events were the settlement of the Diplomat, a write-down of two foreclosed properties and a write-down of an investment. Retained earnings were down in 1996 primarily because of payments of dividends to stockholders and payments to holders of Preferred Certificates.

 The Chairman introduced the first action item, eliminating the category of Treasury Stock, which reflected a change in Maryland Law. The Resolution would allow the Corporation to make repurchased stock available for purchase, but it would not be listed in the Company's financials as Treasury Stock. He requested a motion and, it was

JW 00312


DEFENDANT'S EXHIBIT C

RESOLVED: "That the Corporation cease the practice of designating repurchased shares of stock as Treasury Stock. Shares of stock repurchased by the Corporation in the future shall be returned to the status of authorized, but unissued shares." And, be it



FURTHER RESOLVED: "That the Chairman of the Corporation is hereby authorized, directed and empowered, at his sole discretion to offer shares of the Corporation's Stock that have been repurchased and returned to the status of authorized, but unissued shares, to authorized investors as specified in the Corporation's Charter and By-Laws." And, be it

FURTHER RESOLVED: "That the appropriate officers and employees of the Corporation shall be, and each of them hereby is, authorized, directed and empowered to, on behalf of the Corporation, acknowledge, execute and deliver any and all such actions or documents, which may be necessary or desirable to effectuate the foregoing resolutions, and their acts and deeds in so doing shall be conclusively presumed to be the acts and deeds of the Corporation."

Motion was made, seconded and approved.

Next, the Report of the Nominating Committee was delivered. The Nominating Committee, appointed by Chairman Georgine with the approval of the Executive Committee, held its meeting on March 17, 1997. The Nominating Committee submitted the following as its nominations and recommendations for the election of Directors at the Annual Meeting of Stockholders to be held in Washington, DC on May 6, 1997.

The terms of nine Directors would expire at today's Meeting of Stockholders.

The Nominating Committee unanimously nominated the following for election for a term of three years, expiring in 2000:

> John J. Barry
> Morris Biller
> John F. Gentleman
> Robert A. Georgine
> John T. Joyce
> James J. Norton
> Lester H. Null, Sr.
> Roy Wyse

The Nominating Committee recommended that the Board of Directors and/or the Executive Committee be authorized to fill these vacancies and/or any other vacancies which may occur on the Board of Directors if, and when, the Board of Directors and/or the Executive Committee deemed it advisable to do so.

Election of all of the foregoing would bring to twenty-nine members, the number serving on the Board of Directors.

The Report was received.

Chairman Georgine noted that the Executive Committee was elected annually.

Pursuant to Article VI, Section 2 of the Bylaws, as amended by the Executive Committee, provides for the election of the membership of the Executive Committee by the Board of Directors for a term of one year, such Committee to consist of not more than sixteen Directors and in addition thereto the Chairman and Chief Executive Officer, the President and the Secretary-Treasurer.

-2-

JW 00313

It was recommended that the Executive Committee consist of the Directors named below, including those Directors whose term of office expired today and were reelected as Directors at the Stockholders' Meeting to follow. The following resolution was offered for consideration by the Board of Directors

RESOLVED: "That the Executive Committee will consist of the following 14 Directors and 2 Officers:

| | |
|---|---|
| John J. Barry | Frank Hanley |
| Marvin J. Boede | John T. Joyce |
| Kenneth J. Brown | Joseph F. Maloney |
| Bill Casstevens | James F. M. McNulty |
| Arthur A. Coia | James J. Norton |
| John E. Cullerton | Lester H. Null, Sr. |
| John F. Gentleman | Jacob F. West |
| Robert A. Georgine | William H. Wynn." |

It was

FURTHER
RESOLVED   "That the Executive Committee be authorized to fill existing vacancies and any other vacancies which may occur for any reason whatsoever if and when the Executive Committee deems it advisable to do so."

Motion was made, seconded and approved.

The Chairman then asked Mr. West, Chairman of the Nominating Committee, to introduce the next agenda item. Mr. West told the Board that every three years, the Chairman and Chief Executive Officer, the President and the Secretary-Treasurer are up for reelection. Mr. West requested a motion reelecting Mr. Georgine and Mr. Null to their offices for three years. It was

RESOLVED:   "That Robert A. Georgine is hereby reelected to the position of Chairman, President and Chief Executive Officer for a period of three years, effective May 6, 1997." And, be it

FURTHER
RESOLVED   "That Lester H. Null, Sr. is hereby reelected to the position of Secretary-Treasurer for a period of three years, effective May 6, 1997."

Motion was made, seconded and approved.

The Chairman then asked for a motion on the resolution authorizing the Chairman to vote the shares of ULLICO Inc.'s subsidiaries.

Since ULLICO Inc. was the sole Stockholder of the issued and outstanding shares of The Union Labor Life Insurance Company, Zenith Administrators, Inc., TNDL, Inc., Trust Fund Advisors, Inc., UNIONCARE Inc., Ulico Standard of America Integrated Health, Inc., ULLICO Management Company, MRCo, Inc., and ULLICO Mortgage Corporation, its vote was necessary for the transaction of business at the Annual Stockholders Meeting for these companies and any other subsidiary the Company may purchase or create.

It was recommended, therefore, that the Board of Directors adopt the following resolution:

JW 00314

RESOLVED: "That the Board of Directors hereby empowers and authorizes the Chairman and Chief Executive Officer to vote the shares of stock in The Union Labor Life Insurance Company, Zenith Administrators, Inc., TNDL, Inc., Trust Fund Advisors, Inc., UNIONCARE Inc., Inc., Ulico Standard of America Integrated Health, Inc., ULLICO Management Company, MRCo, Inc., and ULLICO Mortgage Corporation, and any other subsidiary owned by ULLICO Inc., or one of its subsidiaries, at the Annual Stockholders Meeting of each subsidiary, as, in his discretion, he may deem appropriate and proper on any and all matters or transactions which may require a vote of Stockholders." (ULLICO Inc.)

Motion was made, seconded and approved.

The Chairman noted that the dividend this year was different from prior years. Management recommended the declaration of a 2% cash dividend. It was one part of a change in the relationship with the Company's Stockholders. History had revealed the need for the change. In 1992, when the Company began offering Preferred Certificates, Stockholder Capital was $5.2 million. At year-end, 1996, Capital had increased to $230 million. The average holding of a Stockholder went from close to $16,000 year-end 1991, to over $600,000 at year-end 1996.

The Chairman introduced Bill Egan from Credit Suisse/First Boston who made a presentation concerning a stock repurchase program approved by the Executive Committee at their meeting the day before (a copy of Mr. Egan's presentation is attached and made a part of these minutes). After the Presentation, the Chairman asked if there were any questions. Following a discussion among the directors, the Chairman requested a motion authorizing a 2% dividend to be paid on June 15, 1997, as presented. It was

RESOLVED: "That out of ULLICO Inc.'s Stockholders Surplus, there shall be declared to Stockholders of record on June 1, 1997, a cash dividend of $3,814,191, or $.54¢ per share, payable on June 15, 1997.

Motion was made, seconded and approved.

The Chairman then noted the conclusion of the official business. A motion was called for to adjourn the Meeting of the Board of Directors of ULLICO Inc. Motion was made, seconded and approved.

Joseph A. Carabillo
Vice President and
Assistant Secretary



**Robert A. Georgine**
Chairman, President and CEO

ULLICO Inc.
111 Massachusetts Ave., N.W.
Washington, DC 20001
202/682-0900

June 15, 1997

Billy J. Casstevens
4260 Placida Road
Condo 9C
Grove City, FL 34224

Dear ULLICO Inc. Stockholder:

Since our founding in 1925, The Union Labor Life Insurance Company, and its successor, ULLICO Inc., have followed a practice of selling shares of stock at a fixed value of $25 and repurchasing those same shares at the same fixed value of $25. Value was provided to the Stockholders solely through dividends, both stock and cash. In recent years, this value has been significant.

In 1987, when ULLICO Inc. was formed, our Capital Stockholders, the original owners of the Company, then owned 143,148 shares. That represented total stockholder capital of $3,579,000. At the outset of our recapitalization in 1992, Stockholders then held $5.2 million in equity.

Today, in 1997, we are a very different company. At year-end 1996, total holdings, combining Capital Stock, Class A, Class B and Preferred Certificates totaled $231,730,000. That is approximately a 44-fold increase. In addition, the average holding went from close to $16,000 in 1991 to over $600,000 at year-end 1996.

These are fundamental changes in the capital structure of our Company. As you know, we are not a publicly traded security. The process that has been followed by both Union Labor Life and ULLICO Inc. has been to provide the return on investment through dividends, both stock and cash, and a market for its stock by repurchasing stock on those infrequent occasions when a shareholder has made a request. This system no longer was in the best interest of the Stockholders, and the Company.

In the future, ULLICO Inc. will provide to our stockholders both value on their investment and liquidity through a stock repurchase program which was approved during our Annual Meeting in 1997. The repurchase program applies to all holders of Class A and Class B Stock and to the remaining holders of Preferred Certificates. Because of the size of these holdings, it is not practical for the Company to provide immediate liquidity without providing some structure to that liquidity. Therefore, the repurchase program that was approved for 1997 authorizes the Company to issue a formal offer to repurchase up to $30 million worth of Class A Stock, Class B Stock, and/or Preferred Certificates. That offering document will be mailed to each holder of these classes of security.

UL 6020



DEFENDANT'S EXHIBIT D

June 15, 1997
Page 2

Capital Stockholders will be treated as they have been in the past with liquidity provided whenever possible by the Corporation, in accordance with sound corporate practice, based on a request for repurchase from a holder of Capital Stock. Therefore, Capital Stock is not considered to be within the repurchase program.

Any repurchases in the future will be at book value as established at the prior year end. In 1997, repurchases which qualify will be for $27.06 per share, the book value as established in the Company's Audited GAAP Financial Statements as of December 31, 1996. These financial statements have been provided to you with the Proxy Statements and are also included in our Annual Report which was recently mailed to each of you. That $27.06 represents approximately an 8 1/4% increase over the traditional repurchase price of $25.

In addition, the Board of Directors of ULLICO Inc., at the Annual Meeting on May 6, 1997, declared a 2% cash dividend based on the book value of the stock on December 31, 1996, or $.54 per share, for the stock owned by you or your organization in ULLICO Inc., payable today, to stockholders of record on June 1, 1997. Enclosed is a check in the amount of your cash dividend.

As you can see, the combination of the realized gain of 2% from the dividend and the unrealized gain in this book value repurchase program creates a respectable yield. Another reason for going to the 2% dividend was based on a review of a peer group of companies which showed that their dividends were in the range of 1% to 2%. We intend to target our annual dividends at competitive rates measured against other, similarly situated companies. This is to aid ULLICO Inc. in maintaining its competitive position and in adding value to Stockholders. The Board of Directors will continue to evaluate the Company's position each year and decide an appropriate dividend and stock repurchase authorization.

Our primary goal is to further align the Corporation's interest with our Stockholders' interest. Value added to the Stockholder is value added to the Corporation. That will allow us to grow and continue to do business and to support our mission. Our mission is to serve the organized working men and women of America with cost effective, quality products. This new relationship with our Stockholders is intended to support and emphasize that mission and to improve our Stockholders' holdings in the long term.

I wanted to take this opportunity to write you concerning this very fundamental change. Holders of Class A and Class B Stock and Preferred Certificates will be receiving a very formal, and required, repurchase document in the near future. This letter is not, and cannot be, considered an offer to repurchase your stock. We are currently finalizing the necessary legal documents and securing the necessary input to make the repurchase offer. As I said earlier, the Company will, in the near future, offer to repurchase up to $30 million of these classes of holdings in 1997.

Holders of Capital Stock, while not included within the formal repurchase program, still are expected to comply with the requirement that any company stock be offered for sale to the Corporation first, and so long as the Corporation is able, and it is within a good corporate policy, we will continue our past practice of repurchasing Capital Stock when offered by a holder of Capital Stock.

UL 6021

June 15, 1997
Page 3

In the opinion of the Chief Legal Officer of the Company, the receipt of all cash payments received from the cash dividend should be reported as a dividend in the gross income of the recipient as reported to the Internal Revenue Service. This, of course, does not apply to those Stockholders who are exempt from the payment of Federal Income Taxes. This opinion is being given as a convenience to the Company's Stockholders and should not be regarded or relied upon as providing tax advice. Each Stockholder should consult counsel or his tax adviser in connection with this matter.

On behalf of the Officers of the Company, I want to express my appreciation to our Stockholders whose generous support and cooperation have contributed to the progress and success of our Company.

With every good wish, I am

Cordially,

Bob Georgine

Enclosures

UL 6022

## ULLICO INC.
## TERM SHEET
## STOCK REPURCHASE PROGRAM

| | |
|---|---|
| Summary | ULLICO Inc. (the "Company") will adopt a policy designed to allow its shareholders to realize value through the appreciation of common stock rather than exclusively through the receipt of dividends. Accordingly, the Company will offer in 1997, and in subsequent years, to repurchase up to a set dollar amount of stock at book value. At the same time, the dividend on stock will be established at a rate comparable to that paid by other similarly situated companies (approximately 2%). |
| Description of Stock | The offer will be made for outstanding shares of Class A and Class B stock. Holders of Preferred Certificates may tender the number of shares into which their Certificates would be convertible, but must forgo any conversion fee. |
| Amount | $30,000,000 in 1997; the Company has set a goal of offering to repurchase $15,000,000, subject to having sufficient earnings and cash flow from operations, in each subsequent year, up to an aggregate repurchase amount of $180,000,000 (including the first year). |
| Source of Funds | Bank credit in 1997; internally generated funds thereafter. |
| Price per Share | Book value as of preceding December 31 audited GAAP statements, computed by treating Preferred Certificates as common equity. |
| Procedures | Issuer tender offer, open for a period of 20 days. Transmittal forms and certificates should be submitted to the Company, attention Chief Legal Officer. If more shares are tendered than the Company has agreed to purchase, shares will be taken up pro rata and new certificates will be issued for returned shares. Tenders by holders of 10 or fewer shares will be accepted without pro ration. There is no minimum number of shares that must be tendered. |
| Voting | If, as a result of the repurchases, any shareholder would own Class A stock having more than 9% of the aggregate voting power, shares equal to the excess votes will automatically be converted into Class B stock (unless, there is in place, a shareholders agreement that permits voting rights to be adjusted at each meeting in order to stay within the 9% limit). |
| Capital Stock | Although the offer would not be made for Capital Stock, the Company intends in the future to offer the greater of book value or $25 per share to repurchase Capital Stock when exercising its right of first refusal upon the death of a shareholder. In the event a holder of Capital Stock gives notice of a desire to transfer such shares, the Company intends to offer to repurchase the shares at book value. |
| Company Recommendation | The Company does not recommend acceptance of the offer. It is made as an accommodation to shareholders as a means of realizing value from their investment. The Company believes its stock represents an excellent investment opportunity for investors seeking long-term growth of capital. |

I:\CORPORATE SECRETARY\MEETINGS\MAY97\DOC\
ULLICO INC. TERM SHEET



DEFENDANT'S EXHIBIT E

MEETING OF THE EXECUTIVE COMMITTEE
OF
ULLICO Inc.
Held May 4, 1998
At 111 Massachusetts Avenue, N.W.
Washington, D.C.
2:00 P.M.

ATTENDEES:

John J. Barry
Marvin Boede
Kenneth J. Brown
Bill J. Casstevens
John E. Cullerton
Robert A. Georgine

Frank Hanley
Joseph F. Maloney
James F. M. McNulty
James J. Norton
Jacob F. West
William H. Wynn

ABSENT:

Arthur A. Coia
John F. Gentleman

John J. Joyce
Douglas J. McCarron

OTHERS IN ATTENDANCE:

Joseph A. Carabillo
John K. Grelle
George Holland
James W. Luce

Mark A. Maloney
Charles R. Sormani
Michael R. Steed

Chairman Georgine called the meeting to order and noted that Messrs. Coia, Gentleman, Joyce and McCarron were unable to attend.

As of December 31, 1997, the Company had 324,732 1/3 shares of Capital Stock issued and outstanding. This reflected 14,662 shares of Capital Stock available for repurchase. As of December 31, 1997, a total of 7,192,140 shares of Class A Stock and a total of 133,280 shares of Class B Stock were issued and outstanding. This reflected 991,084 shares of Class A Stock that were repurchased through the repurchase program at year-end.

Also pursuant to the repurchase program, 117,561 Preferred Certificates, which had not yet converted, were repurchased during December, 1997. The repurchases saved the Company $117,561 in conversion fees that would have been owed to the investors at the Certificates' natural maturity dates.

In total, the Company received subscriptions from 19 holders of Company equity representing 2,770,818 shares of Class A Stock, as well as 328,672 Preferred Certificates. After pro rating the subscriptions, the Company repurchased approximately 35.8% of the amount of each equity holder's subscription. This resulted in the Company retiring 1,108,645 shares of equity in a combination of Preferred Certificates and Class A Stock.

The Minutes of the February 11, 1998 Meeting of the Executive Committee were distributed with the Preliminary Agenda. Hearing no changes or modifications, it was

    RESOLVED:    "That the Minutes of the Executive Committee Meeting of February 11, 1998, as distributed with the Agenda for this meeting, be and hereby are approved."

Motion was made, seconded and approved.

Next the Chairman introduced a resolution concerning the stock repurchase program for 1998. He reminded the Committee that they approved a stock repurchase program in 1997, based on $30 million. The Company had used debt to finance the repurchases. For the current year, the



DEFENDANT'S EXHIBIT F-1

Company had sufficient operating gains to fund a repurchase of $15,000,000. Management proposed to initiate the repurchase offer during the fourth quarter of the year. The repurchases would be made at the stock's book value, which at December 31, 1997, was established at $28.70 per share. In the event of an over subscription, the calculations would be pro rated. The Chairman requested a motion and it was

RESOLVED: "That in 1998, the Corporation on October 1st, or as soon thereafter as is practical and in conformance with law and regulation, will offer to repurchase $15,000,000 worth of equity from all holders of Class A, and Class B stock with the repurchase to be effective on November 1st, or as soon thereafter as is practical and in conformity with law and regulation." And, be it

FURTHER RESOLVED: "That said repurchase program will be in conformity with the Term Sheet which is attached and made part of this resolution and which will be included in its entirety with the minutes of this meeting (See Tab E)." And, be it

FURTHER RESOLVED: "That the repurchase program will be based on "Book Value". The Book Value will be determined at each repurchase date based on the 1997 year end audited financials of ULLICO Inc. The calculation shall be accomplished by taking the "Total of Stockholders Equity" as shown on the financial statement and dividing it by the total number of shares outstanding of Class A, Class B, Capital Stock and any Preferred Certificates still outstanding." And, be it

FURTHER RESOLVED: "In the event that subscriptions for repurchase exceed the dollar amount available in 1998, the Corporation shall determine a pro rate allocation among all requesting stockholders and allocate the dollars available among the stockholders requesting repurchase." And, be it

FURTHER RESOLVED: "That the appropriate officers and employees of the Corporation shall be, and each of them hereby is, authorized, directed and empowered to, on behalf of the Corporation, acknowledge, execute and deliver any and all such actions or documents, which may be necessary or desirable to effectuate the foregoing resolutions, and their acts and deeds in so doing shall be conclusively presumed to be the acts and deeds of the Corporation."

Motion was made, seconded and approved

The Chairman noted that this concluded the action items on the agenda and called for an Executive Session. He delivered his report (a copy of which is included as an addendum to these minutes) during the Executive Session.

The Meeting was then adjourned and the Chairman was authorized to select the time and place of the next meeting.

Joseph A. Carabillo
Assistant Secretary

Attachments

2

JW 00328

MEETING OF THE BOARD OF DIRECTORS
OF
ULLICO Inc.

May 5, 1998
The Washington Court Hotel
Washington, D.C.

ATTENDEES:

DIRECTORS:

Morton Bahr
John J. Barry
Marvin Boede
Kenneth J. Brown
Bill Casstevens
John E. Cullerton
John F. Gentleman
Robert A. Georgine
Frank Hanley

Frank Hurt
James La Sala
Joseph F. Maloney
James F. M. McNulty
James J. Norton
Vincent R. Sombrotto
Jacob F. West
William H. Wynn

OFFICERS:

John R. Aprill
Joseph A. Carabillo
John K. Grelle
James W. Luce

Mark A. Maloney
Charles R. Sormani
Michael R. Steed

OTHERS:

George Holland

Chairman Georgine called the meeting to order and advised the Directors that Messrs. Biller, Coia, Joyce, McCarron and Wyse were unable to attend the Meeting.

The first order of business was the adoption of the minutes of the May 6, 1997, Meeting of the Board. Copies of these minutes were circulated with the Preliminary Agenda for this Meeting, and no amendments or changes to the minutes had been received. A motion to adopt said minutes was made, seconded and approved.

The Chairman told the Board that following the meeting, they would hear ULLICO's annual report to its stockholders and more information about the Company's year-end results. He pointed out that 1997 had many positives and some negatives. Overall, the Company realized an after tax gain of $28.8 million. Most of that came from realized Capital Gains that after taxes, yielded $14 million. Unrealized Gains totalled $11 million. Operations also improved and total assets were up $121.9 million to $2,915,878,000. Stockholder equity did decline because of the Stock Repurchase Program. The repurchase of $30 million in stock had a very positive impact on the Company's financial posture. The year's retained earnings were $29.8 million, an increase of $17.6 million or 144%. Each share of stock also increased in value to $28.70.

Next, the Report of the Nominating Committee was delivered. The Nominating Committee, appointed by Chairman Georgine with the approval of the Executive Committee, held its meeting on February 11, 1998. The Nominating Committee submitted the following as its nominations and recommendations for the election of Directors at the Annual Meeting of Stockholders to be held in Washington, D.C. on May 5, 1998.

The terms of nine Directors would expire at today's Meeting of Stockholders.

DEFENDANT'S EXHIBIT F-2

The Nominating Committee unanimously nominated the following for election for a term of three years, expiring in 2001:

> John E. Cullerton
> Frank Hanley
> Frank D. Hurt
> Joseph F. Maloney
> James F. M. McNulty
> Lenore Miller
> Vincent R. Sombrotto
> John J. Sweeney
> William H. Wynn

The Nominating Committee recommended that the Board of Directors and/or the Executive Committee be authorized to fill these vacancies and/or any other vacancies which may occur on the Board of Directors if, and when, the Board of Directors and/or the Executive Committee deemed it advisable to do so.

Election of all of the foregoing would bring to twenty-seven members, the number serving on the Board of Directors.

The Report was received.

Chairman Georgine noted that the Executive Committee was elected annually.

Article VI, Section 2 of the Bylaws, as amended by the Executive Committee, provides for the election of the membership of the Executive Committee by the Board of Directors for a term of one year, such Committee to consist of not more than sixteen Directors and in addition thereto the Chairman and Chief Executive Officer, the President and the Secretary-Treasurer.

It was recommended that the Executive Committee consist of the Directors named below, including those Directors whose term of office expired today and were reelected as Directors at the Stockholders' Meeting to follow. The following resolution was offered for consideration by the Board of Directors

RESOLVED: "That the Executive Committee will consist of the following 14 Directors and 1 Officer:

| | |
|---|---|
| John J. Barry | Frank Hanley |
| Marvin J. Boede | John T. Joyce |
| Kenneth J. Brown | Joseph F. Maloney |
| Bill Casstevens | James F. M. McNulty |
| Arthur A. Coia | James J. Norton |
| John E. Cullerton | Jacob F. West |
| John F. Gentleman | William H. Wynn." It was |
| Robert A. Georgine | |

FURTHER
RESOLVED "That the Executive Committee be authorized to fill existing vacancies and any other vacancies which may occur for any reason whatsoever if and when the Executive Committee deems it advisable to do so."

Motion was made, seconded and approved.

The Chairman then asked for a motion on the resolution authorizing the Chairman to vote the shares of ULLICO Inc.'s subsidiaries.

Since ULLICO Inc. was the sole Stockholder of the issued and outstanding shares of The Union Labor Life Insurance Company, Ulico Casualty Company, Zenith Administrators, Inc., TNDL, Inc., Trust Fund Advisors, Inc., UNIONCARE Inc., Ulico Standard of America Integrated Health, Inc., ULLICO Management Company, MRCo, Inc., and ULLICO Mortgage Corporation, its vote was necessary for the transaction of business at the Annual Stockholders Meeting for these companies and any other subsidiary the Company may purchase or create.

It was recommended, therefore, that the Board of Directors adopt the following resolution:

RESOLVED: "That the Board of Directors hereby empowers and authorizes the Chairman and Chief Executive Officer to vote the shares of stock in The Union Labor Life Insurance Company, Ulico Casualty Company, Zenith Administrators, Inc., TNDL, Inc., Trust Fund Advisors, Inc., UNIONCARE Inc., Inc., Ulico Standard of America Integrated Health, Inc., ULLICO Management Company, MRCo, Inc., and ULLICO Mortgage Corporation, and any other subsidiary owned by ULLICO Inc., or one of its subsidiaries, at the Annual Stockholders Meeting of each subsidiary, as, in his discretion, he may deem appropriate and proper on any and all matters or transactions which may require a vote of Stockholders." (ULLICO Inc.)

Motion was made, seconded and approved.

The Chairman noted that the proposed dividend was the same as last year. Management recommended the declaration of a 2% cash dividend. Total Stockholder equity at year-end was $244.8 million, a decrease from last year's $258.7 million. The decrease was a direct result of the stock repurchase program the Board had authorized, which eliminated over 1 million shares outstanding. Retained earnings increased by $17.2 million and each share of stock and outstanding certificate increased $1.64 in value, a 6% increase from $27.06 to $28.70.

The Chairman requested a motion authorizing a 2% dividend, or .57¢ per share, to be paid on June 30, 1998, as presented. It was

RESOLVED: "That out of ULLICO Inc.'s Stockholders Surplus, there shall be declared to Stockholders of record on June 1, 1998, a cash dividend of .57¢ per share, payable on June 30, 1998."

Motion was made, seconded and approved.

The Chairman next asked for a Board resolution authorizing the appointment of Martin J. Maddaloni as a member of the Board of Directors for a term of 3 years to expire in 2001. It was

RESOLVED: "That Martin J. Maddaloni be, and hereby is, elected as a member of the Board of Directors for a two year term, to expire in 2000."

Motion was made, seconded and approved.

The Chairman then noted the conclusion of the official business. A motion was called for to adjourn the Meeting of the Board of Directors of ULLICO Inc. Motion was made, seconded and approved.

Joseph A. Carabillo
Vice President and
Assistant Secretary