IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

|  |  |  |
|---|---|---|
| ULLICO INC., | ) | |
| Plaintiff, | ) | CASE NUMBER: 1:06CV01388 (RJL) |
| v. | ) | DECK TYPE: General Civil |
| | ) | |
| WILLIAM CASSTEVENS, | ) | |
| Defendant. | ) | |

## PLAINTIFF ULLICO INC.'S REPLY TO DEFENDANT CASSTEVENS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff ULLICO Inc. ("ULLICO") has filed a Motion for Partial Summary Judgment (the "Motion"). Defendant Billy Casstevens' ("Casstevens") has filed an Opposition (the "Opposition") to ULLICO's Motion, in response to which ULLICO files the following Reply.

Casstevens' Opposition provides no basis upon which to deny ULLICO's Motion. First, it largely ignores the undisputed facts and law set forth in that Motion which justify a grant of summary judgment to ULLICO. Indeed, Casstevens initially bases his Opposition to the Motion on grounds ULLICO did not even assert in its Motion, namely that Casstevens' stock purchases were *ultra vires*. Second, he improperly offers the affidavit of a purported expert witness that never submitted an expert report as required by Federal Rule of Civil Procedure 26, and which, in any event, similarly ignores the straightforward statutory requirements under Maryland law for interested director transactions that Casstevens admittedly failed to comply with. Third, he offers a Defendant's Statement of Material Facts to which Defendant Contends there is no Genuine Dispute ("Defendant's SOMF") while having failed to move for summary judgment himself, and essentially forces the Court and ULLICO to incur the time and expense of determining what, if any, facts presented in Defendant's SOMF bear any relevance to ULLICO's Motion.

Casstevens' failure to adhere to the Federal Rules of Civil Procedure and the rules of this Court should not be rewarded, and both the expert witness affidavit and Defendant's SOMF should be disregarded by the Court. *See* Part I *infra*; ULLICO's Response to Defendant's Statement of Material Facts as to Which Defendant Contends there is No Genuine Dispute at 1-2, filed contemporaneously herewith.

The simple and undisputed facts of this case demonstrate that Casstevens participated in self-interested transactions with ULLICO, voted on resolutions in which he had a financial interest, and did so without making any of the required disclosures to disinterested directors required by Maryland law. Thus, he breached his fiduciary duty to ULLICO and violated applicable provisions of the Maryland Code. He is, therefore, required to return all of his ill-gotten stock profits. Nothing in the Opposition raises any genuine issues of material fact as to these claims.

In addition, and in the alternative, he was unjustly enriched by avoiding proration under the Actual 2000 Repurchase Program. Casstevens failed to tender all of his shares as required under the terms of the 2000 Offer to Purchase, and was, therefore, subject to proration. The unchallenged documentary evidence indicates he redeemed some, but not all, of his ULLICO Class A shares *pursuant to the Offer to Purchase*, and that he avoided proration despite failing to tender all of his Class A shares. Casstevens failed to bring this error to ULLICO's attention, and was, therefore, unjustly enriched. He was also unjustly enriched by the repurchase of his Capital Stock at a price much higher than that which ULLICO was required to pay. There is likewise nothing in Casstevens' Opposition that raises any genuine issue of material fact as to these claims. Accordingly, ULLICO's Motion for Partial Summary Judgment should be granted.

**ARGUMENT**

**I.    The Affidavit of James J. Hanks, Jr. Must Be Ignored Pursuant to Federal Rules of Civil Procedure 26 and 37(c)**

Pursuant to Rule 37(c), the Affidavit of James J. Hanks, Jr. ("Hanks Affidavit") must be ignored by the Court in ruling on ULLICO's Motion because Casstevens failed to adhere to the requirements of Federal Rule of Civil Procedure ("Rule") 26(a)(2)(B), and ULLICO has been prejudiced by unfair surprise and an inability to conduct any expert witness discovery.

Rule 37(c)(1) provides in relevant part: "A party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence . . . *on a motion* any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1) (emphasis added). Accordingly, the Federal Rules require the exclusion of any evidence or witnesses not properly disclosed as required by Rule 26(a). As the D.C. Circuit recently explained:

> Under Rule 26(a)(2)(B), a party using an expert witness must disclose a report containing, inter alia, "a complete statement of all opinions to be expressed and the basis and reasons therefore," [citation omitted]. The purpose of the rule is to eliminate "unfair surprise to the opposing party." [citation omitted]... Under Rule 37(c)(1), if a party fails to disclose the information required by Rule 26(a), its expert may not testify as to that information-"unless such failure is harmless."

*Muldrow v. Re-Direct, Inc.*, ___ F.3d ___, No. 05-7169, 2007 WL 1892082, at *5 (D.C. Cir. July 3, 2007). *See also Riddick v. Washington Hosp. Center*, 183 F.R.D. 327, 330 (D.D.C. 1998) (stating that no expert may be deposed until after the expert's report is provided and that "failure to submit an expert's report ordinarily results in the exclusion of the expert witness' testimony at trial.") (citing Rule 37(c)(1)).

This exclusionary principle extends to affidavits, such as the Hanks Affidavit, that are submitted in connection with summary judgment. In disregarding an affidavit submitted to oppose a motion for summary judgment in similar factual circumstances to the case at bar, the First Circuit stated:

> Disregarding the affidavit was amply justified in this instance....
> [A] party retaining an expert must also submit to opposing counsel a detailed report covering, inter alia, the expert's qualifications, the gist of his opinion, and the sources of information underlying that opinion.... The appellant made none of these disclosures during the discovery period and his submission of the [ ] affidavit ... more than three months after the close of discovery and fewer than three weeks before the scheduled final pretrial conference--was nothing short of a sneak attack.
>
> The expert disclosure requirements are not merely aspirational, and courts must deal decisively with a party's failure to adhere to them. [Rule 37's] phraseology applies with equal force to motions for summary judgment.

*Lohnes v. Level 3 Comm., Inc.*, 272 F.3d 49, 59-60 (1st Cir. 2001). Moreover, the prejudice inherent in submitting the Hanks Affidavit at this late stage in the proceedings, with discovery having closed, is apparent:

> The appellant's failure to unveil his expert until after [appellee] had moved for summary judgment deprived [appellee] of the opportunity to depose the proposed expert, challenge his credentials, solicit expert opinions of its own, or conduct expert-related discovery. This is exactly the type of unfair tactical advantage that the disclosure rules were designed to eradicate.

*Id.* at 60. *See also NutraSweet Co. v. X-L Engineering Co.*, 227 F.3d 776, 785-86 (7th Cir. 2000) (holding that failure to file an expert report merits the automatic exclusion of that expert's testimony and that prejudice exists where previously undisclosed expert testimony is offered on the eve of pre-trial orders being due).

Discovery in this case closed on April 27, 2007. Under the terms of the Scheduling Order in this matter, Casstevens Rule 26 expert report and disclosure was due no later than April 3, 2007. Casstevens never submitted an expert report for Mr. Hanks. ULLICO was, therefore, deprived of the opportunity to conduct discovery, to prepare a rebuttal expert witness report, to depose Mr. Hanks, and to solicit additional experts, if needed. The Hanks Affidavit is also independently inadmissible to the extent it is not based on personal knowledge or contains legal conclusions. *See* Fed. R. Civ. P. 56(e). Accordingly, this Court should not consider the Affidavit in ruling on ULLICO's Motion. In the event this Court disagrees, however, ULLICO will address the arguments contained in the Hanks Affidavit that are referenced in the Casstevens Opposition.

## II.    Casstevens' Discourse Regarding Whether His Stock Purchases Were *Ultra Vires* Is Irrelevant to ULLICO's Motion for Summary Judgment

Casstevens initial argument in opposition to ULLICO's Motion is that his stock purchases were not ultra vires. *See* Casstevens Opposition § 1. ULLICO, however, did not move for summary judgment on this basis. *See generally* the ULLICO Motion. Accordingly, Casstevens' arguments form no basis to deny ULLICO's Motion. The issue whether the stock purchases by Casstevens were *ultra vires* is simply irrelevant at this stage of the litigation; the Court should decline to address this issue in ruling on ULLICO's Motion.

Similarly, the Hanks Affidavit includes an extensive discussion regarding whether the stock sales to Casstevens were fair and reasonable to ULLICO. *See* Hanks Affidavit at 8-10. This discussion is both inadmissible and irrelevant at this stage in the litigation, as ULLICO has not moved for summary judgment based on the validity of the stock sales to Casstevens.

772278 5

III.    **Section 2 of the Casstevens Opposition Does Not Form a Basis for Denying ULLICO's Motion**

Casstevens makes several unsupported arguments lacking in case authority or citation in Section 2 of his Opposition.  ULLICO will address each in turn.

A.    The repurchases from Casstevens and his wife were not properly authorized by the Board and the use of investment advisors does not excuse Casstevens' failure to disclose his personal financial interest.

Casstevens argues that Credit Suisse First Boston ("CSFB") and other unspecified professional advisors blessed the repurchase programs and never raised any objections regarding stockholdings by insiders.  Casstevens Opposition § 2.A.  None of this is relevant to whether Casstevens complied with his statutory obligations.  Moreover, CSFB never opined as to the Actual 2000 Repurchase Program, which is the only program at issue in ULLICO's summary judgment motion.  Casstevens cites no evidence, and there is none, that CSFB evaluated or approved the repurchase program containing the 10,000 share pro-ration threshold under which Casstevens sold his stock in January 2001.  CSFB, therefore, has no relevance to ULLICO's pending Motion.  Moreover, the presence of investment advisors and professionals would not excuse Casstevens' breach of fiduciary duty for failure to disclose in any event.

Sections I and II of ULLICO's Motion are based on the failure of Casstevens to comply with the terms of Md. Code Ann., Corps & Ass'ns § 2-419, and his failure to disclose material facts regarding his personal interest in the repurchase of his ULLICO stock.  *See* ULLICO Motion at 3-17.  The most recent decision by Maryland's highest court specifies that Section 2-419 "impose[s] a duty upon [directors] to reveal all facts material to the corporate transactions." *Storetrax.com, Inc. v. Gurland*, 915 A.2d 991, 1003 (Md. 2007).

In addition, it is Casstevens' burden to prove that he disclosed any conflicting interest he had in a resolution or transaction with ULLICO.  *See Billman v. State Deposit Ins. Fund Corp.*,

593 A.2d 684, 699 (Md. Ct. Spec. App. 1991) (noting jury instruction "that the burden was on the person with a conflict of interests to prove disclosure to the board and approval of the transaction by a majority of disinterested directors"). *See also Weinberger v. UOP, Inc.*, 457 A.2d 701, 703 (Del. 1983) ("the burden clearly remains on those relying on the vote to show that they completely disclosed all material facts relevant to the transaction").

There is no dispute that Casstevens failed to disclose "all material facts" as required by Section 2-419. *See* ULLICO Motion at 3-11. There is likewise no authority for the proposition that the presence of outside advisors and professionals somehow excuses Casstevens' failure to make the disclosures required by Maryland law.

Casstevens also obliquely argues that corporate records demonstrate that ULLICO officers and directors held stock "during the years 1997 through 2001." *See* Casstevens Opposition § 2.A. While it is unclear what records Casstevens refers to, it is apparent that no disclosure of Casstevens' stock holdings to Terence O'Sullivan, the only disinterested ULLICO director present at the critical November 3, 2000 Board meeting, took place at or prior to that meeting; any alleged disclosure in the notice of annual meeting issued in May 2000, months prior to the November 2000 Board meeting was ineffective. *See* ULLICO Motion at 4, 7, and 9.

Casstevens asks this Court to speculate that because Mr. O'Sullivan was the General President of the Laborers' International Union of North America ("LIUNA"), which was a ULLICO shareholder, Mr. O'Sullivan must have seen the Notice of Annual meeting sent to his union prior to the November Board meeting. The problem with this argument is that there is no evidence that Mr. O'Sullivan ever received or saw that document prior to November 3, 2000. Mr. O'Sullivan was not himself a shareholder, and there is no evidence that shareholder communications associated with LIUNA were sent to Mr. O'Sullivan. To the contrary, the

evidence is that shareholder communications concerning LIUNA's shares, and the shares of its associated pension funds during the relevant time frame, including the Notice of Annual Meeting, were sent to persons other than Mr. O'Sullivan. *See* Proxy for Annual Meeting of Stockholders to be held May 11, 2000 to LIUNA Local Union & District Council Pension Fund, c/o Henry Moreshi, Fund Administrator (USDC 187604) (attached hereto as Exhibit 33); Proxy for Annual Meeting of Stockholders to be held May 11, 2000 to Laborers International Union of N.A. c/o Nations Bank Trust Income Processing (USDC 187603) (attached hereto as Exhibit 34). Indeed, the proxy addressed to Mr. O'Sullivan's union was actually sent to a post office box in Texas. *See* Exhibit 34 hereto.

Additionally, there was no approval by a majority of disinterested directors of the resolutions passed at the November 3, 2000 ULLICO Board meeting. The Casstevens Opposition makes no specific arguments regarding this issue, but the Hanks Affidavit discusses disinterested director approval at 10-11, and ULLICO will address those arguments in the event this Court deems the Hanks Affidavit admissible. Hanks argues that both Robert Georgine and Terence O'Sullivan were disinterested directors that approved the resolutions at the November 2000 Board meeting, and therefore, approved the repurchases from Casstevens. Hanks Affidavit at 10-11.

As a simple matter of mathematics, no majority of disinterested directors knowingly approved the November 3, 2000 resolutions and repurchases from Casstevens. While Georgine may have been aware of Casstevens' stockholdings, the undisputed evidence ULLICO presented in its Motion conclusively demonstrates that Mr. O'Sullivan had no knowledge of Casstevens' holdings of ULLICO stock or his financial interest in the November 2000 Board resolutions. *See* ULLICO Motion at 9. Accordingly, Mr. O'Sullivan could not have knowingly and effectively

772278.5

voted for the November 2000 resolutions or approved of ULLICO's repurchase of Casstevens' stock. One is not a majority of two. Thus, even assuming *arguendo* that Georgine was disinterested (which he was not), the alleged approvals of Casstevens' repurchases and the resolutions at the November 2000 meeting would still fail for lack of a majority of disinterested directors.

Moreover, despite the tortured explanation in the Hanks Affidavit regarding the implications of Georgine's put right to have his stock repurchased, Georgine clearly had a financial interest in the resolutions passed at the November 2000 ULLICO board meeting. Hanks concedes in his affidavit that the Compensation Committee approved the amendment to Georgine's employment agreement granting him the put right to have certain of his Class A shares repurchased. *See* Hanks Affidavit at 6. This action by the Compensation Committee, however, was *ultra vires.* Under the Maryland code, only the ULLICO Board could authorize the company to repurchase its own shares. Md. Code Ann., Corps. & Ass'ns § 2-310(a)(1) ("Subject to the provisions of its charter and § 2-311 of this subtitle, *if authorized by its board of directors,* a corporation may acquire the corporation's own shares") (emphasis added). There is no evidence such authority was ever delegated to the Compensation Committee. Indeed, neither Hanks nor Casstevens cite any resolution or authority empowering the Compensation Committee to grant such a put right to Georgine. Accordingly, no proper repurchase pursuant to the put right was possible for Georgine.

In addition, the terms of the put right are prospective only. *See* Addendum to Employment Agreement by and between ULLICO Inc. and Robert Georgine, dated as of Oct. 1, 1999 (U 041217-19) (attached hereto as Exhibit 35). Nothing in the put right purports to ratify those repurchases of his own stock that Georgine caused to take place in July 2000. *See*

772278.5

Georgine Shareholder File at (USEC 021998-022000) (the cited pages are attached hereto as Exhibit 36). The put right, therefore, did not eliminate Georgine's financial interest in the November 3, 2000 resolutions that purported to ratify his own prior repurchases.

Furthermore, even assuming *arguendo* that the put right granted in October 2000 was somehow retroactive, there is no evidence in the record that Georgine, or anyone else, ever disclosed to the Compensation Committee prior to its approval of the put right in October 2000 that Georgine had already caused ULLICO to repurchase his stock in July 2000. *See* Minutes, Meeting of the Compensation Committee of ULLICO Inc., Oct. 20, 2000 (USDC 0123775-76) (attached hereto as Exhibit 37). Because there was no disclosure of this material fact, the Compensation Committee's grant of a retroactive put right would not be a valid act under Section 2-419 of the Maryland Code applicable to Corporations and Associations. For all of the foregoing reasons, Georgine had a material financial interest in the resolutions passed at the November 2000 meeting, as in the absence of those resolutions, no other valid authority existed for the prior repurchases of Georgine's own stock holdings.

> B.    The Maryland court decisions cited by ULLICO are on point and their use of the term "fiduciary duty" is in no way misleading.

Casstevens again cites the inadmissible Hanks Affidavit and attempts to distinguish the decisions cited by ULLICO because they rely on the term "fiduciary duty." Casstevens Opposition § 2.B-2.C. This argument is disingenuous. The *Storetrax.com, Inc.* decision is the most recent decision by Maryland's highest court discussing the duties of directors, it speaks directly to the duty of disclosure applicable to directors of a corporation, and describes the duties of directors as "fiduciary" duties. *See Storetrax.com, Inc.,* 915 A.2d at 1001-03.

Hanks states that all director duties were codified in Md. Code Ann., Corps & Ass'ns § 2-405.1. Hanks Affidavit at 11-13. But, as the *Storetrax.com, Inc.* Court held, Section 2-419,

772278.5

relied upon by ULLICO here, also imposes "fiduciary" duties on directors. 915 A.2d at 1001-03. Hanks also engages in an extended and irrelevant discussion seeking to distinguish the authorities cited in ULLICO's Motion based on the principle that the duties of a trustee do not apply to corporate directors. *Id.* This argument is a red herring as ULLICO nowhere seeks to impose a judicial standard applicable to a trustee on Casstevens. Instead, the authorities cited by ULLICO refer to the duties of directors.

Contrary to Hanks' sweeping assertion that Section 2-405.1 codifies all of the duties of a director of a corporation, it merely represents a codification of the business judgment rule and does not signal an abandonment of the concept of fiduciary duty in Maryland. *See Independent Distribs., Inc. v. Katz*, 637 A.2d 886, 886 (Md. Ct. Spec. App. 1994) (stating that Section 2-405.1 is simply "the codification of the business judgment rule"). Moreover, *Katz* states that where, as here, the duty of loyalty of a director (rather than the duty of care) is implicated, the business judgment rule offers no shelter. *Id.* "The duty of care and the duty of loyalty are two independent duties directors owe the corporation.... When the General Assembly codified the business judgment rule 'it did not intend to abrogate the fiduciary duty imposed upon a director or officer....'" *Id.* While the *Katz* case concerned the usurpation of a corporate opportunity, participation in self-interested transactions and failure to disclose one's interest in resolutions authorizing or ratifying those transactions represents a similar breach of the duty of loyalty that renders the business judgment rule inapplicable in this case.

The *Storetrax.com, Inc.* opinion makes clear that directors of a corporation have an affirmative duty to make disclosures regarding their financial interest in any resolutions passed by the corporation, or transactions with the corporation. *Storetrax.com, Inc.,* 915 A.2d at 1003. The *Storetrax.com, Inc.* court described the obligations applicable to directors as fiduciary

11

duties: "As such, directors of a corporation 'are entrusted with powers which are to be exercised for the common and general interest of the corporation, and not for their own private individual benefit.'" *Id.* at 1001 (citation omitted). "This *fiduciary duty*, furthermore, is not intermittent or occasional, but instead 'the constant compass by which all director actions for the corporation and interactions with its shareholders must be guided.'" *Id.* (emphasis added). Additionally, the other case law cited by ULLICO speaks directly regarding the duties of directors of corporations, regardless of whether or not the term "fiduciary duty" is used.

Casstevens argues that ULLICO's cases are distinguishable in Section 2.C of his Opposition. The relevant provisions of Section 2-405.1 were enacted in 1976. *See* Md. Code Ann., Corps & Ass'ns § 2-405.1, History; Hanks Affidavit at 12. All of the cases cited by ULLICO regarding the relevant duties of directors were decided after Section 2-405.1's codification of the business judgment rule. Accordingly, the discussion by Casstevens of the alleged distinction between ULLICO's cases utilizing the "fiduciary duty" nomenclature and the duties applicable to Casstevens is simply inapposite.

In addition, Casstevens fails to offer any defense to the fact that he failed to comply with the material terms of the 2000 Offer to Purchase, and that by breaching that agreement, an independent basis exists for rescinding the repurchases and ordering a disgorgement of all of Casstevens' stock profits. *See* ULLICO Motion at 17. Casstevens does not dispute that he was in material breach of his contract to have ULLICO repurchase his stock due to his failure to tender all of his shares. Not only does this demonstrate that he was unjustly enriched, but it entitles ULLICO to disgorgement of his stock profits. *Id.*

Casstevens clearly failed to make the disclosures required by Maryland law and has failed to raise any issues of disputed fact regarding his non-disclosure. Accordingly, ULLICO is

772278.5

entitled to summary judgment on Counts I and IV of the Complaint as set forth in ULLICO's

Motion at 3-17.

### IV.    The Special Committee Did Not Ratify Any Stock Purchase, Sale, or Board Act

Casstevens argues in Section 3 of his Opposition that the Special Committee ratified all

purchases and sales of ULLICO stock by, *inter alia*, Casstevens.  As described *supra* regarding

Section 1 of the Casstevens Opposition, ULLICO has not moved for summary judgment

regarding the stock purchases by Casstevens in its Motion.  Accordingly, and because

Casstevens has failed to move for summary judgment, any discussion regarding any alleged

Special Committee ratification of the *sales* of ULLICO stock to Casstevens is irrelevant.

Moreover, and more to the point here, the undisputed facts demonstrate that the Special

Committee merely offered recommendations to the full board, and it never ratified the conduct of

Casstevens or the other self-interested members of ULLICO's Board.

At its December 2, 2002 Meeting, the ULLICO Board adopted a resolution appointing a

Special Committee.  Specifically, the Special Committee was:

> authorized and directed to review the [Thompson] Report and *make recommendations* to the Board as to the appropriate action or actions that the Board should take in response to the recommendations made in the Report with respect to (1) the profits realized upon the sales of Company stock purchased by certain directors and officers in the Company's 1998 and 1999 stock purchase offers and sold to the Company pursuant to the Company's formal 2000 stock repurchase program and its discretionary stock repurchase program (2) issues relating to other stock transactions involving officers and directors referred to in the Report's recommendations; and (3) the Company's corporate governance practices.

Minutes, Meeting of the Board of Directors of ULLICO Inc., Dec. 2, 2002 (USDC

0003444-46) at (USDC 0003446) (attached hereto as Exhibit 38).  Thus, the Special

Committee was initially authorized only to "make recommendations to the Board as to

13

772278.5

the appropriate action or actions that the Board should take," *id.*, rather than act on the Board's behalf.

At its March 13, 2003 Meeting, the ULLICO Board again adopted a resolution regarding the Special Committee. This resolution was substantively the same as the Board's prior resolution, but added a "FURTHER RESOLVED" "[t]hat the Special Committee is to independently take such responsive actions as it deems necessary as soon as practicable." Minutes, Meeting of the Board of Directors of ULLICO Inc., Mar. 13, 2003 (JK 019157-60) at (JK 09159) (attached hereto as Exhibit 39). The undisputed facts demonstrate that the Special Committee did not, in fact, exercise any of the powers that the Board may have delegated in March 2003, but instead only made "Recommendations" to the Board as it had been initially authorized to do in December 2002. *See* ULLICO Report of the Special Committee to the Board of Directors, Mar. 25, 2003, at 5, 8 (attached hereto as Exhibit 40). In fact, the Special Committee never passed any resolutions or took any official action as a committee other than meeting and issuing a document entitled "ULLICO Report of the Special Committee to the Board of Directors" on March 25, 2003. *Id. passim.*

The Special Committee Report consists of nineteen pages, and is organized into four sections entitled "Members," "The Background," "The Decision of the Committee" and "Additional Considerations." *Id.* at 2, 3, 5, 16. "The Decision of the Committee" section is further subdivided into two parts entitled "Remedial Recommendations" and "Corporate Governance Issues." *Id.* at 5, 8. The "Corporate Governance Issues" part is further subdivided into two subsections entitled "Actions/Rationale" and "Specific Recommendations," the latter of which contains 19 different items. *Id.* at 8, 9.

Casstevens claims that the Special Committee Report "ratified" his prior actions. Casstevens Opposition § 3. The Special Committee Report, however, by its own terms, never purported to ratify Casstevens' prior conduct. *Id.* at 5-8. The Report contains only "Remedial Recommendations" regarding disgorgement of stock profits and "Specific Recommendations" regarding "Corporate Governance," and the word "ratification" appears nowhere in the report. *Id. passim.* As the Report makes clear, the majority of the Special Committee (whose independence is very much an issue) merely evaluated competing conclusions presented by the Thompson Report, the Sidley Austin law firm and Jim Hanks. *Id.* at 7. It is undisputed that the members of the committee majority did not intend through their Report or otherwise to absolve anyone of any actual wrongdoing that might subsequently be determined by this Court. *See* Transcript, Deposition of Daniel Mintz, May 16, 2006 at 239-40 (the relevant pages of which are attached hereto as Exhibit 41); Transcript, Deposition of John T. Joyce, May 23, 2006 at 274-76 (the relevant pages of which are attached hereto as Exhibit 42).

The fact that the Special Committee Report only made recommendations is confirmed by the Board's subsequent actions. The full Board met on March 28, 2003, and "the major purpose of the meeting was to discuss the report of the Special Committee." *See* Minutes, Meeting of the Board of Directors of ULLICO Inc., Mar. 28, 2003 (USDC 0003510-14) at (USDC 0003510) (attached hereto as Exhibit 43). At that meeting, the full Board expressly considered whether to ratify prior conduct and, and consistent with the Committee's intention not to absolve anyone of wrongdoing, declined to do so: "After discussion in which Dr. Mintz explained why the majority of the Board concluded that it was not necessary to act upon Governor Thompson's recommendation that the Board ratify the actions taken at the November 3, 2000 meeting, *a*

772278.5

*decision was made to concur that there was no need to ratify the actions taken previously* at the Company's November 3, 2000 meeting." *Id.* at (USDC 0003513) (emphasis added).

The Board also expressly considered whether to request that stock profits be returned, but decided to take no formal action in that regard at the time: "A discussion then ensued regarding the return of profits by directors. It was decided that a return of profits would not be in the best interest of the Company since there was no illegal conduct or wrongdoing by the directors and officers as determined by Governor Thompson and the Special Committee of the Board of Directors." *Id.*[1]

The Board then met again on April 2, 2003 as a "continuation of the meeting begun on March 28, 2003" to "continue with consideration of the Corporate Governance recommendations made by the Special Committee of the Board." *See* Minutes, Meeting of the Board of Directors of ULLICO Inc., Apr. 2, 2003 (USDC 0003519-26) at (USDC 0003519) (attached hereto as Exhibit 45). At that meeting, the Board proceeded to adopt a series of resolutions designed to implement the Special Committee's "Specific Recommendations" regarding "Corporate Governance." *Id.* at (USDC 0003520-26). No ratification of any conduct occurred at that meeting. *Id. passim.*

It is also clear as a matter of law that the Board could validly terminate any respite from the assertion of legal claims under the Board's resolutions, as it in fact did with its subsequent resolutions on May 13, 2003 which authorized the instant action. *See* Minutes, Meeting of the

---

[1] The reference to "no illegal conduct or wrongdoing" must have referred to no criminal wrongdoing since the Thompson Report stated that a "compelling argument" could be made that breaches of fiduciary duty had occurred. *See* Report of the Special Counsel, ULICO Stock Purchase Offer and Repurchase Programs and Global Crossing Investment, Nov. 26, 2002 at 6, 91 (attached hereto as Exhibit 44).

772278.5

Board of Directors of ULLICO Inc., May 13, 2003 (USDC 0003553-58) at (USDC 0003554-56) (attached hereto as Exhibit 46).

Board resolutions "are typically revocable by the board at will." *UniSuper Ltd. v. News Corp.*, C.A. No. 1699-N, 2005 Del. Ch. LEXIS 205, at *17 (Del. Ch. Dec. 20, 2005). Indeed, it is "an elementary principle of corporate law" that "[i]f the board has the power to adopt resolutions . . . then the power to rescind resolutions . . . must reside with the board as well." *Id.* at *19-20. *See also In re GM (Hughes) S'holder Litig.*, C.A. No. 20269, 2005 Del. Ch. LEXIS 65, at *13 n.34 (Del. Ch. May 4, 2005) (noting that because "Policy Statement had the effect of a resolution adopted by the board, it presumably could be rescinded or amended by nothing more than another board resolution").[2]

As the Second Circuit put it nearly a century ago "[i]t is undoubtedly true that directors may repeal any previous resolution or rescind any previous action unless repeal or rescission would involve a breach of contract or disturb a vested right." *Staats v. Biograph Co.*, 236 F. 454, 461 (2d Cir. 1916). *See also General Ribbon Mills, Inc. v. Higgins*, 115 F.2d 472, 474 (2d Cir. 1940) (finding that the adoption of resolutions "was an 'outline of a plan' or an 'expression of what the taxpayer corporation would like to do,' not a contract or commitment of any sort").

Casstevens disingenuously ignores the resolutions passed at the May 13, 2003 Board meeting because they prove fatal to any ratification argument he makes in his Opposition. As the decisions noted above acknowledge, a Board can only bind the corporation though a contract or other conduct that supports a claim of promissory estoppel, otherwise, a Board is free to pass

---

[2] Maryland Courts typically look to Delaware cases in deciding issues of Maryland Corporate law. *See, e.g., Werbowsky v. Collomb*, 766 A.2d 123, 143 (Md. 2001) (noting "the respect properly accorded Delaware decisions on corporate law," but ultimately declining to follow Delaware approach); *Lerner v. Lerner Corp.*, 750 A.2d 709, 722 (Md. Ct. Spec. App. 2000) (following Delaware approach).

772278.5

resolutions that change or repeal prior resolutions of the Board. *UniSuper*, 2005 Del. Ch. LEXIS

205, at *20, 34; *Staats*, 236 F. at 461. Here the undisputed facts demonstrate there was no

contract and no basis for promissory estoppel, and accordingly, the Board was free to pass the

resolutions demanding disgorgement, which the Board did on May 13, 2003.

There is simply no evidence of any contract between ULLICO and Casstevens regarding

the Special Committee Report. This case is thus similar to *Air Traffic & Service Corp. v. Fay*,

196 F.2d 40, 42-43 (1952), where the D.C. Circuit, applying Delaware law, reversed the district

court's judgment for a former corporate officer because there was no evidence that the

corporation ever ratified or entered into the contract claimed by the former officer. Similarly

here, there is no evidence of any release or other contract between ULLICO and Casstevens

based on the Special Committee Report or subsequent Board action. As a matter of law,

ULLICO's Board remained free to revoke any action by the Special Committee or Board

regarding Casstevens, and is therefore entitled, as a matter of law, to pursue this action against

Casstevens. Accordingly, because the undisputed facts demonstrate that neither the Special

Committee nor the Board took any action to "ratify" Casstevens' prior conduct, no basis exists

for denying ULLICO's Motion and summary judgment should be entered for ULLICO on

Counts I and IV of the Complaint.

## V. The Undisputed Facts Merit an Award of Summary Judgment for ULLICO Based on its Unjust Enrichment Claims

Casstevens again lines up a series of red herrings in his opposition to ULLICO's unjust

enrichment arguments. Casstevens concedes in his Opposition that he failed to tender all of his

shares of ULLICO stock as required under the terms of the 2000 Tender Offer and that the

repurchase of his stock, therefore, was subject to proration. *See* Casstevens Opposition § 4;

ULLICO Motion at 17-21. He also concedes that he was unjustly enriched by the repurchase of

18

his Capital Stock for $146.04 per share. *See* Casstevens Opposition § 4 (failing to address any of ULLICO's arguments regarding unjust enrichment as to the Capital Stock); ULLICO Motion at 20-21. There are no disputed issues of material fact that would merit a denial of ULLICO's Motion with respect to unjust enrichment.

In Section 4.A of Casstevens' Opposition, he argues that ULLICO's unjust enrichment claims are based on the stock *purchases* being *ultra vires*. ULLICO, however, has not moved for summary judgment on unjust enrichment on this basis. Indeed, as described above, it is Casstevens' failure to adhere to the written terms of the Actual 2000 Tender Offer, the repurchase of his stock due to his breaches of fiduciary duty and non-disclosure, and the repurchase of his Capital Stock at a premium over what ULLICO was entitled to pay for Capital Stock repurchases that justify a finding of unjust enrichment. ULLICO is, thus, entitled to summary judgment on Casstevens' stock repurchases regardless of whether his initial purchases of stock were *ultra vires*.

In Section 4.B, Casstevens boldly asserts that the repurchases of his stock were not in violation of Maryland law, which is both inaccurate and unsubstantiated, as described above. Casstevens failed to disclose his material financial interest in the resolutions passed at the November 2000 meeting. *See* ULLICO Motion at 4-5; ULLICO SOMF ¶ 46, 49-54. He also failed to disclose the repurchases of stock and failed to obtain disinterested director approval for those transactions. *See* ULLICO Motion at 4; ULLICO SOMF ¶¶ 52-53. As such, he was unjustly enriched by virtue of his breaches of fiduciary duty. It is in these exact circumstances that the principles of unjust enrichment applicable in Maryland require a disgorgement of the proceeds specified in ULLICO's Motion at 18-21. Additionally, Casstevens failed to comply with the terms of the Offer to Purchase pursuant to which his Class A shares were repurchased

772278.5

and, therefore, should have been prorated. *See* ULLICO Motion at 18-21; ULLICO SOMF ¶¶ 28, 40. To the extent his repurchase was not prorated, he was unjustly enriched. Nothing in the Casstevens Opposition merits a denial of this basis for summary judgment.

In Section 4.C of the Casstevens Opposition, he desperately attempts to manufacture a disputed issue of fact regarding the amount of damages. However, he fails to proffer any evidence contradicting the undisputed facts and amounts of damages presented in ULLICO's Motion. "On a motion for summary judgment, the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, depositions, deposition excerpts, or other competent evidence setting forth specific facts showing that there is a genuine issue for trial." *Hancock v. Homeq Servicing Corp.*, Civ. Act. No. 05-0307, 2007 U.S. Dist. LEXIS 31051, at *12 (D.D.C. Apr. 27, 2007). "The non-moving party 'is required to provide evidence that would permit a reasonable jury to find' in its favor." *Id.* "If the non-movant's evidence is 'merely colorable' or 'not significantly probative,' summary judgment may be granted." *Id.* at *12-13. In this case, Casstevens has offered absolutely *no evidence*, colorable, probative, or otherwise. As a matter of law, this is insufficient to defeat the certain and documented amounts of damages ULLICO specified in its Motion for Partial Summary Judgment. This Court can decide, as a matter of law, what the amount of Casstevens' profits subject to disgorgement were based on the evidence already in the record. *See* ULLICO's Motion at 19-20.

Finally, Casstevens asserts in Section 4.D of his Opposition, without any case support or explanation, that it would not be inequitable for him to retain his stock profits and that, therefore, ULLICO has not satisfied the last requirement for a showing of unjust enrichment. Casstevens, however, cites no authority or facts, and makes no arguments that merit such a finding and

772278.5

simply revisits his prior Special Committee ratification arguments.  ULLICO described *supra* that the Special Committee did not, in fact, ratify any past Board action or take any independent action; instead, it offered a series of recommendations for the Board's consideration. Additionally, ULLICO listed seven separate reasons why equity dictates that Casstevens disgorge amounts representing his unjust enrichment.  *Id.* at 21.  Casstevens replied to none of them and therefore has no basis here for opposing ULLICO's Motion.  Accordingly, ULLICO is entitled to summary judgment on II of its Complaint for unjust enrichment.

## VI.   ULLICO is Entitled to Prejudgment Interest

Finally, Casstevens fails to offer any opposition to the principle that ULLICO is entitled to prejudgment interest for any amounts awarded in connection with its Motion.  *Id.* at 22-23. Accordingly, this Court should award prejudgment interest on any amounts it orders Casstevens to disgorge or pay to ULLICO.

Dated: July 11, 2007

MILLER & CHEVALIER CHARTERED

By _____/s/ Victor Tabak_____
Anthony J. Trenga (DC Bar #218255)
Brian A. Hill (DC Bar #456086)
Victor Tabak (DC Bar # 480333)
Matthew T. Reinhard (DC Bar # 474941)
655 Fifteenth Street, N.W., Suite 900
Washington, DC  20005-5701
Tel. (202) 626-5800
Fax. (202) 628-0858
atrenga@milchev.com
Attorneys for Plaintiff

772278.5