IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Civil Division

| | | |
|---|---|---|
| ULLICO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:06CV01388 (RJL) |
| v. | ) | |
| | ) | |
| BILLY CASSTEVENS | ) | |
| | ) | |
| Defendant | ) | |

## ULLICO'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH DEFENDANT CONTENDS THERE IS NO GENUINE DISPUTE

Pursuant to Local Rule of Civil Procedure 7(h) and Federal Rule of Civil Procedure 56, Plaintiff ULLICO Inc. ("ULLICO"), submits the following Response to Defendant Billy Casstevens' Statement of Material Facts as to Which Defendant Contends there is No Genuine Dispute ("Casstevens SOMF") solely for the purposes of ULLICO's Motion for Partial Summary Judgment filed herein.

The Court should completely disregard Casstevens SOMF and strike it from the record because it is procedurally improper. As LCvR 7(h) makes clear, "a statement of material facts as to which the moving party contends there is no genuine issue" such as Casstevens SOMF is only appropriate if it "accompanie[s]" a "motion for summary judgment." LCvR 7(h). Here, however, Casstevens has not moved for summary judgment. Accordingly, his 127-paragraph SOMF is not properly before the Court and should be disregarded and stricken from the record.

While ULLICO has filed a Motion for Partial Summary Judgment, the procedurally appropriate response to such a motion is not Casstevens' lengthy SOMF, but a "separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists

a genuine issue necessary to be litigated." LCvR 7(h). Casstevens has in fact filed just such a document in this action. *See* Defendant's Statement of Genuine Issues in Dispute and Necessary to be Litigated. As a result, there is no need for the Court to now additionally consider Casstevens improperly filed and unnecessary SOMF.

Alternatively, if the Court considers Casstevens SOMF in ruling on ULLICO's Motion for Partial Summary Judgment, the SOMF does not demonstrate that ULLICO is not entitled to summary judgment. Many of the factual assertions made in the Casstevens SOMF contain no citations to the record in facial violation of LcVR 7(h) and Federal Rule of Civil Procedure 56. Other asserted facts do contain citations to the record, but frequently the cited parts of the record do not support the asserted facts. Still other asserted facts are demonstrably false. In addition, certain documents included by Casstevens as exhibits are not authentic because they contain unidentified handwritten notes and annotations, presumably of Casstevens' counsel. However, none of these factual issues are material in the sense that they would preclude entry of summary judgment for ULLICO on its pending motion. For all of these reasons, the Court should disregard Casstevens SOMF and grant ULLICO's Motion for Partial Summary Judgment.

ULLICO responds individually to each of the numbered paragraphs of the Casstevens SOMF below.

1.    ULLICO's By-Laws provide that the ownership of Stock of the Company shall be confined to International and National Trade Unions, Local Unions, State Federations of Labor, City Central Bodies and other forms of organization of labor and members thereof affiliated with AFL-CIO, including benefit trusts affiliated with such organizations, including but not limited to jointly managed pension funds, and to such other labor organizations and members thereof and such Directors or Officers as may be elected or employed by the Company, as the Board of Directors may from time to time grant the right of purchase. Plaintiff's Exhibit 2, ULLICO By-Laws, Article II (A), § 2; Article II (B), § 2; Article II (C), § 2; Article II (D), § 2.

769915.2

RESPONSE    ULLICO denies that the reference to the part of the record relied on to support this paragraph demonstrates the truth of all the asserted facts of this paragraph and that the referenced parts of the record are accurately quoted, but states that this dispute is not a material one for the purposes of this motion.

2.    The By-Laws clearly contemplate that individual ULLICO officers and directors would be entitled to own shares of ULLICO. See ULLICO By-Laws, Article II (A), §2, etc., ¶ 1, *supra.*

RESPONSE    ULLICO denies that the reference to the part of the record relied on to support this paragraph demonstrates the truth of all the asserted facts of this paragraph, but states that this dispute is not a material one for the purposes of this motion.

3.    ULLICO was organized to ensure that its shares would be "widely distributed" to the authorized holders of ULLICO shares, so that no single person or labor organization could control ULLICO's Board or management. See ULLICO By Laws, Article II (A), § 3; Article II (C), § 3.

RESPONSE    Admitted.

4.    "In order that the Stock may be widely distributed and that all groups of organized labor may participate in the ownership and management of the Company, the aggregate maximum percentage and amount of issued Capital Stock and Class A Stock, including shares held as Treasury Stock, which may be held, with power to vote, by a National or International Union, or a benefit trust affiliated with said labor organization including but not limited to jointly managed pension funds shall not be more than nine percent (9%); by any Local Union, Local Central Body or other form of organization included in Article II(A), not more than one percent (1%); and by any individual, not more than one percent (1%)." *Id.,* Article II (A), § 3.

RESPONSE    ULLICO denies that the references to the parts of the record relied on to support this paragraph demonstrate the truth of all the asserted facts of this paragraph and that the referenced parts of the record are accurately quoted, but states that this dispute is not a material one for the purposes of this motion.

5.    ULLICO By-Laws provide that 24 Million Class A and Class B shares could be issued, in the aggregate, "in such numbers and amounts as shall be determined by the Board of Directors from time to time." *Id.* Article II(C), § 1.

769915.2

RESPONSE    ULLICO denies that the references to the parts of the record relied on to support this paragraph demonstrate the truth of all the asserted facts of this paragraph and that the referenced parts of the record are accurately quoted, but states that this dispute is not a material one for the purposes of this motion.

6.    To ensure that issued ULLICO stock not be transferred outside of the limited group of authorized organizations and entities, the By-Laws further provide:

> The Capital Stock may be transferred on the books of the company either in person or by an attorney, but none of the Stock issued or reissued one or more times may be sold or transferred by the holder thereof, nor be sold or transferred by legal process or operation of law until the Company shall have had an option to acquire this said Stock *for the purpose of* resale at $25 per share, the par value of said Stock. The company shall have 30 days after the Stock has been tendered to it at its Home Office in which it may purchase such stock at the aforesaid price.

*Id.,* Article II (A), § 6 (emphasis added). See also *id.,* Article II (C), §.

RESPONSE    ULLICO denies that the references to the parts of the record relied on to support this paragraph demonstrate the truth of all the asserted facts of this paragraph, but states that this dispute is not a material one for the purposes of this motion.

7.    The By-Laws clearly distinguish between the *issuance* of stock of any kind (Capital or Class A) and the *sale*, re-purchase, transfer or re-sale of such stock. See, e.g., Article II (A), § 1 (distinguishing between "authorized" and "issued" shares); Article II (A), § 6, and Article II(C), § 6 (distinguishing between stock "issued or re-issued one or more times" and stating that such stock "may be sold or transferred by the holder thereof").

RESPONSE    ULLICO denies that the references to the parts of the record relied on to support this paragraph demonstrate the truth of all the asserted facts of this paragraph, but states that this dispute is not a material one for the purposes of this motion.

8.    On May 5, 1997, ULLICO's Executive Committee met and considered a presentation made by Credit Suisse First Boston concerning a proposed stock repurchase program. See Minutes of Executive Committee Meeting, May 5, 1997, Defendant's Ex. A.

RESPONSE    ULLICO admits that "[o]n May 5, 1997, ULLICO's Executive Committee met and considered a presentation made by Credit Suisse First Boston concerning a proposed

769915.2

stock repurchase program." ULLICO also denies that the document attached as Casstevens SOMF Exhibit A is an authentic copy of the Minutes of the May 5, 1997 Executive Committee Meeting because that exhibit contains unidentified handwritten notes and annotations, presumably of Casstevens' counsel. *See* Casstevens SOMF Exhibit A at JW 00494. Accordingly, that exhibit to the Casstevens SOMF should be stricken from the record.

9.     In attendance was at least one director who did not own any ULLICO shares (Cullerton).

RESPONSE     ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows: Admitted.

10.     The ULLICO director who attended the May 1997 Executive Committee meeting, and who did not own any ULLICO shares at the time, was "disinterested."

RESPONSE     ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of

showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows: Casstevens does not assert what issue the referenced director allegedly had no interest in, and nothing in the May 1997 Executive Committee Minutes states that the referenced director was generally "disinterested." For these reasons the asserted facts are in good faith controverted.

11.    The repurchase program was created by Credit Suisse First Boston to provide liquidity for the first time for ULLICO shareholders. (Defendant's Exhibit A.)

RESPONSE    ULLICO admits that the content of the May 5, 1997 Executive Committee Minutes is reproduced at Casstevens SOMF Exhibit A at JW 00492-00497, and denies that the description of this paragraph is a complete description, but states that this dispute is not a material one for the purposes of this motion. ULLICO also denies that the document attached as Casstevens SOMF Exhibit A is an authentic copy of the Minutes of the May 5, 1997 Executive Committee Meeting because that exhibit contains unidentified handwritten notes and annotations, presumably of Casstevens' counsel. *See* Casstevens SOMF Exhibit A at JW 00494. Accordingly, that exhibit to the Casstevens SOMF should be stricken from the record.

769915 2

12.    "Following the presentation, there was significant discussion by the Directors. They focused on the calculation of yield and the benefits of this program to both stockholders and the Company." *Id.,* at 3.

RESPONSE    ULLICO admits that the content of the May 5, 1997 Executive Committee

Minutes is reproduced at Casstevens SOMF Exhibit A at JW 00492-00497, and denies that the

description of this paragraph is a complete description, but states that this dispute is not a

material one for the purposes of this motion. ULLICO also denies that the document attached as

Casstevens SOMF Exhibit A is an authentic copy of the Minutes of the May 5, 1997 Executive

Committee Meeting because that exhibit contains unidentified handwritten notes and annotations,

presumably of Casstevens' counsel. *See* Casstevens SOMF Exhibit A at JW 00494. Accordingly,

that exhibit to the Casstevens SOMF should be stricken from the record.

13.    The Credit Suisse spokesman who made the presentation, Bill Egan, responded that "the value added to the corporation in book value as a measure of value was practical, and passing along his measure to the shareholders aligned both the stockholders' interests and the Company's interests." *Id.*

RESPONSE    ULLICO admits that the content of the May 5, 1997 Executive Committee

Minutes is reproduced at Casstevens SOMF Exhibit A JW 00492-497, and denies that the

description of this paragraph is a complete description, but states that this dispute is not a

material one for the purposes of this motion. ULLICO also denies that the document attached as

Casstevens SOMF Exhibit A is an authentic copy of the Minutes of the May 5, 1997 Executive

Committee Meeting because that exhibit contains unidentified handwritten notes and annotations,

presumably of Casstevens' counsel. *See* Casstevens SOMF Exhibit A at JW 00494. Accordingly,

that exhibit to the Casstevens SOMF should be stricken from the record.

14.    Following this discussion, the Executive Committee *unanimously* adopted a series of resolutions authorizing the implementation of ULLICO's first stock repurchase program, "to provide liquidity for up to $180,000,000 of the Class A, Class B and Preferred Certificates over the next 11 years." *Id.,* at 4.

7

RESPONSE    ULLICO admits that the content of the May 5, 1997 Executive Committee

Minutes is reproduced at Casstevens SOMF Exhibit A at JW 00492-497, and denies that the

description of this paragraph is a complete or accurate description and that the referenced parts

of the record are accurately quoted.  ULLICO also denies that the document attached as

Casstevens SOMF Exhibit A is an authentic copy of the Minutes of the May 5, 1997 Executive

Committee Meeting because that exhibit contains unidentified handwritten notes and annotations,

presumably of Casstevens' counsel. *See* Casstevens SOMF Exhibit A at JW 00494.  Accordingly,

that exhibit to the Casstevens SOMF should be stricken from the record.

In particular, the asserted fact that the Executive Committee "adopted a series of

resolutions" concerning stock repurchases is in good faith controverted because the record

indicates that the Executive Committee adopted a single "resolution" with numerous "Further

Resolved" clauses. *See* Casstevens SOMF Exhibit A at JW 00495.

15.    The resolutions provided that, beginning June 1, 1997, ULLICO would offer
to repurchase $30 million worth of such stock, and that "in each of the subsequent years
beginning in 1998 and ending in the year 2007, the Corporation will, solely from its
operating cash flow, make available up to $15,000,000 in cash to, at the stockholders'
request, repurchase stock from holders of Class A, Class B and any remaining Preferred
Certificates." *Id.* They provided that the repurchase program "will be based upon 'Book
Value,'" to be "determined at each repurchase date based on the prior year end audited
financials of ULLICO, Inc.," in accordance with a "Term Sheet" that was attached to the
minutes. *Id.*

RESPONSE    ULLICO admits that the content of the May 5, 1997 Executive Committee

Minutes is reproduced at Casstevens SOMF Exhibit A at JW 00492-497, and denies that the

description of this paragraph is a complete or accurate description and that the referenced parts

of the record are accurately quoted.  ULLICO also denies that the document attached as

Casstevens SOMF Exhibit A is an authentic copy of the Minutes of the May 5, 1997 Executive

Committee Meeting because that exhibit contains unidentified handwritten notes and annotations,

769915.2

presumably of Casstevens' counsel. *See* Casstevens SOMF Exhibit A at JW 00494. Accordingly,

that exhibit to the Casstevens SOMF should be stricken from the record.

In particular, the asserted fact that the Executive Committee adopted "resolutions"

concerning stock repurchases is in good faith controverted because the record indicates that the

Executive Committee adopted a single "resolution" with numerous "Further Resolved" clauses.

*See* Casstevens SOMF Exhibit A at JW 00495.

16.    The resolutions adopted by the Executive Committee at its meeting on May
5, 1997, also provided that the "appropriate officers and employees of the
Corporation" were "authorized, directed and empowered" to execute all documents
necessary to implement the repurchase program. *Id.*

RESPONSE    ULLICO admits that the content of the May 5, 1997 Executive Committee

Minutes is reproduced at Casstevens SOMF Exhibit A at JW 00492-497, and denies that the

description of this paragraph is a complete or accurate description. ULLICO also denies that the

document attached as Casstevens SOMF Exhibit A is an authentic copy of the Minutes of the

May 5, 1997 Executive Committee Meeting because that exhibit contains unidentified handwritten

notes and annotations, presumably of Casstevens' counsel. *See* Casstevens SOMF Exhibit A at JW

00494. Accordingly, that exhibit to the Casstevens SOMF should be stricken from the record.

In particular, the asserted fact that the Executive Committee adopted "resolutions"

concerning stock repurchases is in good faith controverted because the record indicates that the

Executive Committee adopted a single "resolution" with numerous "Further Resolved" clauses.

*See* Casstevens SOMF Exhibit A at JW 00495.

17.    The stock repurchase program adopted by the Executive Committee and the
Board in 1997 were prepared with advice of counsel, as well as accounting
professionals and investment advisers.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the

grounds that Casstevens has failed to include "references to the parts of the record relied on to

769915.2

support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows, ULLICO does not understand what Casstevens means by "were prepared with advice of counsel," but admits that "counsel, as well as accounting professionals and investment advisers" had some involvement with "[t]he stock repurchase program adopted by the Executive Committee and the Board in 1997." This dispute does not appear to be a material one for the purposes of this motion.

18.    Credit Suisse First Boston served as investment advisors and offered their opinion that the program was fair.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

769915.2

admissions on file, together with the affidavits, if any' which it believes demonstrate the absence

of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response

by ULLICO should be required to this paragraph and this paragraph should be stricken by the

Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is

required, ULLICO responds as follows, ULLICO does not understand what Casstevens means by

"Credit Suisse First Boston served as investment advisors," but admits that Credit Suisse First

Boston was retained by ULLICO to act as its "financial advisor" in connection with the 1997

Repurchase Offer.  This dispute does not appear to be a material one for the purposes of this

motion.

ULLICO disputes, however, that Credit Suisse First Boston "offered their opinion that

the program was fair."  There is no evidence in the record that Credit Suisse First Boston offered

any opinion regarding the fairness of the 1997 Repurchase Program, and the available evidence is

that they did not.  *See* Exhibit 47 hereto at USDC 0029926 ("Credit Suisse First Boston would not

have any involvement in assessing the fairness of the exchange, valuing ULLICO or in dealing

with the holders of the common stock or the ULLICO Board of Directors"); Exhibit 48 hereto at

UL 19206 ("In the event the Company makes written request for a fairness opinion from a

financial point of view of the Exchange, the Company agrees to pay an additional $100,000 on

delivery of said opinion to the Board of Directors of the Company.").

19.    ULLICO retained both Arnold & Porter and LeBoeuf Lamb as outside legal counsel,
and Price Waterhouse Coopers as auditors. Each was involved, prior to the adoption of the
program and during its administration at least through 2001, in creating documents, reviewing
information and giving advice about the program.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the

grounds that Casstevens has failed to include "references to the parts of the record relied on to

11

769915.2

support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of

showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P.

56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment

always bears the initial responsibility of informing the district court of the basis for its motion,

and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any' which it believes demonstrate the absence

of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response

by ULLICO should be required to this paragraph and this paragraph should be stricken by the

Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is

required, ULLICO responds as follows:  ULLICO admits that "ULLICO retained both Arnold &

Porter and LeBoeuf Lamb as outside counsel, and Price Waterhouse Coopers as auditors."

ULLICO also admits that "[e]ach was involved, prior to the adoption of the program and during its

administration, at least through 2001, the time at issue in this case, in creating documents, reviewing

information and giving advice about" the annual stock repurchase programs.

20.    All of these professional advisors had direct access to and use of
corporate records, including records of shares owned by Mr. and Mrs. Casstevens,
proxy statements, meeting minutes and the like. All of the relevant meeting minutes,
offering memoranda, correspondence and other materials at issue here were prepared or
reviewed by these professionals.

RESPONSE  ULLICO objects to this paragraph of the Casstevens SOMF on the

grounds that Casstevens has failed to include "references to the parts of the record relied on

to support the statement" as required by LCvR 7(h), and has therefore failed to meet his

burden of showing "that there is no genuine issue as to any material fact" as required by

Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking

summary judgment always bears the initial responsibility of informing the district court of

the basis for its motion, and identifying those portions of 'the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any' which

it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R.

Civ. P. 56(c)).  Accordingly, no response by ULLICO should be required to this paragraph

and this paragraph should be stricken by the Court.

      Without waiving the foregoing objection, to the extent a response to this paragraph

is required, ULLICO responds as follows:  ULLICO disputes that "[a]ll of these professional

advisors had direct access to and use of corporate records, including records of shares owned

by Mr. and Mrs. Casstevens, proxy statements, meeting minutes and the like."  ULLICO does

not understand what what McNulty means by his vague references to "[a]ll of these

professional advisors," "corporate records," "and the like," and is aware of no evidence that

"[a]ll of these professional advisors" (whoever they may be) "had direct access to and use of

corporate records" "and the like" (whatever those terms may include).  ULLICO is likewise

aware of no evidence that that "[a]ll of these professional advisors had direct access to and use

of" "records of shares owned by Mr. and Mrs. Casstevens, proxy statements" and "meeting

minutes."  In fact, the "records of shares owned by Mr. and Mrs. Casstevens, proxy

statements" and "meeting minutes" attached by Casstevens as Exhibits to his SOMF contain

no indication that any, let alone, "[a]ll of these professional advisors had direct access to and

use of" such materials. *See* Casstevens SOMF Exhibit A, C, E, F-1, F-2, G, H, I.

      ULLICO also disputes that "[a]ll of the relevant meeting minutes, offering memoranda,

correspondence and other materials at issue here were prepared or reviewed by these

professionals."  ULLICO does not understand what what Casstevens means by his vague

references to "[a]ll of the relevant meeting minutes, offering memoranda, correspondence and other materials at issue here" or "these professionals," and is aware of no evidence that "[a]ll of the relevant meeting minutes, offering memoranda, correspondence and other materials at issue here" (whatever those materials may be) "were prepared or reviewed by these professionals" (whoever they may be). While ULLICO is willing to admit that all of the "offering memoranda" and certain "correspondence" "were prepared or reviewed by" certain outside counsel or other professionals, most of the "relevant meeting minutes," "correspondence and other materials at issue here" submitted as exhibits to the Casstevens SOMF in fact contain no indication that they were "were prepared or reviewed by these" unidentified "professionals." *See, e.g.*, Casstevens SOMF Exhibit A, C, D, E, F-1, F-2, H, I, J.

21.    None of the professionals described above ever expressed an opinion to anyone, to the best of Mr. Casstevens' knowledge, that any of the resolutions, votes, transactions and other matters described in the Complaint, were unlawful, unreasonable, inappropriate, bad judgment, careless or otherwise violative of any duty owed by Mr. Casstevens as a ULLICO Director. Defendant's Responses to Plaintiff's Interrogatories 3, 4 and 7; Defendant's Ex. B.)

RESPONSE    ULLICO denies that the reference to the parts of the record relied on to support this paragraph demonstrates the truth of all the asserted facts of this paragraph. ULLICO further states that because, by definition, the asserted facts are solely within Casstevens' knowledge, ULLICO is not in a position to dispute them.

22.    On May 6, 1997, ULLICO's Board of Directors met.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P.

14

56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows: Admitted.

23.    In attendance were at least 3 ULLICO directors who did not own any ULLICO shares (Bahr, Cullerton, Sombrotto).

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows: Admitted.

15

769915.2

24.    The ULLICO directors who attended the May 1997 Board meeting, and who did not own any ULLICO shares at the time, were "disinterested." See Minutes of Board of Directors Meeting, May 6, 1997, Defendant's Ex. C.

RESPONSE    ULLICO denies that the reference to the part of the record relied on to support this paragraph demonstrates the truth of all the asserted facts of this paragraph. ULLICO also denies that the document attached as Casstevens SOMF Exhibit C is an authentic copy of the Minutes of the May 6, 1997 Board of Directors Meeting because that exhibit contains unidentified handwritten notes and annotations, presumably of Casstevens' counsel. *See* Casstevens SOMF Exhibit C at JW 00313, 315. Accordingly, that exhibit to the Casstevens SOMF should be stricken from the record.

Casstevens does not assert what issue the referenced directors allegedly had no interest in, and nothing in the May 6, 1997 Board Minutes states that the referenced directors were generally "disinterested." For these reasons the asserted facts are in good faith controverted.

25.    At the May 1997 meeting, ULLICO's Board of Directors voted, first, to eliminate the category of Treasury Stock, reflecting a change in Maryland law. This change, the minutes report, "would allow the Corporation to make repurchased stock available for purchase, but it would not be listed in the Company's financials as Treasury Stock." *Id.,* at 1-2

RESPONSE    ULLICO admits that the content of pages 1-2 of the May 6, 1997 Board Minutes are reproduced at Casstevens SOMF Exhibit C, and denies that the description of this paragraph is a complete description, but states that this dispute is not a material one for the purposes of this motion. ULLICO also denies that the document attached as Casstevens SOMF Exhibit C is an authentic copy of the Minutes of the May 6, 1997 Board of Directors Meeting because that exhibit contains unidentified handwritten notes and annotations, presumably of Casstevens' counsel. *See* Casstevens SOMF Exhibit C at JW 00313, 315. Accordingly, that exhibit to the Casstevens SOMF should be stricken from the record.

26.    The Board of Directors also resolved:

16

> That the Chairman of the Corporation is hereby authorized,
> directed and empowered, at his sole discretion to
> offer shares of the Corporation's stock that have been
> repurchased and returned to the status of authorized,
> but unissued shares, to authorized investors as specified in the
> Corporation's Charter and By-Laws. Id., at 2.

RESPONSE   ULLICO admits that the content of page 2 of the May 6, 1997 Board

Minutes is reproduced at Casstevens SOMF Exhibit C, and denies that the description of this

paragraph is a complete description and that the referenced parts of the record are accurately

quoted, but states that this dispute is not a material one for the purposes of this motion. ULLICO

also denies that the document attached as Casstevens SOMF Exhibit C is an authentic copy of

the Minutes of the May 6, 1997 Board of Directors Meeting because that exhibit contains

unidentified handwritten notes and annotations, presumably of Casstevens' counsel. *See* Casstevens

SOMF Exhibit C at JW 00313, 315. Accordingly, that exhibit to the Casstevens SOMF should be

stricken from the record.

27.    At the May 1997 meeting, the full Board heard a presentation from Bill
Egan, the representative of Credit Suisse First Boston from whom the Executive
Committee had heard the previous day. *Id.,* at 4. The Board heard that the Executive
Committee had approved the repurchase program described above, and following
discussions by the Directors, the Board approved the program. (Plaintiff's Complaint, ¶10.)

RESPONSE   ULLICO admits that the content of page 4 of the May 6, 1997 Board

Minutes is reproduced at Casstevens SOMF Exhibit C, and denies that the description of this

paragraph is a complete description, but states that this dispute is not a material one for the

purposes of this motion. ULLICO also denies that the document attached as Casstevens SOMF

Exhibit C is an authentic copy of the Minutes of the May 6, 1997 Board of Directors Meeting

because that exhibit contains unidentified handwritten notes and annotations, presumably of

Casstevens' counsel. *See* Casstevens SOMF Exhibit C at JW 00313, 315. Accordingly, that

exhibit to the Casstevens SOMF should be stricken from the record. ULLICO disputes that "the

769915.2

Board approved the program." The minutes of the May 6, 1997 Board of Directors meeting do not

indicate that the Board, as opposed to the Executive Committee, "approved the program" at issue.

*See* Casstevens SOMF Exhibit C at JW 00315.

28.    On June 15, 1997, along with all other ULLICO Capital Stock owners, Mr. and
Mrs. Casstevens were informed that ULLICO had adopted a "repurchase program" pursuant to
which Class A and other such shares would be eligible for repurchase of their shares by
ULLICO, from ULLICO's substantial amount of cash on hand (resulting from ULLICO's
gradual sale of stock that it owned in Global Crossings), at $27.06 per share. This amount
was for the first time based upon GAAP accounting and represented the book value per
share as of the prior year-end, December 31, 1996. The June 15 letter stated that this "very
fundamental change" was adopted by ULLICO to "provide to [its] shareholders both value
on their investment and liquidity," and to "further align the Corporation's interest with our
Stockholders' interest." See Letter of Robert A. Georgine dated June 15, 1997, Defendant's Ex. D.

    RESPONSE    ULLICO admits that the content of the June 15, 1997 letter from Robert

A. Georgine to Billy J. Casstevens is reproduced at Casstevens SOMF Exhibit D, and denies that

the description of this paragraph is a complete or accurate description and that the referenced

parts of the record are accurately quoted.

29.    The program described in the June 15 letter provided for a "formal offer" by
ULLICO "to repurchase up to $30 million worth of Class A Stock" that would *not* involve
Capital Stock. However, the letter stated that "Capital Stockholders will be treated as they
have been in the past with liquidity provided whenever possible by the Corporation, in
accordance with sound corporate practice, based on a request for repurchase from a holder
of Capital Stock." *Id.*

    RESPONSE    ULLICO admits that the content of the June 15, 1997 letter from Robert

A. Georgine to Billy J. Casstevens is reproduced at Casstevens SOMF Exhibit D, and denies that

the description of this paragraph is a complete description, but states that this dispute is not a

material one for the purposes of this motion.

30.    On November 10, 1997, ULLICO sent a formal offer, to each of its
shareholders, for the purchase of up to 1,108,647 shares of its Class A and Class B
common stock, at the "Book Value" of ULLICO's shares as of December 31, 1996, that is
$27.06 per share.

769915 2

ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that

Casstevens has failed to include "references to the parts of the record relied on to support the

statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing

"that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see*

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears

the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue

of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response by ULLICO should

be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is

required, ULLICO responds as follows:  ULLICO denies that the description of this paragraph is

a complete description, but states that this dispute is not a material one for the purposes of this

motion.

31.    The Term Sheet (Defendant's Ex. E) provided, among other things, that
"Although the [current] offer would not be made for Capital Stock, the Company intends in the
future to offer the greater of book value or $25 per share to repurchase Capital Stock when
exercising its right of first refusal upon the death of a shareholder." It provided, in addition
that, "In the event a holder of Capital Stock gives notice of a desire to transfer such shares, the
Company intends to offer to repurchase the shares at book value." This latter provision was
not restricted either in time or to circumstances of a shareholders' death, when adopted by
the Executive Committee which was authorized to act between meetings of the Board,
thereby authorized the Company to purchase *any* shareholder's Capital Stock at "Book
Value."

RESPONSE  ULLICO admits that the terms of the referenced Term Sheet discussed in

the first two sentences of this paragraph are reproduced at Casstevens SOMF Exhibit E, and

denies that the description of this paragraph is a complete description, but states that this dispute

is not a material one for the purposes of this motion.  ULLICO also denies that the document

19

attached as Casstevens SOMF Exhibit E is an authentic copy of the 1997 Term Sheet because that exhibit contains unidentified handwritten notes and annotations, presumably of Casstevens' counsel. *See* Casstevens SOMF Exhibit E. Accordingly, that exhibit to the Casstevens SOMF should be stricken from the record.

ULLICO objects to the third sentence of this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support such statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response by ULLICO should be required to the third sentence of this paragraph.

Without waiving the foregoing objection, to the extent a response to the third sentence of this paragraph is required, ULLICO responds as follows: The asserted fact that "[t]his latter provision, not restricted either in time or to circumstances of a shareholders' death, when adopted by the Executive Committee, which was authorized to act between meetings of the Board, authorized the Company to purchase *any* shareholder's Capital Stock at 'Book Value'" is in good faith controverted. As an initial matter, this assertion by Casstevens is not a "fact" at all, but rather an argument about the meaning of the Term Sheet. It therefore cannot constitute a fact on which the Court may rely in ruling on summary judgment.

Moreover, Casstevens' argument is incorrect. The pertinent language of the Term Sheet

provides:

> Although the offer would not be made for Capital Stock, the
> Company intends in the future to offer the greater of book value or
> $25 per share to repurchase Capital Stock when exercising its right
> of first refusal upon the death of a shareholder.  In the event a
> holder of Capital Stock gives notice of a desire to transfer such
> shares, the Company intends to offer to repurchase the shares at
> book value.

Casstevens SOMF Exhibit E.  Contrary to Casstevens' contention, a close examination of the

second sentence reveals that it is, in fact, restricted "to circumstances of a shareholder's death."

This is the case because the second sentence's reference to "such shares" refers back to the

circumstances discussed in the first sentence, *i.e.*, "the death of a shareholder."  This is

demonstrated by the fact that, while the first sentece refers to Capitol Stock held by a

"shareholder," the second sentence refers to "a holder of Capital Stock."  Logically, this

differentiation can only refer to the circumstance referenced in the first sentence, *i.e.* when the

custodial "holder" of Capital Stock "gives notice of a desire to transfer such shares" "upon the

death of a shareholder."

    32.    Mr. and Mrs. Casstevens did not tender any shares in response to this offer.

    <u>RESPONSE</u>  ULLICO objects to this paragraph of the Casstevens SOMF on the grounds

that Casstevens has failed to include "references to the parts of the record relied on to support the

statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing

"that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see*

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears

the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue

of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response by ULLICO should

be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is

required, ULLICO responds as follows:  Admitted.

33.    On May 4, 1998, ULLICO's Executive Committee met and considered the
extension of the stock repurchase program adopted the preceding year. *See* Minutes of Executive
Committee Meeting, May 4, 1998, Defendant's Ex. F-1.

RESPONSE   ULLICO admits that the content of the May 4, 1998 Executive Committee

Minutes is reproduced at Casstevens SOMF Exhibit F-1, and denies that the description of this

paragraph is a complete description, but states that this dispute is not a material one for the

purposes of this motion.

34.    In attendance at the meeting was at least one ULLICO director who did not
own any ULLICO shares (Cullerton).

RESPONSE   ULLICO objects to this paragraph of the Casstevens SOMF on the grounds

that Casstevens has failed to include "references to the parts of the record relied on to support the

statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing

"that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see*

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears

the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue

of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response by ULLICO should

be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is

required, ULLICO responds as follows: Admitted.

769915 2

35.     The ULLICO director who attended the May 1998 Executive Committee meeting, and who did not own any ULLICO shares at the time, was "disinterested."

RESPONSE   ULLICO objects to this paragraph of the Casstevens SOMF on the grounds

that Casstevens has failed to include "references to the parts of the record relied on to support the

statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing

"that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see*

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears

the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue

of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response by ULLICO should

be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is

required, ULLICO responds as follows:  Casstevens does not assert what issue the referenced

director allegedly had no interest in, and nothing in the May 4, 1998 Executive Committee

Minutes states that the referenced director was generally "disinterested."  For these reasons the

asserted facts are in good faith controverted.

36.     At the May 1998 meeting, "Management proposed to initiate the repurchase offer during the fourth quarter of the year. The repurchases would be made at the stock's book value, which at December 31, 1997, was established at $28.70 per share. In the event of an over subscription, the calculations would be pro rated." *Id.*

RESPONSE   ULLICO admits that the content of the May 4, 1998 Executive Committee

Minutes is reproduced at Casstevens SOMF Exhibit F-1, and denies that the description of this

paragraph is a complete description, but states that this dispute is not a material one for the

purposes of this motion.

23

37.    At the May 1998 meeting, the Executive Committee approved resolutions, similar to the ones adopted in 1997, providing authority for the repurchase of up to $15 million of ULLICO shares, at "Book Value," as of December 31, 1997, established at $28.70 per share. *Id.;* Plaintiff's Complaint, ¶13.

RESPONSE    ULLICO admits that the content of the May 4, 1998 Executive Committee

Minutes is reproduced at Casstevens SOMF Exhibit F-1, and denies that the description of this

paragraph is a complete or accurate description.  In particular, the asserted fact that the Executive

Committee approved "resolutions" concerning stock repurchases is in good faith controverted

because the record indicates that the Executive Committee adopted a single "resolution" with

numerous "Further Resolved" clauses. *See* Casstevens SOMF Exhibit F-1 at JW 00328.  The

asserted fact that "the Executive Committee approved" a resolution, "similar to the one[] adopted

in 1997" is also in good faith controverted because *inter alia*, the record indicates that (a) the

1997 repurchase program was for up to $30 million of ULLICO stock while the 1998 repurchase

program was for up to $15 million of ULLICO stock, and (b) the 1997 repurchase program had a

proration threshold of only 10 shares, while the 1998 repurchase program had a proration

threshold of 10,000 shares. *Compare* Casstevens SOMF Exhibit E at JK 013812 *with* Exhibit 49

hereto at USDC 0018834.

38.    On May 5, 1998, ULLICO's Board met.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds

that Casstevens has failed to include "references to the parts of the record relied on to support the

statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing

"that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see*

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears

the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

769915.2

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows: Admitted.

39.    In attendance at the May 1998 Board meeting were at least 3 ULLICO directors who did not own any ULLICO shares (Bahr, Cullerton, Sombrotto).

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows: Admitted.

40.    The three Board members who attended the May 1998 Board meeting, and who did not at the time own any ULLICO shares, were "disinterested." See Minutes of Board of Directors Meeting, May 5, 1998, Defendant's Ex. F-2.

RESPONSE    ULLICO denies that the reference to the part of the record relied on to support this paragraph demonstrates the truth of all the asserted facts of this paragraph. Casstevens does not assert what issue the referenced directors allegedly had no interest in, and

nothing in the May 5, 1998 Board Minutes states that the referenced directors were generally

"disinterested." For these reasons the asserted facts are in good faith controverted.

41.    At its May 1998 meeting, ULLICO's Board voted to declare a small cash dividend, as contemplated by the 1997 stock repurchase plan that was continued in 1998, after receiving information that ULLICO's "Book Value" had increased to $28.70 per share as of December 31, 1997. *Id.*

RESPONSE   ULLICO admits that the content of the May 5, 1998 Board Minutes is

reproduced at Casstevens SOMF Exhibit F-2, and denies that the description of this paragraph is

a complete description, but states that this dispute is not a material one for the purposes of this

motion.

42.    On or about July 29, 1998, Mr. Casstevens, among others, was offered the opportunity to purchase up to 2,000 shares of ULLICO's stock at $28.70 per share. The offer was made in a letter, bearing that date, that acknowledged that "management and the board of directors should have their interests in line with the stockholders, and good common sense tells us that this is a good idea. If the stockholders, the true owners of the corporation, do well," the letter continued, "then the officers and directors should also do well. And the officers and directors in conducting their everyday business should have the interests of the stockholders foremost in their minds." (Plaintiff's Exhibit 12.)

RESPONSE ULLICO denies that the description of this paragraph is a complete

description, but states that this dispute is not a material one for the purposes of this motion.

43.    The July 29, 1998 letter to shareholders continued:

One aspect of that at ULLICO has been a continuing program to make our stock available to officers and directors. For many years we did this on a regular basis. Since the early 1990s and the offering of Preferred Certificates, this program has not been as active. Now that we have raised capital, converted those certificates into Class A stock and as you know last year having retired stock so that *we have a pool of stock available for resale,* we would like to renew that opportunity to each member of the Board.

RESPONSE    ULLICO denies that the description of this paragraph is a complete or

accurate description. In particular, the asserted fact that "[t]he July 29, 1998 letter" was "to

shareholders" is in good faith controverted because the record indicates that the 1998 offers to

purchase stock were made only to officers and directors of ULLICO.

769915.2

44.     As a result of the Board's earlier resolutions, the shares offered by that letter of July 29, 1998 were *not* Treasury Shares. The shares offered to Mr. Casstevens in July 1998 were not "issued" by ULLICO. Rather, they were bought from some shareholders and re-sold to other shareholders, such as Mr. and Mrs. Casstevens.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the

grounds that Casstevens has failed to include "references to the parts of the record relied on to

support such statement" as required by LCvR (h), and has therefore failed to meet his burden of

showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P.

56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment

always bears the initial responsibility of informing the district court of the basis for its motion,

and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any' which it believes demonstrate the absence

of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response

by ULLICO should be required to this paragraph and this paragraph should be stricken by the

Court.


Without waiving the foregoing objection, to the extent a response to this paragraph is

required, ULLICO responds as follows: ULLICO admits that "The shares offered by that letter of

July 29, 1998 were not Treasury Shares." ULLICO further admits that "[t]he shares offered to Mr.

Casstevens in July 1998 were not 'issued' by ULLICO." The asserted fact that "they [r]ather,

were simply bought from some shareholders and re-sold to other shareholders, such as Mr. and

Mrs. Casstevens" is in good faith controverted because there is no evidence in the record that

"[t]he shares offered to Mr. Casstevens in July 1998" were "bought from some shareholders and

re-sold to other shareholders," and the record indicates that in fact "[s]hares of stock repurchased

by the Corporation" after May 6, 1997 were required to "be returned to the status of authorized,

but unissued shares." Casstevens SOMF Exhibit C at JW 00313.

45.     The offer made to Mr. Casstevens in July 1998 by ULLICO's Chairman, Mr. Georgine, was based upon previous resolutions authorizing Mr. Georgine to sell stock in ULLICO's possession. (Defendant's Ex. J.)

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the

grounds that Casstevens has failed to include "references to the parts of the record relied on to

support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of

showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P.

56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment

always bears the initial responsibility of informing the district court of the basis for its motion,

and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any' which it believes demonstrate the absence

of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response

by ULLICO should be required to this paragraph and this paragraph should be stricken by the

Court.

Without waiving the foregoing objection, to the extent a response to the third sentence of

this paragraph is required, ULLICO responds as follows, the asserted fact that "[t]he offer made

to Mr. Casstevens in July 1998 by ULLICO's Chairman, Mr. Georgine, was based upon previous

resolutions authorizing Mr. Georgine to sell stock in ULLICO's possession" is in good faith

controverted because the record contains no evidence supporting that asserted fact, but instead

indicates that "[t]he offer made to Mr. Casstevens in July 1998 by ULLICO's Chairman,

Mr. Georgine, was" "authorized" by ULLICO's "Compensation Committee." *See* ULLICO

SOMF Exhibit 12 at U-MIA 016215. ("The Compensation Committee has authorized us to

769915 2

make available 2,000 shares of stock to each member of the Board of Directors of ULLICO Inc.

and each of the officers of ULLICO Inc."). *See also* ULLICO SOMF Exhibit 11 at U 00325

("The [Compensation] Committee did decide to authorize the offer of 2,000 shares of Class A

stock of ULLICO Inc. to each Director and Officer of that company and instructed the Chairman

to make that available at the earliest opportunity.").

46.    Mr. Casstevens did not believe, at the time that he purchased shares from
ULLICO in July 1998 that the stock was a form of compensation, since he and his wife were
buying the stock for value. Defendant's Responses to Plaintiff's Interrogatory 17, Ex. B.

RESPONSE    ULLICO denies that the reference to the part of the record relied on to

support this paragraph demonstrates the truth of all the asserted facts of this paragraph.

47.    Another offer to sell up to an additional 2000 Class A shares to Mr.
Casstevens was made on October 13, 1998. (Plaintiff's Exhibit 13.)

RESPONSE    ULLICO denies that the description of this paragraph is a complete

description, but states that this dispute is not a material one for the purposes of this motion.

48.    On April 16, 1999, prior to the annual ULLICO Board and Shareholder's
meetings, a Notice was sent to *all* ULLICO shareholders inviting them to attend the 1999
annual meeting, scheduled for May 18, 1999. See Notice of 1999 Annual ULLICO
Shareholders' Meeting, Defendant's Ex. G.

RESPONSE    Admitted.

49.    The notice of the 1999 annual meeting provided each shareholder with
information concerning, among other things, the number of shares owned by each of the
ULLICO directors, including Mr. Casstevens.

RESPONSE    Admitted.

50.    On May 17, 1999, ULLICO's Executive Committee met and considered the
extension of the stock repurchase program adopted in 1997. See Minutes of Executive
Committee Meeting, May 17, 1999, Defendant's Ex. H.

RESPONSE    ULLICO admits that the content of the May 17, 1999 Executive Committee

Minutes is reproduced at Casstevens SOMF Exhibit H, and denies that the description of this

paragraph is a complete description, but states that this dispute is not a material one for the purposes of this motion.

51.    In attendance at the May 1999 Executive Committee meeting were at least two ULLICO directors who did not own any ULLICO shares (Cullerton, McCarron).

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows: the asserted facts that "[i]n attendance at the May 1999 Executive Committee meeting were at least two ULLICO directors who did not own any ULLICO shares," and that those two directors were Messrs. "Cullerton" and "McCarron" are in good faith controverted because the record indicates that Messrs. Cullerton and McCarron each owned 2000 shares of ULLICO stock in May 1999, and that there were in fact no ULLICO directors present at the May 17, 1999 Executive Committee meeting who did not own ULLICO stock. *Compare* Casstevens SOMF Exhibit H at JW 00350 *with* Casstevens SOMF Exhibit G at 2-3.

30

52.   The ULLICO directors who attended the May 1999 Executive Committee meeting, and who did not own any ULLICO shares at the time, were "disinterested."

RESPONSE   ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows: the asserted fact that there were "ULLICO directors who attended the May 1999 Executive Committee meeting, and who did not own any ULLICO shares at the time" is in good faith controverted because the record indicates that all of the "ULLICO directors who attended the May 1999 Executive Committee meeting" did, in fact, own "ULLICO shares at the time." *Compare* Casstevens SOMF Exhibit H at JW 00350 *with* Casstevens SOMF Exhibit G at 2-3.  Additionally, Casstevens does not assert what issue the referenced directors allegedly had no interest in and nothing in the May 1999 Executive Committee Minutes states that the referenced director was generally "disinterested."  For these reasons the asserted facts are in good faith controverted.

53.   At its May 1999 meeting, the Executive Committee once again approved resolutions, similar to the ones adopted in 1997, providing authority for the repurchase of up

31

to $15 million of ULLICO shares, at "Book Value," as of December 31, 1998, this time established at $53.94 per share. *Id.*

RESPONSE   ULLICO admits that the content of the May 17, 1999 Executive Committee

Minutes is reproduced at Casstevens SOMF Exhibit H, and denies that the description of this

paragraph is a complete or accurate description.  In particular, the asserted fact that the Executive

Committee approved "resolutions" concerning stock repurchases is in good faith controverted

because the record indicates that the Executive Committee adopted a single "resolution" with

numerous "Further Resolved" clauses. *See* Casstevens SOMF Exhibit H at JW 00351.  The

asserted fact that "the Executive Committee once again approved" a resolution "similar to the

one[] adopted in 1997" is also in good faith controverted because, *inter alia*, the record indicates

that (a) the 1997 repurchase program was for up to $30 million of ULLICO stock while the 1999

repurchase program was for up to $15 million of ULLICO stock, and (b) the 1997 repurchase

program had a proration threshold of only 10 shares, while the 1999 repurchase program had a

proration threshold of 10,000 shares. *Compare* Casstevens SOMF Exhibit E *with* Exhibit 50

hereto at USDC 0018837.

54.    ULLICO's Board met the following day, May 18, 1999. See Minutes of Board of Directors Meeting, May 18, 1999, Defendant's Ex. I.

RESPONSE   Admitted.

55.    Among other things, at its May 1999 meeting, the Board heard and considered a presentation made by Credit Suisse First Boston concerning ULLICO's ongoing stock repurchase program, as well as a report by ULLICO's chairman about the program. *Id.* The Board also heard that the Executive Committee had voted the previous day to extend the repurchase program based upon a "book value" at year-end (December 31, 1998) of $53.94 per share, "based primarily on unrealized gains from Global Crossings." *Id.*

RESPONSE   ULLICO admits that the content of the May 18, 1999 Board Minutes is

reproduced at Casstevens SOMF Exhibit I, and denies that the description of this paragraph is a

complete description, but states that this dispute is not a material one for the purposes of this

769915 2

motion. ULLICO also denies that the document attached as Casstevens SOMF Exhibit I is an

authentic copy of the Minutes of the May 18, 1999 Board of Directors Meeting because that

exhibit contains unidentified handwritten notes and annotations, presumably of Casstevens' counsel.

*See* Casstevens SOMF Exhibit I at JW 00353. Accordingly, that exhibit to the Casstevens SOMF

should be stricken from the record.

56.     On July 8, 1999, along with all other ULLICO shareholders, Mr.
Casstevens was informed that ULLICO had adopted a "repurchase program" pursuant to
which up to $15 million of Class A and other such non-Capital shares would be eligible
for repurchase by ULLICO at the rate of $53.94 per share, representing the GAAP "book
value" of each ULLICO share as of December 31, 1998. See Letter from Robert Georgine
dated July 8, 1999, (Defendant's Ex. J.)

RESPONSE     ULLICO admits that the content of the July 8, 1999 letter from Robert

Georgine to Billy J. Casstevens is reproduced at Casstevens SOMF Exhibit J, and denies that the

description of this paragraph is a complete and accurate description. In particular, the asserted

facts that the letter informed Casstevens and others that "Class A and other such non-Capital

shares would be eligible for repurchase" and that "book value" was associated with "GAAP" are

in good faith controverted because the letter makes no mention of which classes of stock would

be eligible for repurchase or "GAAP." *See* Casstevens SOMF Exhibit J.

57.     Mr. and Mrs. Casstevens did not accept the offer and chose, instead, to retain
their ULLICO Class A shares.

RESPONSE     ULLICO objects to this paragraph of the Casstevens SOMF on the grounds

that Casstevens has failed to include "references to the parts of the record relied on to support the

statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing

"that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see*

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears

the initial responsibility of informing the district court of the basis for its motion, and identifying

769915.2

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue

of material fact") (quoting Fed. R. Civ. P. 56(c)).

Without waiving the foregoing objection, to the extent a response to this paragraph is

required, ULLICO responds as follows: Admitted.

58.    On December 17, 1999, Mr. Casstevens was sent another letter, similar to the July 29,
1998 letter described above, offering the right to purchase up to 4,000 shares of ULLICO
Class A stock at $53.94 per share. See Plaintiff's Ex. 16.

RESPONSE    ULLICO denies that the description of this paragraph is a complete

description, but states that this dispute is not a material one for the purposes of this motion.

59.    Mr. and Mrs. Casstevens accepted the offer and purchased 4,000 shares for
$53.94 per share from their own funds. (Defendant's Responses to Plaintiff's Interrogatory
No. 17, Ex. B.)

RESPONSE    ULLICO denies that the reference to the part of the record relied on to

support this paragraph demonstrates the truth of all the asserted facts of this paragraph, but states

that this dispute is not a material one for the purposes of this motion.

60.    On November 16, 1999, ULLICO's shareholders were sent copies of a
formal offer by ULLICO to purchase shares of ULLICO Class A and B stock at $53.94 per
share. See Offer to Purchase, Defendant's Ex. K.

RESPONSE    ULLICO admits that the first page of the November 16, 1999 Offer to

Purchase for Cash is reproduced at Casstevens SOMF Exhibit K, and denies that the description

of this paragraph is a complete description, but states that this dispute is not a material one for

the purposes of this motion.

61.    The offer required that an accepting shareholder tender its shares by
December 17, 1999.

769915.2

RESPONSE   ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)).

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows:  Admitted.

62.     Mr. and Mrs. Casstevens did not tender any shares for sale in response to that offer by ULLICO to purchase shares.

RESPONSE   ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows: Admitted.

63.    The "1998 and 1999 Stock Purchase Programs" (as defined in the Complaint) were not "interested director transactions."

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows: the asserted fact that "[t]he '1998 and 1999 Stock Purchase Programs' (as defined in the Complaint) were not 'interested director transactions'" is in good faith controverted because the record indicates that, insofar as those programs pertain to Casstevens, they involved three purchases of ULLICO stock by Casstevens from ULLICO during the time he was a director of ULLICO. *Compare* ULLICO SOMF Exhibit 4 at U-MIA 016189 (indicating that Casstevens purchased ULLICO stock from ULLICO on September 15, 1998, November 2, 1998 and December 29, 1999) *with* Answer ¶4 (admitting that Casstevens was a director of ULLICO from 1997 until 2003). Since these three transactions were between

36

a corporation and one of its directors, they are, by definition "interested director transactions."

64.    The prices for repurchase of stock adopted by the Board at its 1998 and 1999 meetings, as described above, were fair and reasonable.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.  ULLICO further objects to this paragraph on the grounds that it is vague and ambiguous in that it does not indicate to whom or for what purposes "[t]he prices for repurchase of stock adopted by the Board at its 1998 and 1999 meetings" were assertedly "fair and reasonable."

Without waiving the foregoing objections, to the extent a response to this paragraph is required, ULLICO responds as follows:  ULLICO admits that "[t]he prices for repurchase of stock adopted by the Board at its 1998 and 1999 meetings, as described above, were fair and reasonable" to ULLICO for purchases by ULLICO of ULLICO stock but not for sales of ULLICO stock by ULLICO.

65.    Mr. and Mrs. Casstevens purchased Class A stock from ULLICO at the same price paid by all others who were offered such shares.

769915.2

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the

grounds that Casstevens has failed to include "references to the parts of the record relied on to

support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of

showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P.

56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment

always bears the initial responsibility of informing the district court of the basis for its motion,

and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any' which it believes demonstrate the absence

of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response

by ULLICO should be required to this paragraph and this paragraph should be stricken by the

Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is

required, ULLICO responds as follows:  ULLICO admits that "Casstevens purchased Class A

stock from ULLICO at the same price paid by all others who were offered such shares," and notes

that only corporate insiders such as Casstevens were allowed to purchase Class A Stock from

ULLICO at such bargain prices. *See* ULLICO SOMF ¶¶ 14-15, 18, 20, 23-24.

66.    On April 11, 2000, prior to the annual ULLICO Board and Shareholder's
meetings, a Notice was sent to all ULLICO shareholders inviting them to attend the 2000
annual meeting scheduled for May 11, 2000. See Notice of 2000 Annual ULLICO
Shareholders' Meeting, Plaintiff's Ex. 26.

RESPONSE    Admitted.

67.    The notice provided each shareholder with information concerning, among other
things, the number of shares owned by each of the ULLICO directors including Mr. Casstevens.

RESPONSE    Admitted.

769915 2

68.     Among the shareholders to whom the Notice of the 2000 Annual ULLICO meeting was sent was the Laborers' International Union (LIUNA) which at the time owned approximately 9% of all ULLICO's issued shares.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds

that Casstevens has failed to include "references to the parts of the record relied on to support the

statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing

"that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see*

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears

the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue

of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response by ULLICO should

be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is

required, ULLICO responds as follows:  ULLICO admits that "[a]mong the shareholders to

whom the Notice of the 2000 Annual ULLICO meeting was sent was the Laborers'

International Union (LIUNA)."  ULLICO notes, however, that LIUNA's copy of "the

Notice of the 2000 Annual ULLICO meeting" was not sent to LIUNA's headquarters in

Washington, DC, but to a bank in Texas.  *See* Exhibit 34 hereto at USDC 187603.  The

asserted fact that LIUNA "at the time owned approximately 9% of all ULLICO's issued shares" is

in good faith controverted because there is no evidence in the record to support that assertion,

and the record indicates that during the relevant time period LIUNA itself held only 2,228.3

shares of Capital Stock representing 0.027% of ULLICO's outstanding shares.  Exhibit 51 hereto

at UL 20696. ULLICO notes, however, that two pension fund associated with LIUNA, namely

769915.2

"LIUNA Local Union & District Council Pension Fund" and "LIUNA National ('Industrial')

Union Pension Fund" were major ULLICO shareholders who each held Class A stock

representing 4.701% of ULLICO's outstanding shares. *Id.*

69.    At the time the Notice of the 2000 Annual ULLICO meeting was sent to the Laborers'
International Union (LIUNA), its General President was Terrence O'Sullivan. See Notice of
2000 Annual ULLICO Shareholders' Meeting, at 3, Plaintiff's Ex. 26.

RESPONSE    ULLICO denies that the references to the parts of the record relied on to

support this paragraph demonstrate the truth of all the asserted facts of this paragraph.  ULLICO

admits that "[a]t the time the Notice of the 2000 Annual ULLICO meeting was sent to the Laborers'

International Union (LIUNA), its General President was Terrence O'Sullivan."  ULLICO

notes, however, that LIUNA's copy of "the Notice of the 2000 Annual ULLICO meeting"

was not sent to LIUNA's headquarters in Washington, DC where Mr. O'Sullivan had his

office, but to a bank in Texas. *See* Exhibit 34 hereto at USDC 187603.

70.    The Notice of the 2000 annual meeting specifically named Mr. O'Sullivan as a
nominee for election as a ULLICO Director, for a term to expire in 2003, and it
specifically disclosed that he did not personally own any ULLICO shares. *Id.*

RESPONSE    Admitted.

71.    Mr. O'Sullivan knew that he would be nominated as a ULLICO Director at the
May 2000 meeting.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds

that Casstevens has failed to include "references to the parts of the record relied on to support the

statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing

"that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see*

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears

the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

769915 2