together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows: Admitted.

72.    Mr. O'Sullivan knew that a Notice of the meeting would be sent to ULLICO's shareholders, announcing his nomination and his ULLICO share ownership.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows: The asserted fact that "Mr. O'Sullivan knew that a Notice of the meeting would be sent to ULLICO's shareholders, announcing his nomination and his ULLICO share ownership" is in good faith controverted because there is no evidence in the record to support that assertion.

73.    Mr. O'Sullivan received and had the opportunity to know the entire contents of the Notice of ULLICO's 2000 Annual Shareholders' Meeting, including the

769915.2

disclosures made about him and the other ULLICO Directors, especially the disclosures about the personal ownership of ULLICO stock by the other directors named in the Notice.

RESPONSE  ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows:  The asserted fact that "Mr. O'Sullivan received and had the opportunity to know the entire contents of the Notice of ULLICO's 2000 Annual Shareholders' Meeting, including the disclosures made about him and the other ULLICO Directors, especially the disclosures about the personal ownership of ULLICO stock by the other directors named in the Notice" is in good faith controverted because there is no evidence in the record to support that assertion.  The record indicates that Mr. O'Sullivan was not himself a ULLICO shareholder, ULLICO SOMF Exhibit 27 ¶ 7, and therefore would not have personally received a copy of "the Notice of ULLICO's 2000 Annual shareholders' meeting."  Although he was General President of LIUNA, LIUNA's copy of "the Notice of ULLICO's 2000 Annual shareholders' meeting," was not sent to LIUNA's headquarters in Washington, DC where Mr. O'Sullivan had his office, but to a bank in Texas.  *See* Exhibit 34 hereto at USDC 187603.  And although

42

one of the LIUNA pension fund's copies of "the Notice of ULLICO's 2000 Annual shareholders'

meeting" was apparently mailed to LIUNA's headquarters in Washington, DC, it was not

addressed to Mr. O'Sullivan, Exhibit 33 hereto at USDC 187604, and there is no evidence

in the record that he had any opportunity to review it prior to the relevant November 3,

2000 meeting.

74.    On May 10, 2000, ULLICO's Executive Committee met again and
considered the extension of the stock repurchase program adopted in 1997. See Minutes of
Executive Committee Meeting, May 10, 2000, Plaintiff's Ex. 17.

RESPONSE    ULLICO denies that the description of this paragraph is a complete

description, but states that this dispute is not a material one for the purposes of this motion.

75.    At the May 2000 meeting, the Executive Committee heard of the
substantial after tax profits that had been realized by ULLICO from the sale of Global
Crossings stock, as well as the substantial increase in shareholders' equity that resulted from
ULLICO's continued ownership of Global Crossings shares. Id.

RESPONSE    ULLICO denies that the description of this paragraph is a complete and

accurate description. ULLICO admits that "[a]t the May 2000 meeting, the Executive Committee

heard of" "the substantial increase in shareholders' equity that resulted from ULLICO continued

ownership of Global Crossings shares." However, the asserted fact that "[a]t the May 2000

meeting, the Executive Committee heard of" "the substantial realized, after tax profits that had

been realized by ULLICO from the sale of Global Crossings stock" is in good faith controverted

because the May 10, 2000 Executive Committee Minutes do not contain any indication that that

subject was discussed at the May 10, 2000 Executive Committee Meeting. *See* ULLICO SOMF

Exhibit 17.

76.    At its May 2000 meeting, the Executive Committee was told that, at year end,
December 31, 1999, Global Crossings shares traded at $50 per share and that, at the time of the
meeting, those shares were traded at $33 per share, resulting in a 33% decline in ULLICO's total
stockholders' equity since that time. *Id.*

RESPONSE   ULLICO denies that the description of this paragraph is a complete

description, but states that this dispute is not a material one for the purposes of this motion.

77.    At its May 2000 meeting, the Executive Committee approved resolutions, similar to the ones adopted in 1997, providing authority for the repurchase of ULLICO shares at "Book Value" as of December 31, 1999, established at $146.07 per share. *Id.*

RESPONSE   ULLICO denies that the description of this paragraph is a complete or

accurate description.  In particular, the asserted fact that the Executive Committee adopted

"resolutions" concerning stock repurchases is in good faith controverted because the record

indicates that the Executive Committee adopted a single resolution with numerous "Further

Resolved" clauses. *See* ULLICO SOMF Exhibit 17 at U 17285-17286.  The asserted fact that

"the Executive Committee approved" a resolution "similar to the one[] adopted in 1997" is in good

faith controverted because the record indicates that the 1997 repurchase program had numerous

material differences from the Extraordinary Repurchase Program approved in May 2000

including (a) the total amount of stock the Company proposed to repurchase ($30 million versus

$240-250 million), (b) the requirement that Global Crossing stock return to trading at a price of

$43 per share before implementation of the program, (c) the requirement that all shareholders

holding more than 1% of ULLICO stock tender or that 93% of all ULLICO stock be tendered,

and (d) the size of the proration threshold (10 shares verses 100 shares).  The asserted fact that

the price established at the May 10, 2000 Executive Committee Meeting was "$146.07 per share"

is also in good faith controverted because the record indicates that the price was "$146.04" per

share. *See* ULLICO SOMF Exhibit 17 at U 17286.

78.    The resolutions adopted by the Executive Committee at its May 2000 meeting contemplated the repurchase by ULLICO of up to 1,645,623 Class A, Class B and Capital Stock, at that amount, for a total of more than $240 million. *Id.* The offer was made contingent, however, upon a rise in the trading price of Global Crossing shares from its then current value, to $43 per share. *Id.* The Executive Committee was informed that in 1999, at mid-year, "Global Crossings was trading at $25 and eventually rebounded to $50 at year end." *Id.*

In addition, the repurchase offer was made contingent upon the tender of either 93% of all shares outstanding or tenders from all shareholders holding in excess of 1% of the Company's stock. *Id.*

RESPONSE   ULLICO denies that the description of this paragraph is a complete or

accurate description and that the referenced parts of the record are accurately quoted.  In

particular, the asserted fact that the Executive Committee adopted "resolutions" concerning stock

repurchases is in good faith controverted because the record indicates that the Executive

Committee adopted a single resolution with numerous "Further Resolved" clauses.  *See* ULLICO

SOMF Exhibit 17 at U 17285-17286.

79.    At its May 2000 meeting, the Executive Committee was informed that "the Global share price is down and that [ULLICO] *may repurchase at a premium.* The Company has a commitment to honor in the repurchase program. It would not be appropriate for the Company to act inconsistently in 2000." *Id.*

RESPONSE    ULLICO denies that the description of this paragraph is a complete

description, but states that this dispute is not a material one for the purposes of this motion.

80.    On May 11, 2000, the Board of Directors met. See Minutes of Board of Directors Meeting, May 11, 2000, Plaintiff's Ex. 22.

RESPONSE   Admitted.

81.    At its May 2000 meeting, the Board received a report on the 2000 repurchase program that had been adopted by the Executive Committee the preceding day. Id., at 3-4.

RESPONSE   ULLICO denies that the description of this paragraph is a complete

description, but states that this dispute is not a material one for the purposes of this motion.

82.    Prior to its May 2000 meeting, the Board was presented with an "agenda item" that described the repurchase program, and that offered the opinion of Credit Suisse First Boston that the program was "favorable to [ULLICO] stockholders and has been balanced in a manner so it will not jeopardize the Corporation's well being." *Id.,* at 4; Plaintiff's Complaint ¶ 34.

RESPONSE    ULLICO denies that the description of this paragraph is a complete

description, but states that this dispute is not a material one for the purposes of this motion.

83.    After receiving these materials and management's report, and discussing the program, the Board unanimously adopted a series of resolutions that approved the program. *Id.* Among other things, the Board resolved "That for year-end 1999," the Book Value of ULLICO's stock was "146.04 [per share] to be used in calendar year 2000 for repurchases." *Id.* The resolutions required that the program would be "effective on November 1st [2000], or as soon thereafter as is practical, economically sound, and in conformity with law and regulation." *Id.*

RESPONSE    ULLICO denies that the description of this paragraph is a complete or

accurate description.    In particular, the asserted fact that the Board "adopted a series of

resolutions" concerning stock repurchases is in good faith controverted because the record

indicates that the Board adopted a single resolution with numerous "Further Resolved" clauses.

*See* ULLICO SOMF Exhibit 22 at USDC 0169135-0169136.

84.    The price of Global Crossings shares did not rise to $43 per share in the period following the May 11, 2000 meeting. See Minutes of Board of Directors Meeting, November 3, 2000, at 2, Plaintiff's Ex. 21.

RESPONSE    Admitted.

85.    Because the price of Global Crossings shares did not rise to $43 per share in the period following the May 11, 2000 meeting, the repurchase program established at the May 2000 meeting was not implemented.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds

that Casstevens has failed to include "references to the parts of the record relied on to support the

statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing

"that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see*

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears

the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

769915.2

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows: Admitted.

86.    On November 3, 2000, ULLICO's Board of Directors met again. *Id.*

RESPONSE    Admitted.

87.    By the time of the November 2000 meeting, the composition of the Board changed as a result of the elections held at the Company's annual shareholders' meeting in May.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows: Admitted.

88.    In attendance at the November 2000 meeting was at least one director, Terrence O'Sullivan, who was elected at the May meeting, who owned no ULLICO

769915.2

shares, and who the Plaintiff admits was, at the time, *a disinterested director. Id.* See
Statement of Material Facts as to Which It Contends There Is No Genuine Issue, ¶ 47.

RESPONSE  ULLICO denies that the references relied on to support this paragraph

demonstrate the truth of all the asserted facts of this paragraph, but states that this dispute is not a

material one for the purposes of this motion.

89.    Mr. O'Sullivan had the right and opportunity before the meeting, and the
duty, to review the materials considered by the Board at the May 2000 meeting and the Notice
of ULLICO's 2000 Annual shareholders' meeting.

RESPONSE  ULLICO objects to this paragraph of the Casstevens SOMF on the grounds

that Casstevens has failed to include "references to the parts of the record relied on to support the

statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing

"that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see*

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears

the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue

of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response by ULLICO should

be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is

required, ULLICO responds as follows:  The asserted fact that "Mr. O'Sullivan had the right

and opportunity before the meeting, and the duty, to review the materials considered by the

Board at the May 2000 meeting and the Notice of ULLICO's 2000 Annual shareholders' meeting," is

in good faith disputed.  As an initial matter, the assertion by Casstevens insofar as it pertains to Mr.

O'Sullivan's "right" or "duty" is not a "fact" at all, but rather an argument about Mr.

O'Sullivan's legal rights and duties as a director of ULLICO.  It therefore cannot constitute a

fact on which the Court may rely in ruling on summary judgment. ULLICO separately addresses

this legal argument in its Memorandum of Points and Authorities in Support of its Motion for

Partial Summary Judgment at 9-11. To the extent there is an issue of fact here, it is worth noting

Casstevens has himself testified that he did not have such a duty. *See* ULLICO SOMF Exhibit 1

at 109:15-19. Casstevens' own expert has similarly testified that "[a] director of the Company

could have acted with ordinary prudence in voting to approve the November 3, 2000 resolutions

even though the Board members did not inquire as to or know the specific amount of stock that

was owned by the directors and officers before the Board approved the 2000 Formal Repurchase

Program." *See* Affidavit of James J. Hanks, Jr. at 17.

Moreover, there is no evidence in the record that Mr. O'Sullivan had the "opportunity"

"before the meeting" on November 3, 2000 "to review" "the Notice of ULLICO's 2000 Annual

shareholders' meeting." Mr. O'Sullivan was not himself a ULLICO shareholder, ULLICO SOMF Exhibit

27 ¶ 7, and therefore would not have personally received a copy of "the Notice of ULLICO's 2000

Annual shareholders' meeting." Although he was General President of LIUNA, LIUNA's copy of "the

Notice of ULLICO's 2000 Annual shareholders' meeting," was not sent to LIUNA's headquarters

in Washington, DC where Mr. O'Sullivan had his office, but to a bank in Texas. *See*

Exhibit 34 hereto at USDC 187603. And although one of the LIUNA pension fund's

copies of "the Notice of ULLICO's 2000 Annual shareholders' meeting" was apparently mailed to

LIUNA's headquarters in Washington, DC, it was not addressed to Mr. O'Sullivan,

Exhibit 33 hereto at USDC 187604, and there is no evidence in the record that he had any

opportunity to review it prior to the November 3, 2000 meeting.

90.    At the November 2000 meeting, Mr. O'Sullivan, along with all of the other
Board members present, voted in favor of *all* of the resolutions adopted at the meeting.

769915.2

RESPONSE   ULLICO objects to this paragraph of the Casstevens SOMF on the grounds

that Casstevens has failed to include "references to the parts of the record relied on to support the

statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing

"that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see*

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears

the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue

of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response by ULLICO should

be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is

required, ULLICO responds as follows:  The asserted fact that the directors "voted in favor of *all*

of the resolutions adopted at the meeting" is in good faith controverted because the record

indicates that the Board adopted a single "resolution" with numerous "Further Resolved"

clauses.  *See* ULLICO SOMF Exhibit 21 at USDC 0003171-0003174.  ULLICO admits that

"Mr. O'Sullivan, along with all of the other Board members present, voted in favor of" the

resolution adopted "[a]t the November 2000 meeting."

91.     At the November 3, 2000 meeting, Robert Georgine, then ULLICO's
Chairman, delivered a lengthy report concerning the repurchase program that had been adopted
by ULLICO in 1997 and extended each year thereafter. *See* Minutes of Board of Directors
Meeting, November 3, 2000, at 2 - 5, Plaintiff's Ex. 21.

RESPONSE   ULLICO denies that the description of this paragraph is a complete

description, but states that this dispute is not a material one for the purposes of this motion.

92.        At the November 2000 meeting, Mr. Georgine remarked:

769915.2

Before you today is a Resolution that would offer a 30 million dollar repurchase to all Stockholders. We have done a number of things. First, we have designated an amount we believe we can do reasonably and maintain our cash needs. This includes the purchase of Amalgamated Bank. It also leaves the Company in a better position for offerings in the future while also allowing the businesses and the services we provide to the labor movement to grow. And, we have extended the date past year end. Because of the timing of this meeting and the upcoming holidays, this seems most equitable. The Executive Committee and this Board sets the value of the stock for purposes of repurchases each year. It is set at the Annual Meeting and it remains until the next Annual Meeting.

In addition, this Resolution also sets some standards. To participate in the Repurchase, a Stockholder must be currently eligible to purchase stock. This does not affect any of the trust funds or health and welfare funds, or the unions, but we do have individuals who were eligible at one time to purchase stock and are no longer eligible. It is not appropriate for them to participate in the offering process.

*The Resolution also sets reasonable standards confirming the Chairman's discretion. Since the founding of this Corporation we have repurchased stock, from individuals, from unions and from estates. It is part of the essence of being a closely held corporation. We do not advertise this and we do not encourage it. As we have said from the very beginning, ULLICO Inc. is a long-term investment and has been a longterm investment since 1925.*

*I have decided that it would be good to have the Board's confirmation of my authority and it is limited in a number of ways. Repurchases cannot be at a price greater than that set by the Executive Committee or the Board and it cannot be from any single stockholder for more than 1 percent of the aggregate total of shares outstanding. Those are simple safeguards so that the Board has not granted unlimited authority to an individual but a reasonable exercise of authority to keep the business of the Corporation functioning. It is important that we move forward. Id.,* at 4.

RESPONSE   ULLICO denies that the description of this paragraph is a complete

description and that the referenced parts of the record are accurately quoted, but states that this

dispute is not a material one for the purposes of this motion.

93.     After hearing Mr. Georgine's remarks at the November 2000 meeting, the Board *unanimously* voted to approve a series of resolutions. Among other things, the Board *unanimously* voted to establish the price of ULLICO's shares, for the purpose of repurchasing, at $146.04 per share.

769915.2

RESPONSE  ULLICO objects to this paragraph of the Casstevens SOMF on the grounds

that Casstevens has failed to include "references to the parts of the record relied on to support the

statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing

"that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see*

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears

the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue

of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response by ULLICO should

be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is

required, ULLICO responds as follows:  ULLICO denies that the description of this paragraph is

a complete or accurate description.  In particular, the asserted fact that the Board "voted to

approve a series of resolutions" is in good faith controverted because the record indicates that the

Board adopted a single "resolution" with numerous "Further Resolved" clauses.  *See* ULLICO

SOMF Exhibit 21 at USDC 0003171-0003174.

94.    At the November 2000 meeting, ULLICO's Board adopted the following
resolution:

That for repurchases of Stock and Capital Stock occurring after the date of the Corporation's
most recent Annual Meeting, that is to say, May 11, *2000,* the maximum repurchase price
per share shall be $146.04, being the repurchase price selected by the Board of Directors on
such date and representing the book value per share as of December 31, 1999, calculated
by taking the total shares of Stock and Capital Stock outstanding at year end and dividing
that number into "Total Stockholders Equity" as reported on the Corporation's Audited Financial
Statements.

RESPONSE  ULLICO objects to this paragraph of the Casstevens SOMF on the grounds

that Casstevens has failed to include "references to the parts of the record relied on to support the

769915.2

statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing

"that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see*

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears

the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue

of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response by ULLICO should

be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is

required, ULLICO responds as follows:  ULLICO denies that the description of this paragraph is

a complete or accurate description.  In particular, the apparently asserted fact that the Board

adopted more than one resolution is in good faith controverted because the record indicates that

the Board adopted a single "resolution" with numerous "Further Resolved" clauses.  *See* ULICO

SOMF Exhibit 21 at USDC 0003171-0003174.

95.    At the November *2000* meeting, the ULLICO Board ratified the decision of the
Board, at the May 11, 2000 meeting, establishing the price for repurchase of ULLICO
shares at $146.04 per share.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds

that Casstevens has failed to include "references to the parts of the record relied on to support the

statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing

"that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see*

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears

the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

53

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows: ULLICO denies that the description of this paragraph is a complete or accurate description. In particular, the asserted fact that "[a]t the November 2000 meeting, the ULLICO Board ratified the decision of the Board, at the May 11, 2000 meeting" is in good faith controverted because, there is no evidence in the record to support that assertion.

96.    At the November 2000 meeting, the ULLICO Board voted *unanimously* to confirm the authority previously given to and exercised by the Chairman, Robert Georgine, to repurchase shares of ULLICO's stock at "Book Value" as established by the Board. (Plaintiff's Ex. 21, at 5-6.)

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows: ULLICO denies that the description of this paragraph is a complete or accurate description. In particular, the asserted fact that "[a]t the November 2000

769915 2

meeting, the ULLICO Board voted" "to confirm the authority previously given to and exercised by

the Chairman, Robert Georgine, to repurchase shares of ULLICO's stock at 'Book Value' as

established by the Board" is in good faith controverted because there is no evidence in the record

to support that assertion. Specifically, although the Minutes indicate that Georgine in his

remarks characterized the resolution under consideration as "confirming the Chairman's

discretion" and "confirmation of my authority" to repurchase stock, ULLICO SOMF Exhibit 21

at USDC 0003170, there is no evidence in the record that such discretionary repurchase authority

had ever been granted to the Chairman by ULLICO's Board prior to November 3, 2000, and the

text of the resolution itself does not contain any such "confirmation," *id.* at USDC 0003171-

0003172.

　　　97.　　At the November 2000 meeting, the ULLICO Board voted *unanimously* to
adopt the following resolutions:

> RESOLVED: *That the Chairman of ULLICO Inc. (the "Corporation") is hereby
> authorized and empowered, in his discretion, whenever he deems it
> consistent with sound financial practice and the best interests of the
> Corporation, to repurchase shares of Class A Stock or* Class B
> Stock ("Class A Stock," "Class B Stock" referred to collectively
> herein as "Stock") or *Capital Stock from those shareholders offering
> the same to the Corporation;* provided that the authorization granted
> under this resolution shall not be exercised during any period
> commencing on the date of an annual meeting and ending on the
> day next preceding the following annual meeting of
> shareholders in a total amount with respect to any particular
> stockholder in excess of 1% of the total outstanding Stock and
> Capital Stock, taken in the aggregate, of the Corporation computed
> immediately preceding the repurchase in question. And, it was
> FURTHER RESOLVED: *That the Chairman, in exercising the powers set forth in
> the preceding resolution, is hereby authorized and empowered to
> effect such purchases of Stock and Capital Stock offered to the
> Corporation at such price per share as he shall deem appropriate;
> provided, however, that such price shall not be greater than that
> most recently specified by the Board of Directors. The authority
> granted by this resolution and the preceding resolution is in
> addition to the authority granted by the following resolutions. And,*

it was

FURTHER RESOLVED: *That the powers of the Chairman under the preceding resolutions, the following resolutions,* and any future resolutions adopted with respect to the repurchase of Stock or Capital Stock of the Corporation, *may be exercised with respect to Stock or Capital Stock held by any Director or Officer whatsoever of the Corporation as fully as if such Directors or Officers were persons eligible to purchase Stock or Capital Stock of the Corporation, but were not Directors or Officers;* a report of such purchases from Directors and Officers shall be made from time to time to the Compensation Committee." ...

See Minutes of Board of Directors Meeting, November 3, 2000, at 5-6, Plaintiff's Ex. 21 (emphasis added).

RESPONSE    ULLICO denies that the description of this paragraph is a complete or accurate description. In particular, the asserted fact that the Board adopted "resolutions" concerning stock repurchases is in good faith controverted because the record indicates that the Board adopted a single resolution with numerous "Further Resolved" clauses. *See* ULLICO SOMF Exhibit 21 at USDC 0003171-0003174.

98.    At the November 2000 meeting, the ULLICO Board voted unanimously to adopt a modified version of the repurchase program adopted in May. *Id.,* at 6-8. Among other things, the Directors voted in favor of a repurchase program, pursuant to which up to $30 million of Class A and other such non-Capital shares would be eligible for repurchase by ULLICO at the rate of $146.07 per share, the GAAP "book value" of each ULLICO share as of December 31, 1999. *Id.*

RESPONSE    ULLICO denies that the description of this paragraph is a complete or accurate description. In particular, the asserted fact that the price established at the November 2000 Board Meeting was "$146.07 per share" is in good faith controverted because the record indicates that the price was "$146.04" per share. *See* ULLICO SOMF Exhibit 21 at USDC 0003172.

99.    Although the resolutions adopted by the Board at the November 2000 meeting made the purchase of shares from shareholders owning more than 10,000 shares

769915.2

subject to proration, the Board also resolved that "A tender of shares of Stock by a stockholder who holds 10,000 shares or fewer of Stock and who properly tenders all shares of Stock that such stockholder beneficially owns will not be subject to the prorationing provisions nor in the aggregate to the overall limit on purchases set forth above." *Id.*

RESPONSE    ULLICO denies that the description of this paragraph is a complete or

accurate description.  In particular, the asserted fact that the Board adopted "resolutions"

concerning stock repurchases is in good faith controverted because the record indicates that the

Board adopted a single resolution with numerous "Further Resolved" clauses.  *See* ULLICO

SOMF Exhibit 21 at USDC 0003171-0003174.

100.    The effect of this portion of the resolution was to exempt from pro-rationing repurchases of shares from persons who owned less than 10,000 ULLICO shares, as long as they tendered all of their shares for repurchase.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds

that Casstevens has failed to include "references to the parts of the record relied on to support the

statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing

"that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see*

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears

the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue

of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response by ULLICO should

be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is

required, ULLICO responds as follows:  ULLICO denies that the description of this paragraph is

a complete description, but states that this dispute is not a material one for the purposes of this

motion.

101.    The other resolutions of the Board, described above, approved application of this exemption to Directors.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see* *Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)).    Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows:    ULLICO denies that the description of this paragraph is a complete or accurate description.    In particular, the asserted fact that the Board adopted "resolutions" concerning stock repurchases is in good faith controverted because the record indicates that the Board adopted a single resolution with numerous "Further Resolved" clauses. *See* ULLICO SOMF Exhibit 21 at USDC 0003171-0003174.

102.    At the November 2000 meeting, the ULLICO Board specifically made implementation of the repurchase program "subject to the Corporation's receiving tenders of 100% of the shares beneficially owned by each and every stockholder which holds in excess of 2% of the shares of Stock; and provided that management may modify or waive such condition at the discretion of the Chairman so long as the repurchase will not cause a significant redistribution of equity." *Id.,* at 7.

RESPONSE    ULLICO denies that the description of this paragraph is a complete description, but states that this dispute is not a material one for the purposes of this motion.

103.    No director dissented, or announced his dissent at the November 2000 Board meeting.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows: ULLICO denies that the description of this paragraph is a complete description, but states that this dispute is not a material one for the purposes of this motion.

104.    No director filed a written dissent *at any time* after the meeting, with respect to *any* of the matters addressed at the November 2000 meeting.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue

of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response by ULLICO should

be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is

required, ULLICO responds as follows: Admitted.

105.    At the time of the November 3, 2000 Board meeting, Mr. Casstevens had no
intention to sell any of the ULLICO stock that he then owned. (Plaintiff's Exhibit 1 at 110-
111 and 130-131.)

RESPONSE  ULLICO denies that the reference to the parts of the record relied on to

support this paragraph demonstrate the truth of the asserted facts of this paragraph. Accordingly,

the asserted fact that "[a]t the time of the November 3, 2000 Board meeting, Mr. Casstevens had

no intention to sell any of the ULLICO stock that he had owned" is in good faith controverted.

ULLICO states that because, by definition, the asserted fact is solely within Casstevens'

knowledge, and Casstevens has not chosen to assert this fact under oath, the Court should not

reward Casstevens for his failure to comply with Rule 7(h) and 56 by assuming that this fact is

admitted.

106.    As Mr. Casstevens has testified, he never thought about whether he stood to
benefit from the resolutions that he voted on. (Plaintiff's Ex. 1 at 110-111).

RESPONSE  Admitted.

107.    On November 21, 2000, along with all other ULLICO Capital Stock
owners, Mr. and Mrs. Casstevens were informed by letter that ULLICO had adopted a
revised "Repurchase Program," pursuant to which $30 million of Class A and Class B stock
would be eligible for repurchase by ULLICO at the rate of $146.07 per share. *See* Plaintiff's Ex.
28.
RESPONSE  ULLICO denies that the description of this paragraph is a complete or

accurate description. In particular, the asserted fact that the price stated in the November 21,

769915 2

2000 letter was "$146.07 per share" is in good faith controverted because the record indicates that the price was "$146.04" per share. *See* ULLICO SOMF Exhibit 28 at USDC 0048086. The asserted fact that "all" "ULLICO Capital Stock owners" received the November 21, 2000 letter is in good faith controverted because there is no evidence in the record to support that assertion.

108.    All of the unions and other entities that were ULLICO shareholders, including the Laborer's International Union (LIUNA), the union of which Mr. Terrence O'Sullivan was then president, were sent the same letter and were offered the same opportunity.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows:  The asserted fact that "ULLICO shareholders, including the Laborer's International Union (LIUNA), the union of which Mr. [Terence] O'Sullivan was then president, were sent the same letter and were offered the same opportunity" is in good faith controverted because there is no evidence in the record to support that assertion.

109.    The November 21, 2000 letter notified all of the ULLICO shareholders, in relevant part, of the following:

In my letter of July 12th we communicated the action taken by the Board of Directors at the May 11, 2000 Annual Meeting. That letter discussed our hope to complete what we described and intended as an Extraordinary Stock Repurchase Program. The amount of that repurchase totaled over $240 million. However, as was stated in that letter, the offering was contingent on certain conditions being met. Essentially that Global Crossings, Ltd. must be trading at no less than $43 per share and we had to have a practical opportunity to realize its gains in order to fund that offer.

> *Everyone is well aware of what has happened in the markets since May of this year.* In fact, Global Crossings, Ltd. has not achieved the $43 per share contingency. Therefore, a key condition to the previously announced Repurchase Program has not been met.

On November 3rd the Board of Directors of ULLICO Inc. (the "Company") met to consider this issue. At that meeting the Board took action which supersedes and replaces the actions taken at the May 11, 2000 Meeting. The Company will proceed with a Repurchase Program and this Repurchase Program will be for $30 million worth of the Company's stock. While this is a reduction from the extraordinary event we had discussed earlier, it is an increase from the originally developed and intended Repurchase Program for this year.

> When the Company began this program in 1997, there was a repurchase of $30 million of Class A and Class B Stock and the Company announced its intent based on business circumstances and conditions to repurchase an additional $15 million worth of stock in each of the next succeeding 10 years. At the November 3rd meeting the Board has approved an offer to repurchase $30 million of Class A and Class B Stock based on our current circumstances and the sound financial posture of our Companies. The repurchase value will be $146.04 per share. Management and the Board felt it important to continue the Repurchase Program based on audited financials; although, the repurchase value is established annually by the Board.

> There are some conditions to the revised repurchase offer; however, they do not relate to the value of Global Crossings, Ltd. or any other financial considerations. In particular, we must receive tenders of 100% of the shares of all the Stockholders who hold in excess of 2% of the Company stock. This is intended to minimize any over concentration of the Company Stock with certain Stockholders. In addition, as many of you know, our Bylaws restrict the relative percentage of shares that can be held by any entity or individual. Those By-law restrictions still continue and we want to make every effort to maintain the balance of ownership of the Company into the future. In addition, the Company continues to reserve its right, pursuant to its By-laws, to repurchase shares

769915.2

outside the Repurchase Program at $25 per share. You should carefully
review the Offering Memorandum that you will receive in connection with
the Repurchase Program.

******

The Company anticipates receiving shares in excess of the $30 million it is
offering to repurchase, so it will pro-rate each submission so all
participating Stockholders share *equitably* in the offering. Other terms and
conditions of the repurchase will be described in the Offering Memorandum.

See Plaintiff's Ex. 28 (emphasis added).

RESPONSE    ULLICO denies that the description of this paragraph is a complete

description, but states that this dispute is not a material one for the purposes of this motion.

110.    Mr. O'Sullivan's union, LIUNA, exercised its rights under the repurchase
program adopted by the Board in November 2000.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds

that Casstevens has failed to include "references to the parts of the record relied on to support the

statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing

"that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see*

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears

the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue

of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response by ULLICO should

be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is

required, ULLICO responds as follows:  The asserted fact that "Mr. O'Sullivan's union, LIUNA,

exercised its rights under the repurchase program adopted by the Board in November 2000" is in good faith controverted because there is no evidence in the record to support that assertion, the record indicates that LIUNA itself held only Capital Stock in 2000 and therefore could not "exercise[]" any "rights under the repurchase program adopted by the Board in November 2000," because that program did not include Capital Stock. *Compare* Exhibit 51 hereto at UL 20696 (indicating that LIUNA held only Capital Stock) *with* ULLICO SOMF Ex. 18 at USDC 0026436 (stating that 2000 formal offer applied only to Class A and B stock).

111.    As a result of its participation in the program adopted by the Board at its November 2000 meeting, LIUNA received more than $1.2 million in proceeds for the shares that it tendered.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows:  The asserted fact that "[a]s a result of its participation in the program adopted by the Board at its November 2000 meeting, LIUNA received more than $1.2 million in proceeds for the shares that it tendered" is in good faith controverted because there is no

evidence in the record to support that assertion, and the record indicates that LIUNA itself held

only Capital Stock in 2000 and therefore could not have "participat[ed] in the program adopted by

the Board at its November 2000 meeting," let alone "receive[] more than $1.2 million in proceeds

for the shares that it tendered" because that program did not include Capital Stock. *Compare*

Exhibit 51 hereto at UL 20696 (indicating that LIUNA held only Capital Stock) *with* ULLICO

SOMF Ex. 18 at USDC 0026436 (stating that 2000 formal offer applied only to Class A and B

stock).

    112.    Mr. O'Sullivan knew that LIUNA tendered shares in response to the offer
made for repurchase following the November 2000 Board meeting.

    <u>RESPONSE</u>    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds

that Casstevens has failed to include "references to the parts of the record relied on to support the

statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing

"that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see*

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears

the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue

of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response by ULLICO should

be required to this paragraph and this paragraph should be stricken by the Court.

    Without waiving the foregoing objection, to the extent a response to this paragraph is

required, ULLICO responds as follows:  The asserted fact that "Mr. O' Sullivan knew that

LIUNA tendered shares in response to the offer made for repurchase, following the November

2000 Board meeting" is in good faith controverted because there is no evidence in the record to

support that assertion, and the record indicates that LIUNA itself held only Capital Stock in 2000

and therefore could not have and therefore could not have "tendered shares in response to the offer made for repurchase" "following the November 2000 Board meeting" because that program did not include Capital Stock. *Compare* Exhibit 51 hereto at UL 20696 (indicating that LIUNA held only Capital Stock) *with* ULLICO SOMF Ex. 18 at USDC 0026436 (stating that 2000 formal offer applied only to Class A and B stock).

113.    Mr. O'Sullivan knew that LIUNA received money amounting to more than $1 million for the shares that LIUNA tendered in response to the offer made for repurchase, following the November 2000 Board meeting.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows:  The asserted fact that "Mr. O'Sullivan knew that LIUNA received money amounting to more than $1 million for the shares that LIUNA tendered in response to the offer made for repurchase, following the November 2000 Board meeting" is in good faith controverted because there is no evidence in the record to support that assertion, and the record indicates that LIUNA itself held only Capital Stock in 2000 and therefore could not

66

769915.2

have "tendered in response to the offer made for repurchase" "following the November 2000 Board meeting," let alone "received money amounting to more than $1 million for" doing so because that program did not include Capital Stock. *Compare* Exhibit 51 hereto at UL 20696 (indicating that LIUNA held only Capital Stock) *with* ULLICO SOMF Ex. 18 at USDC 0026436 (stating that 2000 formal offer applied only to Class A and B stock).

114.    The December 14, 2000 Offer to purchase, Plaintiff's Ex. 18, which constituted ULLICO's formal offer to *all* ULLICO shareholders, stated:

> As of September 30, 2000, there were **7,886,333 Shares outstanding.** Accordingly, the 205.423 Shares, which the Company is offering to purchase in the Offer. represent approximately 2.6% of the Shares outstanding as of September 30, 2000.
>
> *The Company has not been advised that any of its directors and executive officers presently intend to tender any shares personally owned by them pursuant to the Offer. However, such directors and executive officers are not prohibited from. and may elect to, participate in the Offer. As of* September 30. 2000, the Company's directors and executive officers as a group (33 persons) beneficially owned an aggregate of 100,971 outstanding Shares (Class A Common Stock) representing approximately 1.3% of the outstanding Shares. If the Offer is fully subscribed by the Shareholders of the Company and the directors and executive officers of the Company do not participate in the Offer, the aggregate percentage share ownership interest of the Company's executive officers and directors as a group will remain at approximately 1.3% of the outstanding Shares following consummation of the Offer.
>
> There is no public trading market for the Shares. The repurchase price for the Shares has been established by the Board of Directors of the Company as of May 11, 2000 and is based on the book value per share, as of December 31, 1999, determined in accordance with generally accepted accounting principles ("GAAP"). Book value per share is derived by taking the total of all Shares of Capital Stock and Shares outstanding at December 31, 1999, as shown in the Company's 1999 financial statements and dividing that number into Total Stockholders' Equity.
>
> ******
>
> The Company, upon the terms and subject to the conditions of the Offer, will accept for purchase all Shares properly tendered and not withdrawn before the Expiration Date by any holder. that beneficially owns fewer than 10,000 Shares, provided that

769915.2

such holder tenders all Shares beneficially owned by the holder. These tenders will not be subject to the proration provisions as set forth in the first paragraph of Section 1 herein. This Offer is not available to owners of 10,000 or more Shares even if such owners have separate stock certificates for fewer than 10,000 Shares. Any holder of fewer than 10.000 Shares wishing to tender all Shares beneficially owned by such holder pursuant to the Offer and qualify for this preference must complete the box captioned "Holders of Fewer than 10,000 Shares" on the Letter of Transmittal.

Notwithstanding any other provision of the Offer, the Company shall not accept for payment or pay for any Shares tendered unless each holder of Shares that owns in excess of 2% of the number of Shares outstanding, tenders and does not withdraw all of the Shares beneficially owned by such holder, provided that the Company may waive this condition if such waiver will not result in a significant redistribution in the equity ownership of the Company. As of November 30, 2000, the total number of Shares held by all holders who each hold in excess of 2% of this number of Shares outstanding was **5,378,334.**

See December 2000 Offer to Purchase, Plaintiff's Ex. 18, at 1, 3, 6 (emphasis added).


RESPONSE   ULLICO denies that the description of this paragraph is a complete

description and that the referenced parts of the record are accurately quoted, but states that this

dispute is not a material one for the purposes of this motion.

115.    The condition for repurchase set forth in the offer, that "each holder of Shares that owns in excess of 2% of the number of Shares outstanding, tenders and does not withdraw all of the Shares beneficially owned by such holder," was met.

RESPONSE   ULLICO objects to this paragraph of the Casstevens SOMF on the grounds

that Casstevens has failed to include "references to the parts of the record relied on to support the

statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing

"that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see*

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears

the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue

of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows: Admitted.

116.    The holders of a majority of the outstanding shares (i.e., at least 5,378,334 out of 7,886,333 Shares outstanding) tendered *all* of their shares, in accordance with the program.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows: Admitted.

117.    At least $5.4 million was paid under the "Discretionary Repurchase Program" identified in the Complaint in this case, to the owners of ULLICO shares who were *not* ULLICO directors or officers.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P.

769915 2

56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows: The asserted fact that "[a]t least $5.4 million was paid under the 'Discretionary Repurchase Program' identified in the Complaint in this case, to the owners of ULLICO shares who were *not ULLICO* directors or officers" is in good faith controverted because there is no evidence in the record to support that assertion.

118.   ULLICO has reportedly recovered from other Defendants in other cases, including Robert Georgine, Arnold & Porter, PriceWaterhouseCoopers and others, either by way of settlement or otherwise, an amount greatly in excess of $10.7 million. (Judicial Notice requested.)

RESPONSE   ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue

769915.2

of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows:  ULLICO admits that since its incorporation in 1987 it "has recovered from other Defendants in other cases" "either by way of settlement or otherwise," total amounts "in excess of $10.7 million."  Many of those "other cases" and related "recover[ies]" "by way of settlement or otherwise" are wholly unrelated to the facts of this case. The asserted fact that "Arnold & Porter" and "PriceWaterhouse Coopers," are or were, "Defendants in other cases" involving ULLICO is in good faith controverted because there is no evidence in the record that ULLICO has ever been party to any lawsuit with either of those entities.

119.   ULLICO has recovered from other Defendants in related actions an amount that is equal to or greater than the amount of money that ULLICO has alleged to be the pre-tax profits of all of those other persons and Mr. Casstevens resulting from their collective sales of ULLICO shares under the repurchase programs described in the Complaint in this case.

RESPONSE   ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

71

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows:  To date ULLICO has recovered money from only one "other Defendant[] in related actions:"  ULLICO's former Chairman, President and CEO Robert Georgine.  The asserted fact that ULLICO "recovered from" Georgine "an amount that is equal to or greater than the amount of money that ULLICO has alleged to be the pre-tax profits of all of those other persons," *i.e.,* Georgine, and "Casstevens resulting from their collective sales of ULLICO shares under the repurchase programs described in the Complaint in this case" is in good faith controverted because there is no evidence in the record to support that assertion, and the record indicates that the only "pre-tax stock profits" ULLICO recovered from Georgine were Georgine's own.  *See* Exhibit 52 hereto at RG0003 (requiring payment to ULLICO from Georgine of $2,598,378 "as disgorgement and repayment of his personal profits realized from ULLICO Inc.'s redemption of ULLICO Inc. Stock during 2000 and 2001").  While Georgine also agreed to make certain other specified payments to ULLICO, none of those amounts were for Casstevens' "pre-tax profits" "resulting from" Casstevens' "sales of ULLICO  under the repurchase programs described in the Complaint in this case." *Id.* at RG0003-RG0010.

Moreover, the Settlement Agreement between ULLICO and Georgine expressly provided that that agreement would not in any way release ULLICO's claims against non-parties such as Casstevens.  *Id.* at RG0015 ("It is also specifically acknowledged and agreed to by the parties, and ULLICO specifically states, that nothing herein shall waive, compromise, discharge or release in any respect any other person or entity other than Mr. Georgine and the Georgine Releasees, against whom ULLICO reserves and preserves all rights, claims and causes of action.").

120.    There is no evidence that Mr. Casstevens did *not* rely, in casting his vote on the resolutions for which he voted at the several Board and Executive Committee meetings

72

in which he participated, upon information and materials provided by such professionals, including, for example, information that established the GAAP Book Value of ULLICO's shares at each year end, and opinions by Credit Swisse First Boston that programs considered by the Board or the Executive Committee were fair to the corporation.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows:  The asserted fact that "[t]here is no evidence that Mr. Casstevens did *not* rely, in casting his vote on the resolutions for which he voted at the several Board and Executive Committee meetings in which he participated, upon information and materials provided by such professionals, including, for example, information that established the GAAP Book Value of ULLICO's shares at each year end, and opinions by CSFB that programs considered by the Board or the Executive Committee were fair to the corporation" is in good faith controverted.

ULLICO does not understand what Casstevens means by his vague references to "opinions," "information and materials provided by such professionals," and there is no evidence in the record that "such professionals" (whoever they may be) in fact provided "opinions,"

769915.2

"information" or "materials" (whatever those terms may include) regarding each of "the several

Board and Executive Committee meetings" in which Casstevens "participated," let alone that

Casstevens "rel[ied]" upon such "opinions," "information" or "materials" "in casting his vote on"

each of "the resolutions for which he voted" at those various meetings.

In particular, the meeting minutes of the November 3, 2000 Board Meeting where the

Board purportedly authorized the repurchases from Casstevens that are at issue in this case

indicate that there were in fact no "information," "materials" or "opinions" "provided" "by CSFB"

or any other "such professionals" at that meeting, let alone an "opinon[]" that the "programs

considered by the Board" at that meeting "were fair to the corporation." Since no such

"information," "materials" or "opinions" were "provided," it necessarily follows that Casstevens

could not "rely, in casting his vote on the resolution[] for which he voted" at the November 3,

2000 Board Meeting upon such non-existent "information," "materials" or "opinions."

121.    On March 25, 2003, a Special Committee appointed by ULLICO to
evaluate the transactions and matters at issue in this case, found no illegal conduct or
wrongdoing on the part of the Directors, stating that "there was no basis to call for
disgorgement of the proceeds of their investment."

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds

that Casstevens has failed to include "references to the parts of the record relied on to support the

statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing

"that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see*

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears

the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue

of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows: ULLICO admits that the content of the ULLICO Report of the Special Committee to the Board of Directors dated March 25, 2003 is reproduced as Exhibit 40 hereto, and denies that the description of this paragraph is a complete or accurate description. In particular, the asserted fact that the Special Committee "found no illegal conduct or wrongdoing on the part of the Directors" is in good faith controverted because the record indicates that the Special Committee made no such "findings," but rather made only certain "Recommendations." *See* Exhibit 40 hereto at Luce 01240-01243.

122.    On March 28, 2003, ULLICO's Board of Directors declared "there was no illegal conduct or wrongdoing by the directors and officers as determined by Governor Thompson and the Special Committee of the Board of Directors."

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)). Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

769915.2

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows:  ULLICO admits that the content of the Minutes of the March 28, 2003 Board Meeting is reproduced as Exhibit 43 hereto, and denies that the description of this paragraph is a complete or accurate description.  In particular, the asserted fact that the Board "declared 'there was no illegal conduct or wrongdoing by the directors and officers as determined by Governor Thompson and the Special Committee of the Board of Directors'" is in good faith controverted because the record indicates that the Board did not make such a "declaration." *See* Exhibit 43 hereto at USDC 0003513.

123.    There is no evidence that, under the circumstances at the time, the programs considered by the Executive Committee or Board were *not* fair to ULLICO and its shareholders as a whole.

RESPONSE   ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows:  The asserted fact that "[t]here is no evidence that, under the circumstances at the time the programs considered by the Executive Committee or Board were

76

769915.2

*not* fair to ULLICO and its shareholders as a whole" is in good faith controverted because the record indicates that (a) the Actual 2000 Repurchase Program adopted by the Board on November 3, 2000 had the effect of allowing insiders such as Casstevens to have all of their Class A stock repurchased at the premium price of $146.04 per share while larger shareholders were prorated and had only 2.2% of their Class A stock repurchased, (b) the discretionary repurchase program adopted by the Board on November 3, 2000 had the effect of allowing insiders such as Casstevens to have as much of their Capital Stock as they liked repurchased at the premium price of $146.04 per share while outside shareholders were misleadingly told that purchases outside the formal program would only be at $25 per share, and (c) the combined effect of both these programs allowed 20 insiders including Casstevens to receive 31% of the total funds paid by ULLICO to repurchase stock at $146.04 per share. *See* ULLICO SOMF ¶¶ 41-45, 55, 57.

124.    The business purpose of the entire share repurchase program, begun in 1997, was set forth in the documents accompanying the decision to initiate the program.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response

769915.2

by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows: ULLICO admits that the content of the May 5, 1997 Executive Committee Meeting Minutes is reproduced at Casstevens SOMF Exhibit A, and denies that the description of this paragraph is a complete or accurate description. ULLICO also denies that the document attached as Casstevens SOMF Exhibit A is an authentic copy of the Minutes of the May 5, 1997 Executive Committee Meeting because that exhibit contains unidentified handwritten notes and annotations, presumably of Casstevens' counsel. *See* Casstevens SOMF Exhibit A at JW 00494.

125.   The business purpose of the entire share repurchase program, begun in 1997, was, among other things, to provide all of ULLICO shareholders with liquidity while, at the same time, preserving the balance of share ownership among the many unions that owned ULLICO's shares and ensuring that none of them would control more than 9% of such shares. *See, e.g., See* Minutes of Executive Committee Meeting, May 5, 1997, and Credit Suisse First Boston presentation referenced therein (Defendant's Ex. A).

RESPONSE  ULLICO admits that the content of the May 5, 1997 Executive Committee Meeting Minutes is reproduced at Casstevens SOMF Exhibit A, and denies that the description of this paragraph is a complete or accurate description. ULLICO also denies that the document attached as Casstevens SOMF Exhibit A is an authentic copy of the Minutes of the May 5, 1997 Executive Committee Meeting because that exhibit contains unidentified handwritten notes and annotations, presumably of Casstevens' counsel. *See* Casstevens SOMF Exhibit A at JW 00494. Accordingly, that exhibit to the Casstevens SOMF should be stricken from the record. The asserted fact that "[t]he business purpose of the entire share repurchase program" "was, among other things, to provide all of ULLICO shareholders with liquidity while, at the same time, preserving the balance of share ownership among the many unions that owned ULLICO's

78

shares and ensuring that none of them would control more than 9% of such shares" is also in

good faith controverted because the May 5, 1997 Executive Committee Meeting Minutes

indicate that the program was intended to provide liquidity for "the holdings of Class A, Class B

and Preferred Certificates," without mentioning providing liquidity for holders of Capital Stock

or "preserving the balance of share ownership among the many unions that owned

ULLICO's shares."  Casstevens SOMF Exhibit A at JW 00494-495

    126.    The business purpose of the entire share repurchase program, begun in 1998, was
also to ensure that payments to stockholders for their shares under the Formal Repurchase
Program would not be taxed as dividends; to avoid certain requirements of the federal
securities laws that would apply to the Company if it had more than 500 stockholders, that
would have created substantial expense to ULLICO, which the directors rationally may
have sought to minimize or eliminate; and to eliminate small stockholders and thereby
reduce the general administrative expenses associated with such additional stockholders.

    RESPONSE  ULLICO objects to this paragraph of the Casstevens SOMF on the grounds

that Casstevens has failed to include "references to the parts of the record relied on to support the

statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing

"that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see*

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears

the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue

of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response by ULLICO should

be required to this paragraph and this paragraph should be stricken by the Court.

    The asserted fact that "[t]he business purpose of the entire share repurchase program"

"was to ensure that payments to stockholders for their shares under the Formal Repurchase

Program would not be taxed as dividends; to avoid certain requirements of the federal securities

769915 2

laws that would apply to the Company if it had more than 500 stockholders, that would have created substantial expense to ULLICO, which the directors rationally may have sought to minimize or eliminate; and to eliminate small stockholders and thereby reduce the general administrative expenses associated with such additional stockholders" is also in good faith controverted because the record contains no evidence that any of those items were in fact purposes of the repurchase program.

127.    ULLICO has not offered to return to Mr. and Mrs. Casstevens the cash that they paid for ULLICO stock, plus interest.

RESPONSE    ULLICO objects to this paragraph of the Casstevens SOMF on the grounds that Casstevens has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h), and has therefore failed to meet his burden of showing "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c), *see Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)).  Accordingly, no response by ULLICO should be required to this paragraph and this paragraph should be stricken by the Court.

Without waiving the foregoing objection, to the extent a response to this paragraph is required, ULLICO responds as follows:  ULLICO admits that it "has not offered to return to Mr. Casstevens the cash that he paid for Class A stock," but states that doing so would be futile

80

769915.2

given the fact that Casstevens has already had "the cash that he paid for Class A stock" returned to him when ULLICO redeemed his Class A stock in January 2001. *See* ULLICO SOMF ¶ 7.

## CONCLUSION

For the foregoing reasons, ULLICO's Motion for Partial Summary Judgment should be granted.

Dated: July 11, 2007

MILLER & CHEVALIER CHARTERED


By _____/s/ Victor Tabak_____
Anthony J. Trenga (DC Bar #218255)
Brian A. Hill (DC Bar #456086)
Victor Tabak (DC Bar # 480333)
Matthew T. Reinhard (DC Bar # 474941)
655 Fifteenth Street, N.W., Suite 900
Washington, DC 20005-5701
Tel. (202) 626-5800
Fax. (202) 628-0858
atrenga@milchev.com
Attorneys for Plaintiff

769915.2