Exhibit 47

JAN 21 1997  5:10PM    CREDIT SUISSE FIRST BOSTON            NO.1556  P  1

**CREDIT | FIRST**
**SUISSE | BOSTON**

CREDIT SUISSE FIRST BOSTON CORPORATION

Eleven Madison Avenue          Telephone  212-325-4065
New York, NY 10010-3629        Telefax    212-325-4007

January 21, 1997

Mr. John K. Grelle                         WILLIAM J. EGAN
Senior Vice President and Chief Financial  Director
Officer
ULLICO Inc.
111 Massachusetts Ave. N.W.
Washington, D. C. 20001

Dear John:

As you requested, I have set forth a fee proposal for Credit Suisse First Boston to act as advisor to ULLICO in connection with an exchange offer of some combination of debt and preferred securities with the holders of ULLICO's common stock. You had requested that we structure our fee proposal to cover three alternative scenarios.

Alternative 1 - <u>Structuring Debt and Preferred</u>. You proposed that under the first alternative, Credit Suisse First Boston would advise ULLICO on the appropriate structure, terms and value of the debt and preferred securities to be issued to the holders of the common stock, as well as to assist ULLICO in preparing presentations to the rating agencies on the recapitalization. Credit Suisse First Boston would not have any involvement in assessing the fairness of the exchange, valuing ULLICO or in dealing with the holders of the common stock or with the ULLICO Board of Directors.

Although the amount of work required by this type of assignment could be significant, given the limited exposure to outside parties and the absence of a requirement that the company itself, be valued, we would propose a fee of $150,000 for Alternative I.

Alternative 2 - <u>Structuring of Debt and Preferred and Negotiating Exchange Offer</u>. In the second alternative scenario, you proposed that Credit Suisse First Boston would advise on the structuring of the debt and preferred and also advise ULLICO management on the exchange, including meeting with the shareholders and the ULLICO Board of Directors. There are three factors that make this assignment a much more extensive assignment than Alternative I. First, we believe that this assignment requires Credit Suisse First Boston to reach an opinion as to the fairness of the exchange and, therefore, as to the value of the common stock. As you know, valuing a company is a substantial exercise. In addition, the shareholders and the Board of Directors will view CS First Boston as an expert on the area of the fairness of the exchange which increases our

1/21/97 5:04 PM 7031006R.CTA/1

USDC 0029926

**CREDIT | FIRST**
**SUISSE | BOSTON**

CREDIT SUISSE FIRST BOSTON CORPORATION

Page 2

potential exposure. Finally, we assume that attending the necessary meetings with individual shareholders would be a much larger time commitment. Given these factors, we would propose a fee for Alternative 2 of $500,000.

Alternative 3 - Structuring Debt and Preferred, Assisting in Negotiating Exchange Offer and Providing Fairness Opinion. The third alternative is simply Alternative 2 with the addition of a fairness opinion from Credit Suisse First Boston. Although there is incremental work and potential liability related to the rendering of a fairness opinion, we do not believe that the incremental work or liability requires a substantially larger fee than Alternative 2 and would propose a fee of $600,000 for Alternative 3.

We have tried to structure the fee alternatives in a way that reflects our assessment of the amount of work and potential exposure that arises with each alternative. However, if you have another alternative or think that we might have overestimated or underestimated the nature of a particular assignment, we would be delighted to speak with you about it further.

We are very eager to develop a closer relationship with ULLICO and to act as your advisor on this matter. Thank you for giving us the opportunity to submit our proposal.

Very truly yours,

1/21/97 5:03 PM 78Q10054.CTA/2

USDC 0029927

Exhibit 48

January 24, 1997

Dear: John

This letter confirms our understanding that ULLICO Inc. (the "Company") has retained Credit Suisse First Boston Corporation ("Credit Suisse First Boston") to act as its advisor with respect to the proposed exchange of shares of Class A and/or Class B stock of the Company for some combination of debt and/or preferred securities (the "Exchanged Securities") of the Company (the "Exchange").

The following services will be provided by Credit Suisse First Boston pursuant to this engagement, if requested:

-    Analysis and evaluation of the operations of the Company, it being understood that Credit Suisse First Boston will rely entirely upon information provided by the Company's officers, directors, accountants and counsel which Credit Suisse First Boston reasonably deems appropriate, without any independent investigation or verification thereof;

-    Assistance in the structuring and valuation of the Exchanged Securities;

-    Assistance in the negotiation of the Exchange with the holders of the Class A and/or Class B stock and in reviewing the Exchange with the Board of Directors of the Company; and

-    Assistance in presenting the Exchange to the rating agencies;

Credit Suisse First Boston's compensation for its role as financial advisor will be $500,000 for services listed above to be paid as follows:

(a)    A retainer advisory fee of $150,000 payable upon execution of this Agreement.

(b)    An additional $350,000 to be paid in three installments as follows: $150,000 on March 3, 1997; $100,000 on April 7, 1997; and the final $100,000 on May 5, 1997. Fees are payable subject to pro-ration up to the effective termination date of the engagement of Credit Suisse First Boston hereunder, provided said termination is effective prior to May 5, 1997. For the above stated fee, Credit Suisse First Boston will provide the above described services, if requested, whether or not an Exchange is consummated, for a period extending to July 31, 1997. If the Company shall not have consummated an Exchange or terminated the engagement of Credit Suisse First Boston hereunder, by July 31, 1997, the Company and Credit Suisse First Boston shall negotiate in good faith the fee to be paid for services to be performed by Credit Suisse First Boston after July 31, 1997;

(c)    Reimbursement for all reasonable out-of-pocket expenses incurred in connection with its role hereunder. Fees of any other advisors retained by Credit Suisse First Boston will be reimbursable, subject to the prior written approval of the Company.

In the event the Company makes written request for a fairness opinion from a financial point of view of the Exchange, the Company agrees to pay an additional $100,000 on delivery of said opinion to the Board of Directors of the Company. Said fairness opinion may be published by the

UL 19206

Company at its discretion to any of its advisors, Class A and/or Class B security holders, their investment advisors and public rating agencies; however, notwithstanding the foregoing, said fairness opinion may not be excerpted or summarized or restated without the prior written consent of Credit Suisse First Boston.

No further disclosure of the fairness opinion, nor disclosure of any other opinion rendered by Credit Suisse First Boston, whether formal or informal, may be disclosed in whole or in part to Class A and or Class B stockholders of the Company, or stockholders' financial advisors, or to rating agencies may be made without Credit Suisse First Boston's prior written consent. In addition, Credit Suisse First Boston may not be otherwise publicly referred to without its prior written consent, except as noted above as to permitted disclosures.

If requested by Credit Suisse First Boston, the Company shall include a mutually acceptable reference to Credit Suisse First Boston in any press release or other public announcement made by the Company regarding the matters described in this letter.

Since Credit Suisse First Boston will be acting on behalf of the Company in connection with its engagement hereunder, Credit Suisse First Boston and the Company have entered into a separate letter agreement attached hereto and dated the date hereof, providing for the indemnification by the Company of Credit Suisse First Boston and certain related entities.

The Company understands that if Credit Suisse First Boston is asked to act for the Company as an underwriter in connection with the issuance of securities by the Company, or in any other formal additional capacity, then the terms of the engagement contemplated pursuant to this Agreement and/or any such additional engagement(s) may be embodied in one or more separate written agreements, containing provisions and terms to be mutually agreed upon. The indemnity provisions of this separate letter agreement referred to above shall apply to the engagement contemplated pursuant to this agreement and any such additional engagement and shall remain in full force and effect regardless of any completion, modification or termination of Credit Suisse First Boston's engagements.

Credit Suisse First Boston's engagement hereunder may be terminated at any time with or without cause by either Credit Suisse First Boston or the Company upon ten days' written notice thereof to the other party, provided that, any termination of Credit Suisse First Boston's engagement hereunder shall not affect the Company's obligation to pay the retainer set forth in paragraph (a) and the fees and expenses in paragraphs (b) and (c) above, and to indemnify Credit Suisse First Boston and certain related entities with respect to actions and omissions prior to the effective date of such termination as provided in the separate letter agreement referred to above.

In connection with this engagement, Credit Suisse First Boston is acting as an independent contractors and not in any other capacity, with duties owing solely to the Company. All aspects of the relationship created by this agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflicts of law principles thereof.

We are delighted to accept this engagement and look forward to working with you on this assignment. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this agreement.

Very truly yours,

CREDIT     SUISSE     FIRST
BOSTON CORPORATION

By: _____

     Director

Accepted and Agreed to:
ULLICO Inc.

By: _____

ULLICO's Senior Officer
Letter Agreement Final

UL 19207

Exhibit 49

## ULLICO INC.
## TERM SHEET
## STOCK REPURCHASE PROGRAM

| | |
|---|---|
| Summary | ULLICO Inc. (the "Company") adopted a policy designed to allow its shareholders to realize value through the appreciation of common stock rather than exclusively through the receipt of dividends. Accordingly, in 1997 the Company repurchased $30,000,000 of equity holdings, and in subsequent years, it intends to repurchase up to a set dollar amount of stock at book value. At the same time, the dividend on stock will be established at a rate comparable to that paid by other similarly situated companies (approximately 2%). |
| Description of Stock | The offer in 1998 will be made for outstanding shares of Class A and Class B stock. |
| Amount | $30,000,000 was repurchased in 1997; the Company's goal is to of offer to repurchase $15,000,000, subject to having sufficient earnings and cash flow from operations, in each subsequent year, up to an aggregate repurchase amount of $180,000,000 (including the first year). |
| Source of Funds | Internally generated funds in 1997 and thereafter. |
| Price per Share | Book value as of preceding December 31 audited GAAP statements, computed by treating Preferred Certificates as common equity. |
| Procedures | Issuer tender offer, open for a period of 20 days. Transmittal forms and certificates should be submitted to the Company, attention Chief Legal Officer. If more shares are tendered than the Company has agreed to purchase, shares will be taken up pro rata and new certificates will be issued for returned shares. Tenders by holders of 10,000 or fewer shares will be accepted without pro ration. There is no minimum number of shares that must be tendered. |
| Voting | If, as a result of the repurchases, any shareholder would own Class A stock having more than 9% of the aggregate voting power, shares equal to the excess votes will automatically be converted into Class B stock (unless there is in place, a shareholders agreement that permits voting rights to be adjusted at each meeting in order to stay within the 9% limit). |
| Capital Stock | Although the offer would not be made for Capital Stock, the Company intends in the future to offer the greater of book value or $25 per share to repurchase Capital Stock when exercising its right of first refusal upon the death of a shareholder. In the event a holder of Capital Stock gives notice of a desire to transfer such shares, the Company intends to offer to repurchase the shares at book value. |
| Company Recommendation | The Company does not recommend acceptance of the offer. It is made as an accommodation to shareholders as a means of realizing value from their investment. The Company believes its stock represents an excellent investment opportunity for investors seeking long-term growth of capital. |

LISICORPORATE SECRETARY\MEETINGS\MAY\#8\DOC
ULLICO INC. TERM SHEET

USDC 0018834

Exhibit 50

ULLICO INC.
TERM SHEET
STOCK REPURCHASE PROGRAM

Summary

ULLICO Inc. (the "Company") adopted a policy designed to allow its shareholders to realize value through the appreciation of common stock rather than exclusively through the receipt of dividends. Accordingly, in 1997 the Company repurchased $30,000,000 at $27.06 per share; and in 1998 the Company repurchased $4,296,189.10 at $28.70 per share of equity holdings. In subsequent years, the Company intends to repurchase up to a set dollar amount of stock at book value.

Description
of Stock

The offer in 1999 will be made for outstanding shares of Class A and Class B stock.

Amount

In 1999, the Company's goal is to offer to repurchase $15,000,000, subject to having sufficient earnings and cash flow from operations, in each subsequent year, up to an aggregate repurchase amount of $180,000,000 (including the first year).

Source of
Funds

Internally generated funds in 1997 and thereafter.

Price per
Share

Book value as of preceding December 31 audited GAAP statements, computed by treating Preferred Certificates as common equity.

Procedures

Issuer tender offer, open for a period of 20 days. Transmittal forms and certificates should be submitted to the Company, attention Chief Legal Officer. If more shares are tendered than the Company has agreed to purchase, shares will be taken up pro rata and new certificates will be issued for returned shares. Tenders by holders of 10,000 or fewer shares will be accepted without pro ration. There is no minimum number of shares that must be tendered.

Voting

If, as a result of the repurchases, any shareholder would own Class A stock having more than 9% of the aggregate voting power, shares equal to the excess votes will automatically be converted into Class B stock (unless, there is in place, a shareholders agreement that permits voting rights to be adjusted at each meeting in order to stay within the 9% limit).

Capital
Stock

Although the offer would not be made for Capital Stock, the Company intends in the future to offer the greater of book value or $25 per share to repurchase Capital Stock when exercising its right of first refusal upon the death of a shareholder. In the event a holder of Capital Stock gives notice of a desire to transfer such shares, the Company intends to offer to repurchase the shares at book value.

Company
Recommendation

The Company does not recommend acceptance of the offer. It is made as an accommodation to shareholders as a means of realizing value from their investment. The Company believes its stock represents an excellent investment opportunity for investors seeking long-term growth of capital.

J:\PN\CORPORATE SECRETARY\HOFFMAN\MAY 19 99 EXEC
5.1 Repurchase Term Sheet 5/99

USDC 0018837

Exhibit 51

SHAREHOLDERS

September 20, 2000

| Shareholder | Capital | Class A | Class B | Total A & B Capital Outstanding | % Shares |
|---|---|---|---|---|---|
| John T. Joyce | 281.0 | 0 | 0 | 281.0 | 0.002% |
| Joint Pension Fund of Local Union 164, IBEW | 0.0 | 4,000 | 0 | 4,000.0 | 0.046% |
| Joseph A. Catabilis | 0.0 | 4,000 | 0 | 4,000.0 | 0.046% |
| Joseph F. Maloney and T. Alice Maloney, As Joint Tenants | 212.0 | 4,000 | 0 | 4,212.0 | 0.051% |
| Joseph P. McCrudy, Jr. & Mary Bridget Burns McCurdy | 8.7 | 0 | 0 | 8.7 | 0.000% |
| Journeymen Plumbers & Steam Fitters Local #56 of N.A., Halifax, N.S. | 2.7 | 0 | 0 | 2.7 | 0.000% |
| June A. Hitlock Riley | 292.7 | 0 | 0 | 292.7 | 0.004% |
| Kataldon Labor Council, AFL-CIO | 8.7 | 0 | 0 | 8.7 | 0.000% |
| Kenneth J. Brown & Phyllis A. Brown, As Joint Tenants | 292.0 | 50 | 0 | 342.0 | 0.004% |
| Laborers' International Union of North America | 2,229.3 | 0 | 0 | 2,229.3 | 0.027% |
| Lackstair United Labor Council, AFL-CIO | 66.7 | 0 | 0 | 66.7 | 0.001% |
| Leland Alice Harris & Sarah Jane Harris | 123.0 | 0 | 0 | 123.0 | 0.001% |
| Leroue Miller | 42.0 | 0 | 0 | 42.0 | 0.001% |
| Leonard R. White | 6.7 | 0 | 0 | 6.7 | 0.000% |
| LeRoy E. Worley | 220.0 | 0 | 0 | 220.0 | 0.003% |
| LIUNA Local Union & District Council Pension Fund | 0.0 | 365,388 | 0 | 365,388.0 | 4.701% |
| LIUNA National ("Industrial") Union Pension Fund | 0.0 | 365,388 | 0 | 365,388.0 | 4.701% |
| Local #373, A.F. of M., Oklahoma City, OK | 66.7 | 0 | 0 | 66.7 | 0.001% |
| M. John Pepp & Mary Ann Pepper | 123.0 | 0 | 0 | 123.0 | 0.002% |
| Machinists Grand Lodge Employees Pension Fund | 0.0 | 3,702 | 0 | 3,702.0 | 0.045% |
| Marc T. Fosco, TTEE | 727.8 | 0 | 0 | 727.0 | 0.009% |
| Mark A. Maloney and Janis L. Maloney, As Joint Tenants | 304.8 | 4,784 | 0 | 9,080.0 | 0.111% |
| Mechameer & Co., as Nominee for the UAW Master Pension Trust | 0.0 | 162,579 | 0 | 162,579.0 | 1.983% |
| Martin J. Maddaloni | 0.0 | 2,000 | 0 | 2,000.0 | 0.024% |
| Martin J. Maddaloni and Joan Maddaloni, JT TEN | 0.0 | 1,000 | 0 | 1,000.0 | 0.012% |
| Marvin J. Boede | 292.0 | 2,000 | 0 | 2,292.0 | 0.028% |

Page 9

UL 20696

Exhibit 52

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into between Robert

A. Georgine ("Mr. Georgine") and ULLICO Inc., The Union Labor Life Insurance Company, The

ULLICO Inc. Pension Plan and Trust ("the Qualified Plan"), The ULLICO Inc. Employees' Life

and Health Welfare Plan ("the Welfare Plan"), The Union Labor Life Auxiliary Retirement

Benefits Plan ("the Auxiliary Plan"), The ULLICO Inc. Non-Qualified Deferred Compensation

Plan ("the Deferred Compensation Plan"), and Mark Singleton in his capacity as a Plan

Administrator and a member of the Employee Benefit Plans Administrative Committee

(collectively referred to as "ULLICO"), as of the ___ day of November, 2005.

WHEREAS, Mr. Georgine is the former Chairman, President and CEO of ULLICO Inc.;

and

WHEREAS, Mr. Georgine is a former member of the Benefits Committee which served

as the Plan Administrator for the Qualified Plan, the Welfare Plan, the Auxiliary Plan and the

Deferred Compensation Plan; and

WHEREAS, Mr. Georgine and ULLICO Inc. entered into a certain Supplemental

Executive Retirement Plan Agreement dated August 30, 1994 and certain amendments and

addenda thereto (the "SERP"); and

WHEREAS, Mr. Georgine and ULLICO Inc. entered into a certain Deferred

Compensation Agreement dated August 31, 1998 and certain amendments and addenda thereto

(the "Deferred Compensation Agreement"); and

WHEREAS, Mr. Georgine and ULLICO Inc. entered into a certain Employment

Agreement dated as of October 1, 1999 and certain amendments and addenda thereto (the

"Employment Agreement"); and

RG0001

WHEREAS, Mr. Georgine and ULLICO Inc. entered into a certain Stock Purchase and Credit Agreement dated as of December 30, 1999 (the "Stock Purchase Agreement"); and

WHEREAS, the Robert A. and Mary Rita Georgine Life Insurance Trust ("the Trust") and ULLICO Inc. entered into a certain Split-Dollar Life Insurance Agreement dated February 9, 2000 (the "Split Dollar Life Insurance Agreement"); and

WHEREAS, ULLICO disputes Mr. Georgine's entitlement to any benefits under any of the above described agreements and challenges the enforceability and validity of such agreements and Mr. Georgine disputes those contentions and asserts that all such agreements are valid and legally binding; and

WHEREAS, ULLICO has filed claims and counterclaims against Mr. Georgine in certain actions styled *ULLICO Inc. v. Georgine*, Case No. 04-0000361, in the Superior Court of the District of Columbia, *Carabillo v. ULLICO Inc.*, Case No. 1:03-cv-1556-RJL, and *Carabillo v. ULLICO Inc. Pension Plan and Trust*, Case No. 1:04-cv-776-RJL, in the United States District Court for the District of Columbia (the "Actions"), in which Actions ULLICO has challenged, *inter alia*, any right, title or interest with respect to any benefits under the above-described agreements; and

WHEREAS, Mr. Georgine disputes that ULLICO is entitled to any of the recoveries, damages or relief that it claims in the Actions or otherwise with respect to his conduct or the above described agreements; and

WHEREAS, Mr. Georgine has filed claims against ULLICO in the actions styled *ULLICO Inc. v. Georgine*, Case No. 04-0000361, in the Superior Court of the District of Columbia, *Carabillo v. ULLICO Inc.*, Case No. 1:03-cv-1556-RJL, and *Carabillo v. ULLICO Inc. Pension Plan and Trust*, Case No. 1:04-cv-776-RJL, in the United States District Court for

2

RG0002

the District of Columbia, in which Mr. Georgine has sought his unpaid deferred compensation and retirement benefits, including deferred compensation and retirement benefits under the above-described agreements, and severance pay under the Employment Agreement; and

WHEREAS, Mr. Georgine and ULLICO desire to resolve all outstanding issues between them and to compromise and settle all of their respective claims against each other;

WHEREFORE, in consideration of the promises and agreement contained herein, and for good and adequate consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

1. *Stock Profits and Planners & Insurers Loans.* In compromise and settlement of all claims by ULLICO Inc. against Mr. Georgine for breach of fiduciary duty associated with his purchases and repurchases of ULLICO Inc. Stock, purchases and repurchases of the ULLICO Inc. Stock of the International Association of Heat and Frost Insulators and Asbestos Workers Local Union Officers and Employee Pension Fund, and certain loans to Planners & Insurers, Inc., Mr. Georgine shall pay to ULLICO Inc.:

(a) Two Million Five Hundred Ninety Eight Thousand Three Hundred Seventy Eight Dollars ($2,598,378) as disgorgement and repayment of his personal profits realized from ULLICO Inc.'s redemption of ULLICO Inc. Stock during 2000 and 2001,

(b) Seven Hundred Thousand Dollars ($700,000) with respect to ULLICO Inc.'s redemption of certain ULLICO Inc. Stock on or about February 14, 2003 from the International Association of Heat and Frost Insulators and Asbestos Workers Local Union Officers and Employee Pension Fund, and

3

RG0003

(c)    Five Hundred Thousand Dollars ($500,000) with respect to the outstanding

principal and interest due on the three loans made to Planners & Insurers, Inc. on or about

February 28, 2001, May 31, 2001 and October 31, 2001.

(d)    The amounts due and owing to ULLICO Inc. pursuant to this paragraph shall be

paid to ULLICO Inc. as set forth below in paragraphs 3(c), 4(c) and 7(c).

2.    *Employment Agreement.*  In compromise and settlement of all claims by any party

to this Agreement associated with the Employment Agreement, the Employment Agreement is

hereby cancelled, rescinded, and of no force or effect, and Mr. Georgine and ULLICO hereby

waive, forfeit and release any claim to any right, title, or interest they may have under that

Employment Agreement for any amount, payment or benefit, except to the extent such benefits

are preserved pursuant to Paragraph 5 below regarding the Split Dollar Life Insurance

Agreement; and further release and discharge each other from any and all obligations under the

Employment Agreement.

3.    *Retirement Benefits.*  (a)  In compromise and settlement of all claims by any party

to this Agreement associated with the Qualified Plan, Auxiliary Plan or Welfare Plan, Mr.

Georgine acknowledges that certain amendments to the Qualified Plan adopted by the Benefits

Committee on or about October 20, 1999 and on or about July 24, 2001, the legality of which

ULLICO challenges (collectively "the Amendments"), are void and unenforceable as to Mr.

Georgine; and Mr. Georgine hereby waives, forfeits and releases any right, title, interest or claim

to any benefits he may be entitled to receive pursuant to the Amendments; and ULLICO hereby

releases, waives and discharges any claims against Mr. Georgine arising from or relating to the

Amendments, such claims against all others being specifically reserved.

4

RG0004

(b) Effective June 1, 2003, Mr. Georgine shall receive from the Qualified Plan the monthly benefits prescribed by that plan, including a 50% survivors benefit, but without the benefit of and without regard to the Amendments. Also, Mr. Georgine shall receive from the Auxiliary Plan a lump sum representing the present value of the monthly benefits prescribed by that plan from June 1, 2003, including a 50% survivors benefit, but without the benefit of and without regard to the Amendments. In addition, Mr. Georgine shall continue to receive benefits under the Welfare Plan. Any amount due to Mr. Georgine under the terms of this Agreement from the Auxiliary Plan shall be reduced by the amount Mr. Georgine has been overpaid by the Qualified Plan under the terms of this Agreement. Accordingly, the Auxiliary Plan shall pay and Mr. Georgine shall receive a lump sum of One Million, Three Hundred Sixty Six Thousand, Nine Hundred Seventy Four Dollars and Sixty Five Cents ($1,366,974.65), subject to reductions and withholding for any appropriate federal, state, or local taxes or assessments, in full satisfaction of any Auxiliary Plan benefits due and owing under the terms of this Agreement.

(c)     Mr. Georgine further directs and authorizes the Auxiliary Plan to pay directly to ULLICO Inc. the net amount that would be received by Mr. Georgine from the Auxiliary Plan pursuant to paragraph 3(b) after reductions and withholding for any appropriate federal, state, or local taxes or assessments in partial satisfaction of Mr. Georgine's obligation to ULLICO Inc. under Paragraphs 1 and 5 of this Agreement, and Mr. Georgine's obligation to ULLICO Inc. under Paragraphs 1 and 5 shall be accordingly reduced by the amount of that payment.

(d)     The parties shall cooperate with each other, including by sharing workpapers or memoranda bearing on filing positions, and execute any documents required or necessary to effectuate the payments, transfers, distributions and withholdings as set forth herein or to recover

5

RG0005

any overpayments on withholdings previously made by ULLICO or any overpayments of taxes previously made by Mr. Georgine.

(e)    In the event that any court of competent jurisdiction enters a final judgment that entitles Mr. Georgine or Mary Rita Georgine to benefits under the Amendments, Mr. Georgine and Mary Rita Georgine agree to reimburse ULLICO in the amount of any benefits they receive under the Amendments, net of any taxes required to be paid as a result of receiving such benefits.

4.    *Deferred Compensation.* (a) In compromise and settlement of all claims by any party to this Agreement associated with the Deferred Compensation Agreement and Deferred Compensation Plan, the amounts held in the "Rabbi Trust" associated with the Deferred Compensation Plan in account number 190049-NQ at the M&T Bank, 1350 Eye St, NW, Suite 200, Washington, DC 20005-7200 shall be distributed as follows:

(1)    Mr. Georgine shall be entitled to receive from the "Rabbi Trust" associated with the Deferred Compensation Plan the amount of One Million Three Hundred Seventy Three Thousand Ninety Three Dollars ($1,373,093), subject to reductions and withholdings for any appropriate federal, state, or local taxes or assessments on that amount.

(2)    Other than that amount set forth in paragraph 4(a)(1) above, any further amounts being held in the Deferred Compensation "Rabbi Trust" in connection with Mr. Georgine shall be paid and distributed to ULLICO Inc.

(b)    ULLICO and Mr. Georgine authorize the Trustee of the Deferred Compensation "Rabbi Trust" to make a payment to Mr. Georgine in the amount of One Million Three Hundred Seventy Three Thousand Ninety Three Dollars ($1,373,093), subject to reductions and withholdings for any appropriate federal, state, or local taxes or assessments on that amount, and direct and authorize the Trustee of the Deferred Compensation "Rabbi Trust" to pay and

6

RG0006

distribute to ULLICO Inc. the balance of all funds being held in connection with Mr. Georgine in the Deferred Compensation "Rabbi Trust".

(c)     Mr. Georgine further directs and authorizes the Trustee of the Deferred Compensation "Rabbi Trust" to pay directly to ULLICO Inc. the net amount that would be received by Mr. Georgine pursuant to paragraph 4(b) after reductions and withholding for any appropriate federal, state, or local taxes or assessments in partial satisfaction of Mr. Georgine's obligation to ULLICO Inc. under Paragraphs 1 and 5 of this Agreement, and Mr. Georgine's obligation to ULLICO Inc. under Paragraphs 1 and 5 shall be accordingly reduced by the amount of that payment.

(d)     The parties shall cooperate with each other and the Trustee of the Deferred Compensation "Rabbi Trust," including by sharing workpapers or memoranda bearing on filing positions, and execute any documents required or necessary to effectuate the payments, transfers, distributions and withholdings as set forth herein or to recover any overpayments on withholdings previously made by ULLICO or any overpayments of taxes previously made by Mr. Georgine.

(e)     The Deferred Compensation Agreement is hereby cancelled, rescinded, declared null and void and is of no force or effect; and Mr. Georgine hereby disclaims, waives, forfeits and releases any claim to any right, title, or interest in any amount, payment or benefit under that Deferred Compensation Agreement or the Deferred Compensation Plan or to any amounts that may be held for his benefit with respect thereto; and further releases and discharges ULLICO from any and all obligations with respect thereto other than those obligations set forth in this Agreement; and ULLICO hereby waives, forfeits and releases any claim against Mr. Georgine

7

RG0007

related to or arising out of the Deferred Compensation Agreement or the Deferred Compensation Plan except as may arise under this Agreement.

5. *Split Dollar Life Insurance Agreement.* (a) In compromise and settlement of all claims by any party to this Agreement associated with the Split-Dollar Life Insurance Agreement and associated Pacific Life Company Insurance Policy No. 1A23725140, Mr. Georgine shall pay to ULLICO Inc. Five Hundred Thirty Thousand Eight Hundred Twenty Five Dollars ($530,825) in return for ULLICO's release of any claim to premium payments made under the Split-Dollar Life Insurance Agreement or associated Pacific Life Company Insurance Policy No. 1A23725140. ULLICO shall have no further obligation to make any additional premium payments under that Split-Dollar Life Insurance Agreement or with respect to that Pacific Life policy, and is specifically discharged and released of any such obligation.

(b) Mr. Georgine shall pay to ULLICO Inc. the amount of any withholding for any appropriate federal, state, or local taxes or assessments that ULLICO may be required to pay with respect to this calendar year or prior years as a result of the Split-Dollar Insurance Agreement or the associated policy as reasonably determined by ULLICO.

(c) The parties shall cooperate with each other and execute any documents required or necessary in the reasonable opinion of ULLICO to effectuate the payments, transfers, distributions and withholdings as set forth herein or to recover any overpayments on withholdings previously made by ULLICO or any overpayments of taxes previously made by Mr. Georgine.

(d) The amounts due and owing to ULLICO Inc. pursuant to this paragraph shall be paid to ULLICO Inc. as set forth in paragraphs 3(c), 4(c) and 7(c).

8

RG0008

6.    *Stock Purchase Agreement.*  In compromise and settlement of all claims by any

party to this Agreement associated with the Stock Purchase Agreement, the Stock Purchase

Agreement is hereby cancelled, rescinded, declared null and void and is of no force or effect; Mr.

Georgine hereby waives, forfeits and releases any claim to any right, title, or interest in any

amount, payment, benefit or ULLICO Inc. Stock under that Stock Purchase Agreement; and

ULLICO hereby waives any claim it may have against Mr. Georgine arising from or related to

that Stock Purchase Agreement.  In addition, Mr. Georgine shall tender all stock certificates in

his possession with respect to ULLICO Inc. Stock, with appropriate endorsements; and any and

all remaining shares of ULLICO Inc. Stock issued to Mr. Georgine under that Agreement shall be

cancelled and marked cancelled on the stock registry of ULLICO.

7.    *SERP.*  (a) In compromise and settlement of all claims by any party to this

Agreement associated with the SERP, the amounts held in the "Rabbi Trust" associated with the

SERP in account number 7040460609 at Wachovia Bank shall be distributed as follows:

(1)    Mr. Georgine shall be entitled to receive from the "Rabbi Trust"

associated with the SERP the amount of Five Million Two Hundred Eighty One Thousand One

Hundred Fifty Eight Dollars and Sixty Four Cents ($5,281,158.64), subject to reductions and

withholdings for any appropriate federal, state or local taxes or assessments on that amount.

(2)    Other than that amount set forth in paragraph 7(a)(1) above, any further

amounts being held in the SERP "Rabbi Trust" shall be paid and distributed to ULLICO Inc.

(b)    ULLICO and Mr. Georgine authorize and direct the Trustee of the SERP "Rabbi

Trust" to make a payment to Mr. Georgine in the amount of Five Million Two Hundred Eighty

One Thousand One Hundred Fifty Eight Dollars and Sixty Four Cents ($5,281,158.64), subject to

reductions and withholdings for any appropriate federal, state or local taxes or assessments on

9

RG0009

that amount, and direct and authorize the Trustee of the SERP "Rabbi Trust" to pay and distribute to ULLICO Inc. the balance of all funds being held in the SERP "Rabbi Trust".

(c)     Mr. Georgine further directs and authorizes the Trustee of the SERP "Rabbi Trust" to pay directly to ULLICO Inc. such portion of the net amount that would be received by Mr. Georgine pursuant to paragraph 7(b) after reductions and withholding for any appropriate federal, state, or local taxes or assessments as needed to fully satisfy Mr. Georgine's obligations to ULLICO Inc. under Paragraphs 1 and 5 of this Agreement.

(d)     The parties shall cooperate with each other and the Trustee of the SERP "Rabbi Trust," including by sharing workpapers or memoranda bearing on filing positions, and execute any documents required or necessary to effectuate the payments, transfers and distributions as set forth herein or to recover any overpayments on withholdings previously made by ULLICO or any overpayments of taxes previously made by Mr. Georgine.

(e)     The SERP is hereby cancelled, rescinded, declared null and void and is of no force or effect; and Mr. Georgine hereby disclaims, waives, forfeits and releases any claim to any right, title or interest in any amount, payment or benefit under that SERP or to any amounts that may be held for his benefit with respect thereto; and further releases and discharges ULLICO from any and all obligations with respect to the SERP or the associated "Rabbi Trust," including, without limitation, any funding or payment obligations with respect thereto other than those obligations set forth in this Agreement; and ULLICO waives any claims against Mr. Georgine arising from or related to the SERP or the associated "Rabbi Trust" except as may arise under this Agreement.

8.     Mr. Georgine shall indemnify and hold ULLICO harmless from any expenses, taxes, assessments, interest, penalties, levies, costs or expenses (including, without limitation,

10

RG0010

any litigation or administrative costs or expenses or any legal, accounting or other professional fees or costs) that it incurs, is contractually liable for, or has imposed or assessed against it by any federal, state or local governmental or administrative or regulatory authority based on, arising out of, or related to any withholding, or failure to withhold, by ULLICO from Mr. Georgine or failure of Mr. Georgine to pay any tax liability or assessment owed by Mr. Georgine that may have occurred as a result of any of the distributions, forfeitures, cancellations, releases or waivers to Mr. Georgine set forth in this Agreement. If there occurs an event that either party asserts is an indemnifiable event pursuant to this provision, ULLICO (the "Indemnitee") shall promptly provide notice (the "Notice of Claim") to Mr. Georgine, or his successor(s) in interest (the "Indemnifying Party"). The Notice of Claim shall be a condition precedent to any liability of the Indemnifying Party hereunder, and the failure to provide prompt notice as provided herein will relieve the Indemnifying Party of its obligations hereunder but only if and to the extent that such failure materially prejudices the Indemnifying Party hereunder. In case any such action shall be brought against the Indemnitee and it shall provide a Notice of Claim to the Indemnifying Party of the commencement thereof, the Indemnifying Party shall be entitled to participate therein and, to the extent that it shall wish, to assume the defense thereof, with counsel reasonably satisfactory to such Indemnitee and, after notice from the Indemnifying Party to such Indemnitee of such election so to assume the defense thereof, the Indemnifying Party shall not be liable to the Indemnitee hereunder for any legal expenses of other counsel or any other expenses, in each case subsequently incurred by the Indemnitee, in connection with the defense thereof other than reasonable costs of investigation. The Indemnitee agrees to reasonably cooperate with the Indemnifying Party and its counsel in the defense against any such asserted liability. In any

11

RG0011

event, the Indemnitee shall have the right to participate at its own expense in the defense of such asserted liability.

      9.    Notwithstanding any other provision of this Agreement, ULLICO shall, with respect to claims that arise after the date of this Agreement, indemnify Mr. Georgine in the manner and to the extent required by the Bylaws of ULLICO Inc.; provided, however, Mr. Georgine shall not be entitled to receive, and he will not seek, indemnification from ULLICO under the Bylaws or otherwise in any respect concerning the Actions or any claims described in, related to, based on or arising out of any of the allegations set forth in the Actions.

      10.    Simultaneously with the execution of this Agreement, Mr. Georgine shall authorize his counsel to endorse, and his counsel shall endorse, the Joint Motions to Dismiss attached hereto as Attachment A, the endorsed originals of which shall be delivered to counsel for ULLICO. Upon ULLICO's receipt of all the payments required by paragraphs 3(e), 4(d), and 7(c), counsel for ULLICO shall be authorized to file in the Actions the Joint Motions to Dismiss. Each party shall bear their own costs, expenses, and attorney's fees.

      11.    Mr. Georgine agrees that he will cooperate with ULLICO in relation to ULLICO's ongoing investigations and litigation. This cooperation may include, but is not limited to, Mr. Georgine's providing relevant documents, and, provided he is medically able, making himself available, on reasonable notice, to be interviewed by ULLICO or its attorneys, and appearing as a witness in any legal proceeding or deposition as ULLICO may reasonably request.

      12.    Mr. Georgine hereby acknowledges that ULLICO has issued to Mr. Georgine and Mr. Georgine has received those notices required under the Comprehensive Omnibus Budget Reconciliation Act ("COBRA").

RG0012

13.   This Agreement shall not in any way be construed as an indication or admission by either party that it has any contractual or other financial obligation to the other; or that either has acted improperly with respect to the other; or that either has any claim whatsoever against the other; and both acknowledge that the other specifically denies any liability or wrongful acts.

14.   Each party represents that he or it has carefully read and fully understands all the provisions of this Agreement, that there has been an adequate opportunity to consult with an attorney regarding this Agreement, and that he or it is executing this Agreement voluntarily because he or it wishes to take advantage of the consideration provided.

15.   In connection with any claim that Mr. Georgine may have against ULLICO under the federal Age Discrimination in Employment Act, or comparable state or local law or ordinance, Mr. Georgine acknowledges the following: (i) he has had the opportunity to consult with an attorney with respect to this Agreement; (ii) he understands that he may consider the offer represented by this Agreement for a period of 21 days; and that he is not required to execute and return this Agreement before the expiration of such a 21-day period, although he may chose to do so before such time; and (iii) he may revoke his acceptance of this Agreement provided he does so within 7 days after his execution hereof.

16.   As a material inducement to ULLICO to enter into this Agreement, and except as to his or its rights under this Agreement, Mr. Georgine hereby irrevocably and unconditionally releases, acquits, remises, and forever discharges ULLICO, its affiliated entities and each of their past, present or future directors, officers, benefits committee members, plan administrators, or employees (collectively referred to as the "ULLICO Releasees"), or any of them, from any and all actions, allegations, charges, complaints, claims, demands, debts, liabilities, indemnities, agreements, damages, incentive compensation, actions, causes of action, suits, rights, costs,

13

RG0013

expenses (including attorneys' fees and costs actually incurred) or things of any nature whatsoever and in any capacity whatsoever, known or unknown, suspected or unsuspected, vested or contingent, accrued or unaccrued, liquidated or unliquidated, direct, derivative or subrogated, or any other theory of recovery under federal, state or foreign law and whether for compensatory, punitive damages, or other equitable relief, including, but not limited to, any claim under the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Americans with Disabilities Act of 1990, the federal Age Discrimination in Employment Act, or comparable state or local law or ordinance, and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), which Mr. Georgine had, now has or may have against each, all, or any of the ULLICO Releasees, in any combination thereof, including specifically, but not limited to, (1) any claims arising out of or relating in any way, directly or indirectly, to his employment with ULLICO or any claim arising under federal, state or local, statutory, case law or common law pertaining to Mr. Georgine's employment; and (2) any claims that were or could have been asserted in the Actions or any other legal proceeding; provided, however, that this paragraph does not release or otherwise affect Mr. Georgine's rights, if any, with respect to statutorily-protected post-employment benefits under Mr. Georgine's benefit plans or claims arising after the effective date hereof. Mr. Georgine also expressly covenants and agrees not to sue ULLICO or any of the ULLICO Releasees, for any claim arising out of his employment with ULLICO or the termination thereof, except in an action for the sole purpose of enforcing the terms of this Agreement.

17.    As a material inducement to Mr. Georgine to enter into this Agreement, and except as to their rights under this Agreement, ULLICO hereby irrevocably and unconditionally releases, acquits, remises, and forever discharges Mr. Georgine, his successors, heirs, assigns,

14

RG0014

beneficiaries, and estate (collectively referred to as the "Georgine Releasees") from (1) any

claims asserted in the Actions; (2) any claims related to the events, transactions or agreements

identified in paragraphs 1-7 of this Agreement; (3) any claims related to the events, transactions

or agreements identified in the Report of the Special Counsel issued November 26, 2002 and any

supplemental reports of the Special Counsel issued prior to the date of this Agreement; (4) claims

related to the events, transactions or agreements identified in the Report prepared by the Majority

Staff of the Committee on Governmental Affairs, United States Senate, dated June 2, 2004; and

(5) any claims known by ULLICO at or before the date of this Agreement. ULLICO represents

that it does not presently know of any additional claims it may have against Mr. Georgine. If and

to the extent a claim for contribution or indemnity by one of the non-settling alleged joint-

tortfeasors in the Actions exists under applicable law, including Maryland law, D.C. law, or

ERISA, ULLICO expressly covenants and agrees that any right of ULLICO to recover damages

from non-settling alleged joint-tortfeasors in the Actions shall be reduced as provided by

applicable law, including but not limited to Maryland Code Section 3-145 Courts and Judicial

Proceedings, D.C. law, and ERISA. It is also specifically acknowledged and agreed to by the

parties, and ULLICO specifically states, that nothing herein shall waive, compromise, discharge

or release in any respect any other person or entity other than Mr. Georgine and the Georgine

Releasees, against whom ULLICO reserves and preserves all rights, claims and causes of action.

18.    Each party hereto represents and acknowledges for himself or itself that in

executing this Agreement, he or it does not rely upon, and has not relied upon, any representation

or statement not set forth herein. Each party hereto agrees that they are sole legal owners of all

rights, title and interest in all claims or other matters arising from the subject matter of this

RG0015

Agreement, and that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or other matter released herein.

19. This Agreement shall be construed in accordance with, and governed by, the laws of the District of Columbia.

20. This Agreement sets forth the entire agreement between the parties hereto, and fully supersedes any and all prior agreements or understandings between the parties hereto. The parties acknowledge that there are no agreements, understandings, warranties or representations between them other than those set forth herein.

21. If, at any time after the effective date of this Agreement, any provision of this Agreement shall be held by any court of competent jurisdiction to be illegal, void, or unenforceable, such provision shall be of no force and effect. The illegality or unenforceability of such provision, however, shall have no effect upon, and shall not impair the enforceability of, any other provision of this Agreement.

22. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same agreement. This Agreement shall become contractually binding on Mr. Georgine, Mary Rita Georgine and ULLICO upon its approval by the ULLICO Inc. Board of Directors, and the execution by all of the parties' authorized representatives as listed below.

WITNESS the execution of this Agreement effective as of the day and year first set forth above:

16

RG0016

ULLICO INC. AND THE UNION LABOR LIFE
INSURANCE COMPANY

By: _____
Teresa Valentine, Esq.
ULLICO Inc.

THE ULLICO INC. PENSION PLAN AND TRUST, THE
ULLICO INC. EMPLOYEES' LIFE AND HEALTH
WELFARE PLAN, THE UNION LABOR LIFE
AUXILIARY RETIREMENT BENEFITS PLAN, AND
THE ULLICO INC. NON-QUALIFIED DEFERRED
COMPENSATION PLAN.

By: _____
Mark Singleton
Chief Financial Officer of ULLICO Inc. in his
capacity as a Plan Administrator and a member of
the Employee Benefit Plans Administrative
Committee

_____
Robert A. Georgine

17

RG0017

## Certification and Agreement of Mary Rita Georgine

I, Mary Rita Georgine, affirm that I am the wife of Robert A. Georgine, that I have read the above Agreement, that I have conferred with counsel of my own choosing, that I understand my rights, benefits and entitlements with respect to the matters that are the subject of this Agreement, and that I agree not to sue for, or take any other action that seeks, benefits that are inconsistent with the provisions of this Agreement; and for good and valuable consideration, the sufficiency of which is hereby acknowledged, I hereby agree and consent to the terms and conditions of this Agreement to the maximum extent required by law, and hereby waive and release any and all rights, claims and benefits that are or may be released, discharged, compromised or affected in any way by the terms and conditions of the above Agreement.

Mary Rita Georgine
Mary Rita Georgine

18

RG0018

Exhibit 53

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

ULLICO INC.,                            )
              Plaintiff,           )    CASE NUMBER:  1:06CV01388 (RJL)
      v.                             )    DECK TYPE:  General Civil
                       )
WILLIAM CASSTEVENS,                      )
              Defendant.          )

## AFFIDAVIT OF MARCELLE BENJAMIN

Marcelle Benjamin hereby declares under the penalty of perjury as follows:

1.     My name is Marcelle Benjamin.  I am providing this Affidavit in connection with Plaintiff ULLICO Inc.'s Reply to Defendant Casstevens' Opposition to Plaintiff's Motion for Partial Summary Judgment (the "Reply") in the above-captioned action.  The information set forth in this Affidavit is, unless otherwise indicated, based on my personal knowledge and the books and records of ULLICO Inc.

2.     I am over 18 years old, and I am competent to testify to the facts and information contained herein.

3.     I currently serve as Assistant Corporate Secretary at ULLICO Inc.

4.     My job responsibilities currently include maintaining corporate records, including maintaining the ULLICO stock ledger for all classes of ULLICO stock.

5.     Attached hereto as Exhibit 33 of the Reply in the above-captioned action is a true and correct copy of the Proxy for Annual Meeting of Stockholders to be held May 11, 2000 to LIUNA Local Union & District Council Pension Fund, c/o Henry Moreshi, Fund Administrator (USDC 187604).

6.    Attached hereto as Exhibit 34 of the Reply in the above-captioned action is a true and correct copy of the Proxy for Annual Meeting of Stockholders to be held May 11, 2000 to Laborers International Union of N.A. c/o Nations Bank Trust Income Processing (USDC 187603).

7.    Attached hereto as Exhibit 35 of the Reply in the above-captioned action is a true and correct copy of the Addendum to Employment Agreement by and between ULLICO Inc. and Robert Georgine, dated as of Oct. 1, 1999 (U 041217-19).

8.    Attached hereto as Exhibit 36 of the Reply in the above-captioned action is a true and correct copy of selected pages of the Georgine Shareholder File (USEC 021998-022000).

9.    Attached hereto as Exhibit 37 of the Reply in the above-captioned action is a true and correct copy of the Minutes, Meeting of the Compensation Committee of ULLICO Inc., Oct. 20, 2000 (USDC 0123775-75).

10.    Attached hereto as Exhibit 38 of the Reply in the above-captioned action is a true and correct copy of the Minutes, Meeting of the Board of Directors of ULLICO Inc., Dec. 2, 2002 (USDC 0003444-46).

11.    Attached hereto as Exhibit 39 of the Reply in the above-captioned action is a true and correct copy of the Minutes, Meeting of the Board of Directors of ULLICO Inc., Mar. 13, 2003 (JK 019157-60).

12.    Attached hereto as Exhibit 40 of the Reply in the above-captioned action is a true and correct copy of the ULLICO Report of the Special Committee to the Board of Directors, Mar. 25, 2003.

772478.2

13.     Attached hereto as Exhibit 43 of the Reply in the above-captioned action is a true and correct copy of the Minutes, Meeting of the Board of Directors of ULLICO Inc., Mar. 28, 2003 (USDC 0003510-14).

14.     Attached hereto as Exhibit 44 of the Reply in the above-captioned action is a true and correct copy of the Report of the Special Counsel, ULICO Stock Purchase Offer and Repurchase Programs and Global Crossing Investment, Nov. 26, 2002.

15.     Attached hereto as Exhibit 45 of the Reply in the above-captioned action is a true and correct copy of the Minutes, Meeting of the Board of Directors of ULLICO Inc., Apr. 2, 2003 (USDC 0003519-26).

16.     Attached hereto as Exhibit 46 of the Reply in the above-captioned action is a true and correct copy of the Minutes, Meeting of the Board of Directors of ULLICO Inc., May 13, 2003 (USDC 0003553-58).

17.     Attached hereto as Exhibit 47 of ULLICO's Response to Defendant's Statement of Material Facts as to Which Defendant Contends there is No Genuine Dispute (the "ULLICO Fact Response") in the above-captioned action is a true and correct copy of a letter dated January 21, 1997 from Bill Egan of Credit Suisse First Boston to John K. Grelle, Senior V.P. and Chief Financial Officer of ULLICO Inc.

18.     Attached hereto as Exhibit 48 of the ULLICO Fact Response in the above-captioned action is a true and correct copy of a letter dated January 24, 1997 retaining Credit Suisse First Boston signed by John K. Grelle.

19.     Attached hereto as Exhibit 49 of the ULLICO Fact Response in the above-captioned action is a true and correct copy of the Term Sheet for the 1998 ULLICO Inc. Stock Repurchase Program.

3

772478.2

20.    Attached hereto as Exhibit 50 of the ULLICO Fact Response in the above-captioned action is a true and correct copy of the Term Sheet for the 1999 ULLICO Inc. Stock Repurchase Program.

21.    Attached hereto as Exhibit 51 of the ULLICO Fact Response in the above-captioned action is a true and correct copy of page 9 of a ULLICO stock ledger dated September 29, 2000 containing the names and holdings of certain ULLICO Inc. stockholders.

22.    Attached hereto as Exhibit 52 of the ULLICO Fact Response in the above-captioned action is a true and correct copy of a Settlement Agreement dated November 10, 2005 between Robert A. Georgine and ULLICO Inc.

I HEREBY DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE DISTRICT OF COLUMBIA THAT THE FOREGOING IS TRUE AND CORRECT.


Dated:  July 11, 2007                                      _____
                                                                           Marcelle Benjamin


State of _Maryland_ )
County of _Montgomery_ )

Subscribed and sworn to (or affirmed) before me on this _11th_ day of July, 2007 by Marcelle Benjamin, personally known to me to be the person who appeared before me.


_____

CATHERINE M. O'BRIEN
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires January 21, 2008


4

772478 2